**IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DEB WHITEWOOD and SUSAN WHITEWOOD, FREDIA HURDLE and LYNN HURDLE, EDWIN HILL and DAVID PALMER, HEATHER POEHLER and KATH POEHLER, FERNANDO CHANG-MUY and LEN RIESER, DAWN PLUMMER and DIANA POLSON, ANGELA GILLEM and GAIL LLOYD, HELENA MILLER and DARA RASPBERRY, RON GEBHARDTSBAUER and GREG WRIGHT, MARLA CATTERMOLE and JULIA LOBUR, MAUREEN HENNESSEY, and A.W. AND K.W., minor children, by and through their parents and next friends, DEB WHITEWOOD and SUSAN WHITEWOOD, Plaintiffs, v. THOMAS W. CORBETT, in his official capacity as Governor of Pennsylvania; MICHAEL WOLF, in his official capacity as Secretary of the Pennsylvania Department of Health; KATHLEEN KANE, in her official capacity as Attorney General of Pennsylvania; MARY JO POKNIS, in her official capacity as Register of Wills of Washington County; and DONALD PETRILLE, JR., in his official capacity as Register of Wills and Clerk of Orphans' Court of Bucks County, Defendants. | Civil Action No. 13-1861-JEJ Honorable John E. Jones, III ELECTRONICALLY FILED |

**BRIEF OF DEFENDANTS GOVERNOR THOMAS CORBETT AND
SECRETARY OF HEALTH MICHAEL WOLF IN SUPPORT OF
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND (6)**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... ii

I.   INTRODUCTION................................................................................1

II.  STATEMENT OF THE CASE............................................................2

III. QUESTION PRESENTED ..................................................................3

IV. STANDARD OF REVIEW .................................................................3

    A.   Standard of Review Under 12(b)(1)..........................................3

    B.   Standard of Review Under 12(b)(6)..........................................4

V.   ARGUMENT ......................................................................................5

    A.   The Claims Against Governor Corbett Should Be Dismissed on
        Eleventh Amendment Immunity Grounds. ................................5

        1.   The Eleventh Amendment Bars Plaintiffs' Claims.............5

        2.   The *Ex Parte Young* Exception Has No Applicability Here ..............7

        3.   Any Claim That Discovery Is Necessary To Clarify The Issue Is
            Without Merit .................................................................17

    B.   The Claims Against Both Defendants Corbett and Wolf Should Be
        Dismissed on The Grounds That They Fail To State A Claim Upon
        Which Relief May Be Granted. ................................................19

        1.   *Baker* Involved The Identical Issue Presented Here ........19

        2.   *Baker* Is Still Binding Precedent Post-*Windsor* ...............22

VI.  CONCLUSION .................................................................................25

i

## TABLE OF AUTHORITIES

**Cases**

*1ˢᵗ Westco Corp. v. Sch. Dist. of Phila*., 6 F.3d 108 (3d Cir. 1993) ........................7,9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................4

*Baker v. Nelson*, 409 U.S. 810 (1972) ...................................................................1, 19

*Bell At1. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................4

*Bishop v. Okla. ex rel. Edmondson*, 333 Fed. Appx. 361 (10ᵗʰ Cir. 2009) ..............11

*Blanciak v. Allegheny Ludlum Corp*., 77 F.3d 690 (3d Cir. 1996) ...........................6

*Blatchford v. Native Village of Noatak & Circle Village*, 501 U.S. 775 (1991) .......5

*Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412
  (6ᵗʰ Cir. 1996) .........................................................................................................9

*Citizens for Equal Protection v. Bruning*, 455 F.3d 859 (8ᵗʰ Cir. 2006), ...............22

*Constantine v. Rectors & Visitors of George Mason Univ*., 411 F.3d 474
  (4ᵗʰ Cir. 2005) .........................................................................................................6

*CSX Trans., Inc. v. Bd. of Public Works, State of West Virginia*, 138 F.3d 537
  (4ᵗʰ Cir. 1998) .........................................................................................................7

*Edelman v. Jordan*, 415 U.S. 651 (1974) .................................................................5

*Hans v. Louisiana*, 134 U.S. 1 (1890) ......................................................................5

*Hicks v. Miranda*, 422 U.S. 332 (1975) ...................................................................20

*Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006 (5ᵗʰ Cir. 1998) .........3

*In re Burrus*, 136 U.S. 586 (1890) ..........................................................................23

*In re Kandu*, 315 B.R. 123 (Bankr. W.D. Wash. 2004) ..........................................22

*Jackson v. Abercrombie*, 884 F. Supp. 2d 1065 (D. Haw. 2012) ...........................20

*Lewis v. Rendell*, 501 F. Supp. 2d 671 (E.D. Pa. 2007)...........................................10

*Mandel v. Bradley*, 432 U.S. 173 (1977) ..................................................................20

*Massachusetts v. United States Dep't of HHS*, 682 F.3d 1 (1st Cir. 2012)..............20

*Matthews v. Elias*, No. 4:CV-06-1760, 2006 U.S. Dist. LEXIS 79302 (M.D. Pa. Oct. 31, 2006) ...........................................................................................................7

*MCI Telecomm. Corp. v. Bell Atlantic-Pennsylvania*, 271 F.3d 491 (3d Cir. 2001) ...........................................................................................................6

*Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) ......................................................9

*Perry v. Brown*, 671 F.3d 1052 (9th Cir. 2012)................................................... 21, 22

*Rode v. Dellarciprete*, 845 F.2d 1195 (3d Cir. 1988)...............................................10

*Romer v. Evans*, 517 U.S. 620 (1996) ......................................................................21

*Sevcik v. Sandoval*, 911 F. Supp. 2d 996 (D. Nev. 2012)........................................21

*Shell Oil Co. v. Noel*, 608 F.2d 208 (1st Cir. 1979)..............................................9, 18

*St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250 (5th Cir. 1998)...................3

*United States v. Windsor*, 133 S. Ct. 2675 (2013)...................................................22

*Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635 (2002) ................17

*Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382 (5th Cir. 2001) ..............4

*Waste Mgmt. Holdings v. Gilmore*, 252 F.3d 316 (4th Cir. 2001) ............................9

*Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989) .....................................6

*Wilson v. Ake*, 354 F. Supp. 2d 1298 (M.D. Fla. 2005)...........................................21

*Windsor v. United States*, 699 F.3d 169 (2d Cir. 2012), *aff'd*, 133 S.Ct. 2675 (2013)........................................................................................................................22

*Women's Emergency Network v. Bush*, 323 F.3d 937 (11th Cir. 2003) ....................9

*United States v. Windsor,* 133 S.Ct. 2675 (2013) ....................................................22

**Federal Statutes**

28 U.S.C. § 1257(2) ........................................................................................19

42 U.S.C. § 1988 ..............................................................................................3

**State Statutes**

20 Pa.C.S. § 2102...........................................................................................15

20 Pa.C.S. § 5461(d)(1)(i)................................................................................15

23 Pa.C.S. § 1102..............................................................................................2

23 Pa.C.S. § 3301(c) .......................................................................................16

23 Pa.C.S. § 4603(a)(1)(i)................................................................................15

23 Pa.C.S. § 1102...................................................................................... 2, 8, 16

23 Pa.C.S. § 1704...................................................................................... 2, 8, 16

51 Pa.C.S. § 3502...........................................................................................13

51 Pa.C.S. § 7319...........................................................................................13

51 Pa.C.S. § 8502...........................................................................................13

51 P.S. § 20010...............................................................................................13

51 P.S. § 20046...............................................................................................13

51 P.S. § 20096...............................................................................................13

51 P.S. § 20125...............................................................................................13

51 P.S. § 20305 ................................................................................13

53 P.S. § 891(d)................................................................................13

53 P.S. § 6926.1303 .........................................................................14

53 P.S. § 6926.1306 .........................................................................14

72 P.S. § 9103 ..................................................................................12

72 P.S. § 9116(a)(1.1)(ii) ................................................................11

72 P.S. § 9116(a)(3) .........................................................................12

75 Pa.C.S. § 1365 ............................................................................14

77 P.S. § 431 ...................................................................................12

**Rules**

Fed. R. Civ. P. 12(b)(1)......................................................................6

**Regulations**

4 Pa. Code § 4.191 ..........................................................................14

**BRIEF IN SUPPORT DEFENDANTS
CORBETT AND WOLF'S  MOTION TO DISMISS**

## I.        INTRODUCTION

Plaintiffs' claims against Governor Corbett and Secretary of Health Michael Wolf must be dismissed for two important and controlling reasons.

*First*, Plaintiffs' claims against the Governor must be dismissed on sovereign immunity grounds pursuant to the Eleventh Amendment of the United States Constitution.  The Eleventh Amendment prohibits suits against States – and by extension, state officials – in federal court without their consent.  Defendant Corbett has not consented to this suit; consequently, the Eleventh Amendment bars prosecution of the claims asserted against him.

*Second*, Plaintiffs' claims against both Defendants Corbett and Wolf must be dismissed because Plaintiffs cannot prove, under any set of facts actually set forth in or consistent with their complaint, that this case presents a federal question which this Court has the ability to answer.  This is so because the United States Supreme Court's decision in *Baker v. Nelson*, 409 U.S. 810 (1972) – which holds that there is no federal subject matter jurisdiction over claims like those raised in this case – is binding on this Court.

For both of these reasons, addressed in further detail below, Defendants Corbett and Wolf urge this Court to grant their motion to dismiss in its entirety.

## II.    STATEMENT OF THE CASE

On July 9, 2013, Plaintiffs filed a complaint in this Court seeking to invalidate, by declaratory judgment, provisions of Pennsylvania's Marriage Law that (a) define marriage as the union of "one man and one woman, 23 Pa.C.S. § 1102; and (2) declare as void in Pennsylvania same-sex marriages entered into in other jurisdictions, 23 Pa.C.S. § 1704.   (Doc. 1).   Plaintiffs have named the Governor of Pennsylvania, the Commonwealth's Secretary of Health, the Attorney General of Pennsylvania, and two county clerks – all in their official capacities.   *Id.* They allege that Pennsylvania's marriage laws deny Plaintiffs due process and equal protection under the Fourteenth Amendment to the U.S. Constitution.   *Id.*

In their claim for relief, Plaintiffs seek:  (i) a declaratory judgment that 23 Pa.C.S. §§ 1102 and 1704 violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution; (ii) a declaratory judgment that 23 Pa.C.S. §§ 1102 and 1704 violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; (iii) a permanent injunction enjoining Defendants from denying Plaintiffs and other same-sex couples the right to marry in the Commonwealth of Pennsylvania, and directing Defendants to recognize marriages validly entered into by Plaintiffs and other same-sex couples outside of the Commonwealth of Pennsylvania; (iv) costs of suit, including

reasonable attorneys' fees under 42 U.S.C. § 1988; and (v) "all further relief to which plaintiffs may be justly entitled." (Doc. 1).

Defendants Corbett and Wolf filed a motion to dismiss Plaintiffs' claims on September 30, 2013. (Doc. 27). This is Defendants Corbett and Wolf's brief in support of their motion.

## III.   <u>QUESTION PRESENTED</u>

Should the Court dismiss Plaintiffs' claims against Governor Corbett on Eleventh Amendment grounds and Plaintiffs' claims against Governor Corbett and Secretary Wolf for failure to state a claim upon which relief may be granted?

## IV.   <u>STANDARD OF REVIEW</u>

### A.   **Standards of Review Under 12(b)(1)**

A party's motion to dismiss for lack of subject matter jurisdiction is properly made pursuant to Federal Rule of Civil Procedure 12(b)(1). A claim may be dismissed for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)(citations omitted). The party seeking to invoke the Court's subject matter jurisdiction has the burden of establishing that such jurisdiction exists. *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1252 (5th Cir. 1998)(citations omitted).

**B.     Standard of Review Under 12(b)(6)**

Dismissal is proper pursuant to Federal Rule of Civil Procedure 12(b)(6) when a party's complaint fails to state a claim upon which relief can be granted. "When deciding a motion to dismiss under Rule 12(b)(6), the District Court must accept the factual allegations as true and resolve all doubts as to the sufficiency of the claim in the plaintiff's favor." *Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 387 (5th Cir. 2001).   To withstand a motion to dismiss, the allegations in the complaint must be enough to raise the right to relief beyond the speculative level.   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   Though the complaint need not contain detailed factual allegations, it must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do..." *Id.*  The United States Supreme Court has stated that "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556).

Under these standards, Plaintiffs' claims against Defendant Corbett should be dismissed for lack of subject matter jurisdiction, and the claims against both Defendants Corbett and Wolf should be dismissed for failure to state a claim.

## V.   ARGUMENT

### A.   The Claims Against Governor Corbett Should Be Dismissed on Eleventh Amendment Immunity Grounds.

The claims against Governor Corbett should be dismissed first and foremost on Eleventh Amendment immunity grounds.

#### 1.   The Eleventh Amendment Bars Plaintiffs' Claims.

Under the Eleventh Amendment,[1] states are immune from suit in federal court, even with regard to suits by their own citizens, "unless (1) the state consents to the suit, or (2) Congress validly abrogates the states' immunity." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974) (citations omitted).  The Supreme Court has held that the Eleventh Amendment extends immunity *to all suits* brought against a state in federal court, regardless of the plaintiff's citizenship status and regardless of whether the suit seeks retrospective monetary relief or prospective equitable relief. *Blatchford v. Native Village of Noatak & Circle Village*, 501 U.S. 775, 779 (1991) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)).

Eleventh Amendment immunity also "extends to state agencies and departments."  *See MCI Telecomm. Corp. v. Bell Atlantic-Pennsylvania*, 271 F.3d

---

[1] The Eleventh Amendment states, in relevant part:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

491, 503 (3d Cir. 2001), as well as to state officers acting in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (citations omitted) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."). Additionally, because the Eleventh Amendment provides both "immunity from suit" as well as "immunity from liability," claims of Eleventh Amendment immunity should be adjudicated at the outset of the matter to preserve the jurisdictional nature of the States' immunity. *See Constantine v. Rectors & Visitors of George Mason Univ*., 411 F.3d 474, 482 (4th Cir. 2005) (like qualified immunity for state officers, "the entitlement [conferred by the Eleventh Amendment] is an immunity from suit rather than a mere defense to liability; and . . . it is effectively lost if a case is erroneously permitted to go to trial.")(citations omitted).

Defendant Corbett, a state official, has been sued in his official capacity as the Governor of the Commonwealth of Pennsylvania. Thus, Eleventh Amendment immunity shields him from suit. Accordingly, the claims against him should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).[2]

---

[2] A claim that a lawsuit is barred by the Eleventh Amendment is properly addressed in a Rule 12(b)(1) motion. *See Blanciak v. Allegheny Ludlum Corp*., 77 F.3d 690, 694 n.2 (3d Cir. 1996) (stating that the "Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction").

## 2. The *Ex Parte Young* Exception Has No Applicability Here.

To the extent that Plaintiffs would rely on the limited exception to Eleventh Amendment immunity recognized by the United States Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908), it is clear that reliance would be misplaced. The *Ex parte Young* exception permits individuals seeking only prospective injunctive relief for ongoing violations of federal law to bring suit against state officials in federal court and applies only in circumstances where the government official is alleged to *have a connection or special relationship* to the statute in question. *Young*, 209 U.S. at 157. The exception is predicated on the notion that an official who performs his duties in a way that contravenes either the Constitution or a federal law does so outside the cloak of state authority. *CSX Trans., Inc. v. Bd. of Public Works, State of West Virginia*, 138 F.3d 537 (4th Cir. 1998). Accordingly, *Young does not even apply* when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute. *1st Westco Corp. v. Sch. Dist. of Phila.*, 6 F.3d 108, 113 (3d Cir. 1993),[3] or where, although the action is nominally against individual officers, the state is the real, substantial party

---

[3] This Court itself applied *1st Westco Corp.*, *supra*, in dismissing claims against the Attorney General in an action that the Court found was properly brought only against officials and employees of the Pennsylvania State Police. *See Matthews v. Elias*, No. 4:CV-06-1760, 2006 U.S. Dist. LEXIS 79302 (M.D. Pa. Oct. 31, 2006) (per Jones, J.).

in interest and the suit in fact is against the state.  *MCI Telecomm. Corp.*, 271 F.3d at 508.

In this case, Plaintiffs' complaint is appropriately devoid of any allegation asserting that the Governor has any connection or special relationship to the laws in question.  Indeed, Plaintiffs' allegations against the Governor are limited to the following:

> Defendant [Corbett] is the Governor of the Commonwealth of Pennsylvania.  In his official capacity, he is the chief executive officer of the Commonwealth and is, pursuant to Article IV, Section 2 of the Pennsylvania Constitution, responsible for the faithful execution of the laws of the Commonwealth of Pennsylvania, including the laws that exclude same-sex couples from marrying or having their marriages recognized (23 Pa.C.S. §§ 1102 and 1704).

Complaint ¶ 94 (footnote added).[4]

General authority to enforce the laws of the state – as Plaintiffs allege here – has never been deemed sufficient to allow suit to be brought against the government official in federal court.  To the contrary, federal courts – including the Third Circuit – have recognized that to expand the law in this fashion would

---

[4] As described *infra*, specific statutes that Plaintiffs claim subject them to detrimental treatment because Pennsylvania's Marriage Law does not allow them to be married (*see* Complaint at ¶ 115) are either beyond the administrative and enforcement responsibilities of any executive official or agency of the Commonwealth government, or they are administered and enforced by specific Commonwealth government officials and agencies.  ***None of the statutes or programs referenced in Plaintiffs' complaint – including the Marriage Law itself – are administered or enforced <u>by the Governor.</u>***

extend *Ex parte Young* "beyond what the Supreme Court intended and held." *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996)(citations omitted).[5]

In *1st Westco Corp. v. Sch. Dist. of Phila.*, 6 F.3d 108 (3d Cir. 1993), the Court of Appeals for the Third Circuit held that though Commonwealth officials generally have a duty to "uphold and defend the constitutionality of all statutes so as to prevent their suspension or abrogation in the absence of a controlling decision by a court of competent jurisdiction," an official needs a concrete connection to the statute and claim at issue in order to be held accountable for declaratory or injunctive relief. *Id.* at 114. To name a public official as a defendant in a challenge to the constitutionality of a statute, there must be a "real, not ephemeral, likelihood

---

[5] *See also Women's Emergency Network v. Bush*, 323 F.3d 937, 949-50 (11th Cir. 2003) ("Where the enforcement of a statute is the responsibility of parties other than the governor…, the governor's general executive power is insufficient to confer jurisdiction."); *Waste Mgmt. Holdings v. Gilmore*, 252 F.3d 316, 330-31 (4th Cir. 2001) (governor's general duty to enforce the laws of Virginia insufficient in circumstances where he lacks a specific duty to enforce the challenged statutes; mere fact that governor is under general duty to enforce state laws "does not make him a proper defendant in every action attacking the constitutionality of a state statute"); *Okpalobi v. Foster*, 244 F.3d 405, 422-25 (5th Cir. 2001) (*en banc*) (constitutional challenge to state tort statute against Governor and Attorney General not viable where no enforcement connection existed between Governor or Attorney General and the statute in question; "[i]t is this unconstitutional conduct, or at least the ability to engage in the unconstitutional conduct, that makes him no longer a representative of the sovereign"); *Shell Oil Co. v. Noel*, 608 F.2d 208, 211 (1st Cir. 1979) (general duty of governor "to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute").

or realistic potential that the [public official's] connection [to the statute at issue] will be employed against the plaintiff's interests." *Id.* (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1208 (3d Cir. 1988)).  The Court further insightfully noted that, "[i]f we were to allow [plaintiffs] to join . . . [State officials] in this lawsuit based on their general obligation to enforce the laws . . ., we would quickly approach the nadir of the slippery slope; each state's high policy officials would be subject to defend every suit challenging the constitutionality of any state statute, no matter how attenuated his or her connection to it." *Id.* at 112-13, 116.[6]

Pennsylvania governors have had claims against them dismissed on this very basis.  In *Lewis v. Rendell*, 501 F. Supp. 2d 671 (E.D. Pa. 2007), for example, relying heavily on *1st Westco*, Judge DuBois dismissed claims against then-Governor Rendell, the Attorney General and several other Commonwealth officials in connection with a challenge to a statute that was administered principally by the Department of Public Welfare.  Because the Secretary of Public Welfare was a

---

[6] The Third Circuit in *1st Westco* also addressed the issue in the context of Article III jurisdiction. The Court noted that a federal court may exercise jurisdiction "only where there is an actual case or controversy to be decided. there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of declaratory judgment." *Id*. at 112-13, 116.  Here, because none of the statutes or programs in the complaint, including the Marriage Law itself, are administered or enforced by the Governor, the claims against him may be dismissed on these grounds as well.

defendant, the challenge to the statute was able to proceed solely against her; the Governor was not a necessary or appropriate defendant.

In a more recent case, the United States Court of Appeals for the Tenth Circuit held specifically that plaintiffs challenging a state's same-sex marriage ban have no cause to sue the Governor based solely on his generalized duty to enforce state law. *Bishop v. Okla. ex rel. Edmondson*, 333 Fed. Appx. 361, 365 (10th Cir. 2009). As in *Bishop*, Plaintiffs in this case make no claim any more specific than that the Governor has the general duty to see that the law is carried out. Thus, based on the allegations of Plaintiffs' complaint, there is no basis under the law to force the Governor to remain a defendant in a case involving a constitutional challenge to a statute that is administered and enforced by other public officials and governmental entities, or that is in many cases administered and enforced entirely outside the purview of the Commonwealth government's executive branch.

In this case, <u>not one</u> of the laws Plaintiffs identify in the complaint is enforced or administered by the Governor:

(1)     Plaintiffs complain that "[a] married person is exempt from inheritance tax on property left to him by an opposite-sex spouse, including the spouse's share of the couple's home, and, thus, protected against economic distress or loss of a home because of an estate tax bill. 72 P.S. § 9116(a)(1.1)(ii). [By

11

contrast, a] same-sex surviving spouse or partner is denied this exemption and must pay a 15% tax, the highest rate, which applies to non-family-members.  72 P.S. § 9116(a)(3)."  Doc. 1, ¶ 115a.

The Governor clearly has no responsibility to administer or enforce the Inheritance and Estate Tax Act.  That is the responsibility of the Department of Revenue, *see* 72 P.S. § 9103 (relating to powers of the Department of Revenue), which is headed by the Secretary of Revenue.  Thus, the Governor is not a proper party in a complaint about how the Inheritance and Estate Tax Act might be applied to any plaintiff as a result of the Marriage Law.

(2)    Plaintiffs say that "[u]nder the workers' compensation laws, the opposite-sex spouse of someone who dies or is injured in the workplace is entitled to damages and may bring suit.  77 P.S. § 431 *et seq.*  Same-sex spouses or partners have no legal standing to sue over their spouse or partner's workplace injury."  Doc. 1, ¶ 115d.

The Governor has no responsibilities for the administration or enforcement of the Workers' Compensation Act.  Those responsibilities belong by law to the Department of Labor and Industry and its Workers' Compensation Appeals Board.  Thus, the Governor cannot properly be called to account for how the Marriage Law might adversely affect Plaintiffs' interests (if any) under the Workers' Compensation Act.

(3)     Plaintiffs are concerned that "[o]pposite-sex widows and widowers of military personnel and veterans are eligible for numerous assistance programs. *E.g.*, 51 Pa.C.S. §§ 3502, 7319, 8502; 51 P.S. §§ 20010, 20046, 20096, 20125, 20305." But "[t]hese programs are not available to same-sex surviving spouses or partners of military personnel and veterans." Doc. 1, ¶ 115g.

Once again, the Governor has no responsibility respecting the administration of these statutes, which are part of the Military and Veterans Code and related statutes.  Administrative and enforcement responsibilities for these laws reside with the Adjutant General and Department of Military and Veterans' Affairs. Thus, the Governor is not a proper defendant in the claim of any plaintiff who contends that he or she has been (or allegedly expects to be) unconstitutionally deprived of benefits provided under these statutes.

(4)     Plaintiffs say:  "Opposite-sex widows and widowers of firefighters, police officers, and other first responders killed in the line of duty are provided financial assistance.  53 P.S. § 891(d) ($100,000 payment to surviving spouse of a firefighter, ambulance or rescue squad member, hazardous material response team member, law enforcement officer, or National Guard member who died in the line of duty).  [But t]his assistance is not provided to same-sex surviving spouses or partners of first responders." *See* Doc. 1, ¶ 115i.

The referenced statutory provision is part of the Emergency and Law Enforcement Personnel Death Benefits Act. This statute is administered by the Department of General Services. *See* 4 Pa. Code § 4.191. The Governor has no responsibility to administer or enforce this act and, therefore, cannot properly be made a party to any complaint about how this statute is being administered to the alleged detriment of any plaintiff.

(5)    Plaintiffs complain that "[p]roperty tax rebates or rent rebates are available under Pennsylvania law to certain people over the age of 50 who are widows and widowers of opposite-sex spouses. 53 P.S. §§ 6926.1303-6926.1306." But "[t]hey are not available to same-sex surviving spouses or partners." *See* Doc. 1, ¶ 115j.

The referenced statutory provisions, which provide assistance to senior citizens in the form of property tax and rent rebates, are part of the Taxpayer Relief Act. The provisions in question are administered by the Department of Revenue. The Governor has no responsibility to administer or enforce the Taxpayer Relief Act and, therefore, cannot be properly held responsible for how it is administered.

(6)    "Gold Star Family" license plates, Plaintiffs note, are available to the opposite-sex widows and widowers of people killed on active military duty. 75 Pa.C.S. § 1365. By contrast, "[s]urviving same-sex spouses or partners are not

eligible for license plates recognizing their loved one's sacrifice." *See* Doc. 1, ¶ 115k.

The referenced statute is part of the Vehicle Code, which is administered and enforced by the Department of Transportation.  The Governor has no statutory responsibilities respecting this section of the Vehicle Code.  Consequently, any complaint by any plaintiff about his or her treatment under this Vehicle Code provision is not properly brought against the Governor.

(7)   Other statutes referenced in ¶ 115 of Plaintiffs' complaint are directly administered and enforced by *no* executive agency or official of the Commonwealth, much less the Governor, *to wit*—

- Complaint ¶ 115b cites 20 Pa.C.S. § 2102, a provision of the Probate, Estates and Fiduciaries Code governing intestacy that involves no executive official or agency of the Commonwealth government.

- Complaint ¶ 115c references 20 Pa.C.S. § 5461(d)(1)(i), a provision of the Health Care Agents and Representatives Act regarding spousal incapacity that is administered by health care providers, not in any relevant way by an executive agency of the Commonwealth government.

- Complaint ¶ 115e complains about the inapplicability to same-sex couples of 23 Pa.C.S. § 4603(a)(1)(i), a provision of the Domestic

Relations Code relating to support of indigent persons that is not directly enforced or administered by any executive agency of the Commonwealth government.

- Complaint ¶ 115f cites 23 Pa.C.S. § 3301(c) (a provision of the Divorce Code, which is administered by the courts, not executive agencies of the Commonwealth government) and complains of its inapplicability to same-sex couples. The Governor has nothing to do with the administration of the Divorce Code.

- Complaint ¶ 115h complains about the treatment of same-sex couples under various statutes that apply to employees of entities of *local* government – statutes in which no executive agency of the Commonwealth government is responsible directly to administer or enforce.

Because Plaintiffs do not allege that Defendant Corbett has some "connection with the enforcement" of any of the laws in question, including 23 Pa.C.S. §§ 1102 and 1704, the *Ex parte Young* exception does not apply. Therefore, Plaintiffs' claims against Defendant Corbett unquestionably must be dismissed.[7]

---

[7] Even if individual plaintiffs might have claims to make against specific Commonwealth officials based on their <u>actual</u> circumstances, those plaintiffs would have no viable claim to make against the Governor under any set of

### 3. Any Claim That Discovery Is Necessary To Clarify The Issue Is Without Merit.

To the extent Plaintiffs would claim that Defendant Corbett's motion to dismiss based on immunity should be denied because Plaintiffs intend to *conduct discovery* to determine what relation Governor Corbett has to the challenged laws, *see* Proposed Case Management Plan (Doc. 38), at § 1.3, Plaintiffs' arguments fail for three reasons.

*First*, it is well-settled that federal courts do not look beyond the allegations in the complaint to determine whether the *Ex parte Young* exception applies. *See Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) ("In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct 'a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"). Thus, this Court's *Ex parte Young* analysis must be confined to Plaintiffs' complaint as it is currently framed. Evidence adduced by discovery can neither change nor add to this analysis.[8]

---

plausible facts. They must pursue their claims against the public officials who have the specific statutory responsibility to administer or enforce the law.

[8] In the event that through discovery or other means Plaintiffs obtain information sufficient to make a claim against the Governor under the *Ex parte Young* doctrine, they may seek to amend their complaint to make any claim against the Governor that they legitimately believe can be supported under the law.

*Second*, "[i]f a complaint fails to allege . . . that defendant state officers have ever taken or threatened to take any action with respect to a state statute[,] then there is no 'actual controversy' within the Declaratory Judgment Act, and there is 'no case or controversy' within Article III." *Shell Oil Co. v. Noel*, 608 F.2d 208, 213 (1st Cir. 1979). Plaintiffs are limited to the allegations in their complaint; because their allegations fail to give rise to a "case or controversy," any decision based on what Plaintiffs <u>might uncover</u> would be purely advisory and outside this Court's Article III jurisdiction.

*Third*, deferring a ruling on this motion while discovery is undertaken would defeat the purpose of this immunity – which (as set forth above) includes immunity from "suit" as well as immunity from liability. *Constantine*, *supra*, 411 F.3d at 482.

In sum, application of the principles identified above to the allegations in Plaintiffs' complaint against the Governor makes clear that Plaintiffs' claims against the Governor are barred by the Eleventh Amendment and that no exception to this immunity may be said to apply. Accordingly, Plaintiffs' claims against Defendant Corbett must be dismissed on Eleventh Amendment immunity grounds.

**B.     The Claims Against Both Defendants Corbett and Wolf Should Be Dismissed on The Grounds That They Fail To State A Claim Upon Which Relief May Be Granted.**

The claims against <u>both</u> Corbett and Wolf should be dismissed because this Court is precluded from exercising federal subject matter jurisdiction over any of Plaintiffs' claims under the United States Supreme Court's decision in *Baker v. Nelson*, 409 U.S. 810 (1972).  In *Baker*, the United States Supreme Court held that the question involved – a state's definition of marriage – is traditionally within the province of the states.  Thus, the Court ruled, the issue presented – as in this case, whether a state statute defining marriage as limited to one man and one woman – did not present a "substantial federal question" for the Supreme Court to decide. Because *Baker* is binding on this Court, it has no choice but to dismiss this action for failure to state a substantial federal question.

### 1.     *Baker* Involved The Issue Presented Here.

*Baker* involved a request to the United States Supreme Court to review an appeal from the Supreme Court of Minnesota, which had held that a state law banning same-sex marriages did not violate the Due Process and Equal Protection Clauses of the United States Constitution.  When the losing plaintiffs appealed (as was their right under federal law at the time), the U.S. Supreme Court held that the appeal failed to raise a viable and justiciable federal question.  *Id.*   Under 28 U.S.C. § 1257(2) – the statute in effect at the time – the Supreme Court had "no

discretion to refuse adjudication of the case on the merits."  Consequently, the Supreme Court's dismissal for lack of a substantial federal question is a "decision on the merits" and binding precedent that prevents "lower courts from coming to opposite conclusions on the precise issue presented."  *Hicks v. Miranda*, 422 U.S. 332, 344 (1975) (quoting *Mandel v. Bradley*, 432 U.S. 173, 176 (1977)).[9]

Federal courts throughout the country recognize that *Baker* is binding in cases involving challenges to marriage laws.  For example, in *Massachusetts v. United States Dep't of HHS*, 682 F.3d 1 (1st Cir. 2012), *cert denied*, 133 S. Ct. 2887 (2013), the First Circuit Court of Appeals held that *Baker* was a binding precedent that precluded review of all arguments resting on "a constitutional right to same-sex marriage."  *Id.* at 3.  Likewise, in *Jackson v. Abercrombie*, 884 F. Supp. 2d 1065 (D. Haw. 2012), the U.S. District Court in Hawaii, in an opinion upholding Hawaii's law banning same-sex marriage, held that *Baker* is the "last word" from the Supreme Court regarding the constitutionality of a state law limiting marriage to opposite-sex couples and that *Baker* remained binding on the court as to both the due process and equal protection claims.

---

[9] The summary dismissal of an appeal for want of a substantial federal question operates as a decision on the merits.  *Hicks v. Miranda*, 422 U.S. 332, 344-45 (1975) ("[U]nless and until the Supreme Court should instruct otherwise, inferior federal courts had best adhere to the view that if the Court has branded a question as unsubstantial, it remains so except when doctrinal developments indicate otherwise. . . .  [L]ower courts are bound by summary decisions by this Court until such time as the Court informs [them] that [they] are not.").

In *Sevcik v. Sandoval*, 911 F. Supp. 2d 996 (D. Nev. 2012), the District Court in Nevada held that the plaintiffs' claims – that the Equal Protection Clause of the 14th Amendment prevents a state from refusing to permit same-sex marriages and from refusing to recognize same sex marriages performed in other states[10] – was "a garden-variety equal protection challenge precluded by *Baker*."[11]

Similarly, in *Wilson v. Ake*, 354 F. Supp. 2d 1298, 1305 (M.D. Fla. 2005), in a challenge to Florida's marriage statutes and the federal Defense of Marriage Act, the U.S. District Court for the Middle District of Florida dismissed claims against the U.S. Attorney General, in part on *Baker* grounds, holding:   "The Supreme Court has not explicitly or implicitly overturned its holding in *Baker* or provided the lower courts, including this Court, with any reason to believe that the holding is invalid today."

---

[10] As in this case, the plaintiffs in *Sevcik* comprised "eight same-sex couples who desire to marry one another in Nevada or who have validly married one another in other jurisdictions and desire to have their marriages recognized as 'marriages' by the State of Nevada."  911 F. Supp. 2d at 998.

[11] The district court in *Sevcik* also held that the Ninth Circuit's decision in *Perry v. Brown*, 671 F.3d 1052 (9th Cir. 2012), *vacate and remanded,* 133 S. Ct. 2675 (2013), is "consistent with the view that *Baker* precludes a large part of the present challenge."  911 F. Supp. at 1003.  Indeed, the court noted, "[t]he *Perry* court was clear and emphatic that its decision was based solely upon the Supreme Court's withdrawal-of-existing-rights theory adopted in *Romer* [*v. Evans*, 517 U.S. 620] in 1996, twenty-four years after *Baker* was decided, not upon a general equal protection challenge, which the Court finds *Baker* precludes."

Finally, in *Citizens for Equal Protection v. Bruning*, 455 F.3d 859, 870 (8th Cir. 2006), the Eighth Circuit Court of Appeals held that *Baker* stands at least for exercising "restraint" when it comes to addressing due process and equal protection challenges against laws prohibiting marriage by same-sex couples.[12]

## 2. *Baker* **Is Still Binding Precedent Post-*Windsor***.

To the extent that Plaintiffs would argue that *Baker* is no longer "good law" in light of *United States v. Windsor*, 133 S. Ct. 2675 (2013), it is clear that this argument is without merit.  Neither *Windsor* nor the Supreme Court's decision in *Perry* explicitly or implicitly overruled *Baker*.

*First*, in reaching its decision in *Windsor*, the Supreme Court majority took great pains to acknowledge that regulation of domestic relations matters

---

[12] The following cases distinguish *Baker* on the basis of facts but, importantly, recognize that *Baker* remains good law:  *In re Kandu*, 315 B.R. 123, 138 (Bankr. W.D. Wash. 2004) (in constitutional challenge to federal DOMA in context of bankruptcy, court concluded that *Baker* did not control because of the dissimilarity between state laws governing marriage licenses in *Baker* and the federal DOMA and bankruptcy code, as well as because "doctrinal developments" indicate that *Baker* is no longer binding); *Perry v. Brown*, 671 F.3d 1052 (9th Cir. 2012), *vacated and remanded*, 133 S.Ct. 2652 (2013) (in challenge to California's Proposition 8, Ninth Circuit distinguished *Baker* where  court was not asked to address the constitutionality of state's ban on same-sex marriage but, rather, "whether the people of a state may by plebiscite strip a group of a right or benefit, constitutional or otherwise, that they had previously enjoyed on terms of equality with all others in the state"); *Windsor v. United States*, 699 F.3d 169, 177 (2d Cir. 2012), *aff'd*, 133 S.Ct. 2675 (2013) (court concluded that *Baker* did not control because the question in *Windsor* – whether the federal government may constitutionally define marriage as it does in § 3 of DOMA – was sufficiently distinct from the question in *Baker*, which was whether same-sex marriage may be constitutionally restricted by the states).

traditionally has fallen within the <u>exclusive province of the states</u>.  *Windsor*, *supra*, at 2691.  The Court emphasized in *Windsor* the "significance of state responsibilities for the definition and regulation of marriage [that] date[] to the Nation's beginning."  *Id.* (citing *In re Burrus*, 136 U.S. 586, 593-94 (1890) ("The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States.")).  "[W]hen the Constitution was adopted," the Court recounted, "the common understanding was that the domestic relations of husband and wife and parent and child were matters reserved to the States."  *Id.*  "[T]hrough our history," said the Court, "the Federal Government … has deferred to state-law policy decisions with respect to domestic relations."  *Id.*

   *Second*, it is just as important to understand what the Supreme Court in *Windsor* <u>did not</u> decide.  While widely regarded as having struck down the federal Defense of Marriage Act, the Supreme Court's decision in *Windsor* struck down only one of DOMA's provisions – section 3, which defines "marriage" <u>for purposes of federal law</u> as limited to the union of one man and one woman.  The Supreme Court did not strike down DOMA's other important provision – section 2, which provides that states are not required to recognize same-sex marriages performed in a different state.

*Windsor* also <u>did not hold</u> that a fundamental liberty interest in marriage extends to same sex couples[13]; it <u>did not hold</u> that states must allow or recognize same sex marriages; it <u>did not hold</u> that the issue of whether same sex marriage should be permitted is subject to strict scrutiny; and it <u>did not hold</u> that reserving marriage to one man and one woman violates the Equal Protection Clause of the Fourteenth Amendment. Moreover, and more importantly, *Windsor* <u>did not overrule</u> the long-standing precedent of *Baker*. In fact, <u>the Supreme Court majority in *Windsor* does not even address or mention *Baker*</u>.

While Plaintiffs have urged and will continue to urge this Court to allow them a full-blown trial (*see* Doc. 38), the truth of the matter is that this case should and must be decided by this Court as a matter of law without the need for any witnesses, testimony or exhibits. This Court need only determine, as numerous other federal courts have, that the Supreme Court's decision in *Baker* is binding on this Court and that only the Supreme Court (should it choose to do so) may overrule this precedent. On this basis alone, this Court should dismiss <u>all claims</u> against Defendants Corbett and Wolf in their entirety.

---

[13] Edith Windsor's spouse died in 2009; thus, whether she had a fundamental right to marry was not an issue in the case.

## VI.   **CONCLUSION**

For all the foregoing reasons, Defendants Corbett and Wolf respectfully request that this Court dismiss Plaintiffs' complaint for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).

Respectfully submitted,

Date: October 7, 2013

By:   /w/William H. Lamb
      William H. Lamb
      LAMB MCERLANE, PC
      24 East Market Street
      West Chester, PA  19380
      (610) 430-8000

      *Counsel for Defendants,*
      *Governor Thomas W. Corbett*
      *and Secretary of Health*
      *Michael Wolf*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendants' Governor Thomas W. Corbett and Secretary of Health Michael Wolf's Brief in Support of Their Motions to Dismiss in the above captioned matter was served on this, the 7th day of October, 2013, to the attorneys of record as follows:

Mark A. Aronchick, Esquire
John  S. Stapleton, Esquire
Dylan. Steinberg, Esquire
Rebecca S. Melley, Esquire
HANGLEY ARONCHICK, SEGAL, PUDLIN & SCHILLER
One Logan Square, 27th Floor
Philadelphia, PA  19103
*Counsel for Plaintiffs*

James D. Esseks, Esquire
Leslie Cooper, Esquire
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY  10004
*Counsel for Plaintiffs*

Mary Catherine Roper, Esquire
Molly M. Tack-Hooper, Esquire
AMERICAN CIVIL LIBERTIES UNION OF PENNSYLVANIA
P.O. Box 40008
Philadelphia, PA  19106
*Counsel for Plaintiffs*

Witold J. Walczak, Esquire
AMERICAN CIVIL LIBERTIES UNION OF PENNSYLVANIA
313 Atwood Street
Pittsburgh, PA  15213
*Counsel for Plaintiffs*

Seth F. Kreimer, Esquire
3400 Chestnut Street
Philadelphia, PA  19144
*Counsel for Plaintiffs*

M. Abbegael Giunta Deputy Attorney General
Gregory R. Neuhauser, Chief Deputy Attorney General
OFFICE OF ATTORNEY GENERAL
Strawberry Square, 15th Floor
Harrisburg, PA  17120
*Counsel for Defendant Kane*

Nathan D. Fox, Esquire
BEGLEY CARLIN & MANDIO LLP
680 Middletown Blvd.
Langhorne, PA  19047
*Counsel for Defendant Petrille*

Robert Grimm, Esquire
Thomas J. Jezewski, Esquire
SWARTZ CAMPBELL LLC
4750 US Steel Tower
600 Grant Street
Pittsburgh, PA  15219
*Counsel for Defendant Poknis*

**LAMB McERLANE PC**

By: /s/William H. Lamb
William H. Lamb
Attorney I.D. No. 04927
24 East Market Street
P.O. Box 565
West Chester, PA  19381
wlamb@chescolaw.com
(610) 430-8000

27