UNPUBLISHED OPINIONS

**Westlaw.**

Not Reported in A.3d, 2012 WL 540608 (N.J.Super.L.)
**(Cite as: 2012 WL 540608 (N.J.Super.L.))**

**C**
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

Superior Court of New Jersey,
Law Division,
Mercer County.
GARDEN STATE EQUALITY; Daniel Weiss and
John Grant; Marsha Shapiro and Louise Walpin;
Maureen Kilian and Cindy Meneghin; Sarah Kili-
an–Meneghin, a minor, by and through her guardi-
ans; Erica and Tevonda Bradshaw; Teverico Barack
Hayes Bradshaw, a minor, by and through his
guardians; Marcye and Karen Nich-
olson–McFadden; Kasey Nicholson–McFadden, a
minor, by and through his guardians; Maya Nich-
olson–McFadden, a minor, by and through her
guardians; Thomas Davidson and Keith Heimann;
Marie Heimann Davidson, a minor, by and through
her guardians; Grace Heimann Davidson, a minor,
by and through her guardians; Elena and Elizabeth
Quinones; Desiree Nicole Rivera, a minor, by and
through her guardian; Justine Paige Lisa, a minor,
by and through her guardian; Patrick James
Roylance, a minor, by and through his guardian;
and Eli Quinones, a minor, by and through his
guardians, Plaintiffs,
v.
Paula DOW, in her official capacity as Attorney
General of New Jersey; Jennifer Velez, in her offi-
cial capacity as Commissioner of the New Jersey
Department of Human Services, and Mary E.
O'Dowd, in her official capacity as Commissioner
of the New Jersey Department of Health and Senior
Services, Defendants.

Feb. 21, 2012.

**Background:** Lesbian, gay, bi-sexual, and trans-
gender (LGBT) civil rights organization, seven
same-sex couples who resided in New Jersey, and

ten of their children brought action against Attor-
ney General, Commissioner of the Department of
Human Services, and the Commissioner of the De-
partment of Health. The action asserted claims for
denial of equal protection under the State and Fed-
eral Constitutions, fundamental right to marry, and
substantive due process.

**Holding:** The Superior Court, Law Division, Mer-
cer County, Feinberg, A.J.S.C., held that plaintiffs
stated claim against defendants on the basis that
Civil Union Act violated the Equal Protection
Clause of the Fourteenth Amendment.
    Reconsideration granted and count reinstated.

West Headnotes

**Constitutional Law 92 ⊰⇒3438**

92 Constitutional Law
    92XXVI Equal Protection
        92XXVI(B) Particular Classes
            92XXVI(B)12 Sexual Orientation
                92k3436 Families and Children
                    92k3438 k. Marriage and Civil Uni-
ons. Most Cited Cases

**Marriage 253 ⊰⇒17.5(1)**

253 Marriage
    253k17.5 Same-Sex and Other Non-Traditional
Unions
        253k17.5(1) k. In General. Most Cited Cases
    Lesbian, gay, bi-sexual, and transgender
(LGBT) civil rights organization, seven same-sex
couples who resided in New Jersey, and ten of their
children stated claim against Attorney General,
Commissioner of the Department of Human Ser-
vices, and Commissioner of the Department of
Health and Senior Services, on the basis that Civil
Union Act violated the Equal Protection Clause of
the Fourteenth Amendment by denying them access
to marriage and relegating them to a separate and
arguably second class status, while not serving any
legitimate state interest. U.S.C.A. Const.Amend. 14

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in A.3d, 2012 WL 540608 (N.J.Super.L.)
**(Cite as: 2012 WL 540608 (N.J.Super.L.))**

; 42 U.S.C.A. § 1983; N.J.S.A. 37:1–28.

Lawrence S. Lustberg and Jonathan Manes, for the plaintiffs (Gibbons, P.C., attorneys; Mr. Lustberg and Mr. Manes, on the joint brief).

Hayley J. Gorenberg, for the plaintiffs, admitted pro hac vice (Lambda Legal, attorneys; Ms. Gorenberg, on the joint brief).

Jeffrey S. Chiesa, Attorney General of New Jersey, for the defendants (complaint named former Attorney General Paula Dow as defendant) Kevin R. Jespersen, Assistant Attorney General, of counsel and on the brief and Jean P. Reilly, Deputy Attorney General, on the brief).

FEINBERG, A.J.S.C.

*I.*

*BACKGROUND*

*1 On June 26, 2002, after being denied marriage licenses in their respective jurisdictions, seven same-sex couples (" *Lewis* plaintiffs"), in permanent committed relationships for more than ten years, filed a complaint in the Superior Court, Law Division, Hudson County. Plaintiffs also sought injunctive relief compelling State officials ("defendants" or "State"), to grant them marriage licenses.[FN1] An amended complaint was filed on October 9, 2002 and by consent, on November 22, 2002, venue was transferred to Mercer County.

> FN1. The named defendants were Gwendolyn L. Harris, former Commissioner of the Department of Human Services, Clifton R. Lacy, former Commissioner of the Department of Health and Senior Services, and Joseph Komosinski, former Acting State Registrar of Vital Statistics.

In challenging the State's denial of marriage licenses, plaintiffs argued they were deprived of statutory protections, benefits, and mutual responsibilities accorded to heterosexual couples in violation of the liberty and equal protection guarantees of Article I, Paragraph 1 of the New Jersey Constitu-

tion. Furthermore, plaintiffs asserted that third-party entities, including insurance companies and private employers, failed to accord benefits to same-sex couples.

Both parties moved for summary judgment. On November 5, 2003, this court granted summary judgment in the State's favor and dismissed the complaint. On the record, however, the court referred to pending legislation intended to extend healthcare, insurance coverage, and other benefits to same-sex couples: (1) the "Family Equality Act" that established domestic partnerships which was introduced on June 9, 2003; and (2) an act to establish "Civil Unions" was introduced in 2003 as well. *See* B. 3743, 210th Leg. (N.J.2003); *see also* B. 3762, 210th Leg. (N.J.2003).

As anticipated, the Legislature adopted the Domestic Partnership Act ("the DPA"), *N.J.S.A.* 26:8A–1 *et seq.,* effective July 10, 2004. The DPA provided that "all persons in domestic partnerships should be entitled to certain rights and benefits that are accorded to married couples...." *N.J.S.A.* 26:8A–2.

In 2005, a divided panel of the Appellate Division in *Lewis v. Harris,* 378 *N.J.Super.* 168, 875 A.2d 259 (App.Div.2005), held the State's marriage statutes did not contravene the substantive due process and equal protection guarantees of the State Constitution. *N.J. Const .* art. I, ¶ 1. Judge Skillman, writing for the majority, noted that only the Legislature could authorize same-sex marriage. Lewis, supra, 378 *N.J.Super.* at 194, 875 A.2d 259. Judge Collester, Jr., dissenting, concluded that substantive due process and equal guarantees of Article I, Paragraph 1 obligated the State to afford same-sex couples the right to marry on terms equal to those afforded to opposite-sex couples. *Id.* at 201, 875 A.2d 259.

On October 25, 2006, the Supreme Court of New Jersey, in *Lewis v. Harris,* 188 *N.J.* 415, 908 A.2d 196 (2006), affirmed in part and modified in part the judgment of the Appellate Division. In

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in A.3d, 2012 WL 540608 (N.J.Super.L.)
**(Cite as: 2012 WL 540608 (N.J.Super.L.))**

*Lewis,* the Court held:

To comply with the equal protection guarantee of Article I, Paragraph 1 of the New Jersey Constitution, the State must provide to same-sex couples, on equal terms, the full rights and benefits enjoyed by heterosexual couples. The State can fulfill that constitutional requirement in one of two ways. It can either amended the marriage statutes to include same-sex couples or enact a parallel statutory structure by another name, in which same-sex couples would not only enjoy the rights and benefits, but also bear the burdens and obligations of civil marriage. If the State proceeds with a parallel scheme, it cannot make entry into same-sex civil union any more difficult than it is for heterosexual couples to enter the state of marriage. It may, however, regulate that scheme similarly to marriage and, for instance, restrict civil unions based on age and consanguinity and prohibit polygamous relationships.

*2 [*Id.* at 463, 908 A.2d 196.]

The Court's ruling firmly established that same-sex couples must be afforded the same rights and benefits enjoyed by opposite-sex couples in civil marriage. The Court determined, however, in the first instance, that it was the Legislature's prerogative to decide whether to open the institution of civil marriage to same-sex couples or to devise a parallel statutory scheme. A parallel statutory scheme, if selected, would be required to provide equal rights and benefits to same-sex couples as those enjoyed by heterosexual couples in civil marriage. *Id.* at 222–23.

In response to the *Lewis* opinion, the New Jersey Legislature enacted the Civil Union Act. *N.J.S.A.* 37:1–28 *et seq.*

On March 18, 2010, the *Lewis* plaintiffs filed a motion in aid of litigant's rights challenging the failure of the Civil Union Act to fulfill the *Lewis* Court's mandate. The complaint sought an order from the Court to compel the Legislature to open the institution of civil marriage to same-sex couples. On July 26, 2010, finding that the action should be heard in the Superior Court, the Court denied plaintiffs' motion to enforce litigant's rights, without prejudice.

On June 29, 2011, plaintiffs filed a four-count complaint in the Superior Court, Law Division, Mercer County. Plaintiffs are Garden State Equality, an organization with more than 82,000 members, which advocates for lesbian, gay, bi-sexual, and transgender ("LGBT") civil rights, seven same-sex couples who reside in New Jersey and ten of their children.

Defendants are named in their official capacities based on their respective roles in implementing and enforcing New Jersey's laws: Paula Dow, the Attorney General of the State of New Jersey, Jennifer Velez, the Commissioner of the New Jersey Department of Human Services, and Mary E. O'Dowd, the Commissioner of the New Jersey Department of Health and Senior Services.

Counts one through four, respectively, assert a denial of equal protection under Article I, Paragraph 1 of the New Jersey Constitution; a denial of the fundamental right to marry under Article I, Paragraph 1 of the New Jersey Constitution; a denial of equal protection under the Fourteenth Amendment to the United States Constitution, in violation of 42 *U.S.C.* § 1983; and a denial of substantive due process under the Fourteenth Amendment of the United States Constitution in violation of 42 *U.S.C.* § 1983.

On August 10, 2011, defendants filed a motion to dismiss the complaint. On November 29, 2011, the court denied the motion to dismiss count one and granted the motion to dismiss counts two, three and four.[FN2]

> FN2. The court heard oral argument on November 4, 2011.

On December 19, 2011, plaintiffs filed a mo-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in A.3d, 2012 WL 540608 (N.J.Super.L.)
(Cite as: 2012 WL 540608 (N.J.Super.L.))

tion for reconsideration to reinstate count three of the complaint. The State filed opposition and plaintiffs filed a reply.

Plaintiffs assert: (1) under Section 1983 it is not necessary to demonstrate that the right at issue is "well-established" or the existence of a fundamental right to same-sex marriage; (2) the court overlooked its role in enforcing Federal Constitutional Rights; (3) other courts have considered challenges to discriminatory state marriage practices based on Federal Constitutional grounds; and (4) the interests of justice warrant permitting plaintiffs to develop a full record for appellate review.

**\*3** In opposition to the motion for reconsideration, the State argues: (1) the Supreme Court's dismissal of the appeal in *Baker v. Nelson,* 409 *U.S.* 810, 93 *S.Ct.* 37, 34 *L.Ed.2d* 65 (1972), establishes that a state statute limiting marriage to heterosexual couples does not violate the Federal Equal Protection Clause; (2) this court must apply a rational basis test in evaluating the Federal Equal Protection claim because there is no fundamental right or suspect/quasi-suspect classification; (3) the limitation of the designation of "marriage" to heterosexual couples satisfies the rational basis test and is valid under the Federal Equal Protection Clause; and (4) the Federal Equal Protection claim fails in the absence of state action.

On January 30, 2012, the plaintiffs filed a reply. Plaintiffs argue: (1) *Baker v. Nelson* is not binding on their Federal Equal Protection claim; (2) heightened scrutiny applies to the Federal Equal Protection claim since sexual orientation is considered a suspect class; (3) heightened scrutiny applies to the Equal Protection claim because prohibiting same-sex couples from marrying also constitutes discrimination based on sex; (4) even based under a rational basis test, the Civil Union Act cannot survive as a matter of federal law; and (5) the State action alleged is sufficient to maintain a cause of action.

Without objection from the State, the court permitted plaintiffs to file a supplemental letter brief, dated February 10, 2012. The letter brief addresses the decision by the Ninth Circuit in *Perry v. Brown,* No. 10–16696 (9th Cir. Feb. 7.2012). Plaintiffs assert the reasoning in *Perry,* despite its reference to specific circumstances present in California, supports their claim under the Federal Equal Protection clause.[FN3]

> FN3. Consistent with this court's prior practice, the court provided counsel with a tentative decision the week before the return date. Counsel elected to waive oral argument.

*2*
*ANALYSIS*

Rule 4:49–2 provides "a motion for rehearing or reconsideration seeking to alter or amend a judgment or order shall be served not later than 20 days after service of the judgment or order upon all parties by the party obtaining it." *R.* 4:49–2. The "motion shall state with specificity the basis on which it is made, including a statement of the matters or controlling decisions which counsel believes the court has overlooked or as to which it has erred." *Ibid.*

"Reconsideration is a matter within the sound discretion of the court, to be exercised in the interest of justice". *Cummings v. Bahr,* 295 *N.J.Super.* 374, 384, 685 A.2d 60 (App.Div.1996) (quoting *D'Atria v. D'Atria,* 242 *N.J.Super.* 392, 401, 576 A.2d 957 (Ch.Div.1990)). In order to succeed, a litigant on a motion for reconsideration is required to establish that the court expressed its decision on a "palpably incorrect or irrational basis," or did not properly consider "probative, competent evidence." *D'Atria, supra,* 242 *N.J.Super.* at 401, 576 A.2d 957.

"Alternatively, if a litigant wishes to bring new or additional information to the [c]ourt's attention which it could not have provided on the first application, the [c]ourt should, in the interest of justice (and in the exercise of sound discretion), consider

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in A.3d, 2012 WL 540608 (N.J.Super.L.)
(Cite as: 2012 WL 540608 (N.J.Super.L.))

the evidence. Nevertheless, motion practice must come to an end at some point, and if repetitive bites at the apple are allowed, the core will swiftly sour. Thus, the [c]ourt must be sensitive and scrupulous in its analysis of the issues in a motion for reconsideration." *Cummings,* supra, 295 *N.J.Super.* at 384, 685 A.2d 60 (quoting *D'Atria, supra,* 242 *N.J.Super.* at 401–02, 576 A.2d 957).

**\*4** As a preliminary matter, here, the parties dispute whether *Baker v. Nelson, supra,* 409 *U.S.* at 810 is binding. For the reasons set forth herein, it is not.

In *Baker v. Nelson,* 291 Minn. 310, 191 *N.W.2d* 185 (Minn.1971), two adult male residents of Hennepin County, Minnesota, sought and were denied a marriage license by the county clerk. Plaintiffs challenged a Minnesota statute which declared a lawful marriage to be only between "persons of the opposite sex" under both the Equal Protection and Due Process guarantees of the Federal Constitution. [FN4] *Ibid.*

> FN4. While plaintiffs challenged the statute under the First and Eighth Amendments, the claims were dismissed by the trial court.

The Minnesota Supreme Court held the State's laws prohibiting same-sex marriage did not violate the Equal Protection Clause of the Fourteenth Amendment. *Baker, supra,* 191 *N.W.2d* at 187. The decision was appealed to the United States Supreme Court. The Supreme Court dismissed the appeal for want of a substantial federal question. *Baker v. Nelson, supra,* 409 *U.S.* at 810. [FN5]

> FN5. Until 1988, the Supreme Court had mandatory appellate jurisdiction under 28 *U.S.C.* § 1257(2) which was repealed.

A dismissal for want of a substantial federal question is a decision on the merits that is binding on lower courts. *Hicks v. Miranda,* 422 *U.S.* 332, 344–45, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975).

"The scope of the rule is narrow ... It is dispositive only of 'the specific challenges presented in the statement of jurisdiction.' " *Smelt v. County of Orange,* 374 *F.Supp.2d* 861, 872 (C.D.Cal.2005) (citing *Mandel v. Bradley,* 432 *U.S.* 173, 176, 97 S.Ct. 2238, 53 L.Ed.2d 199 (1977) (per curiam)), *aff'd in part and vacated in part,* 447 *F.3d* 673 (9th Cir.Cal .2006). "It prevents lower courts from coming to opposite conclusions on the precise issues presented and necessarily decided by the dismissal, but it does not affirm the reasoning or the opinion of the lower court whose judgment is appealed." *Id.* at 872 (internal quotations omitted). "It remains a decision on the merits of the precise questions presented 'except when doctrinal developments indicate otherwise.' " *Hicks, supra,* 422 *U.S.* at 344 (quoting *Port Auth. Bondholders Protective Comm. v. Port of N.Y. Auth.,* 387 *F.2d* 259, 260 n. 3 (2d Cir.1967)).

*Baker* was decided forty years ago and both doctrinal and societal developments since *Baker* indicate that it has sustained serious erosion. The United States Supreme Court has decided several pertinent cases both contemporaneous with *Baker* and more recently which indicate that the issue of denying same-sex couples access to the institution of marriage would not be considered "unsubstantial" today.

One such development was the Supreme Court's invalidation of anti-miscegenation laws in *Loving v. Virginia,* 388 *U.S.* 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967). While *Loving* was decided a decade before *Baker, Loving* is significant when considered in its historical context.

In *Loving,* the court considered whether a statutory scheme adopted by the Virginia Legislature to prevent marriages between persons solely based on racial classifications violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment. The Court concluded that "[t]here can be no doubt that restricting the freedom to marry solely because of racial classifications violates the central meaning of the Equal Protection Clause." *Loving,*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in A.3d, 2012 WL 540608 (N.J.Super.L.)
**(Cite as: 2012 WL 540608 (N.J.Super.L.))**

*supra,* 388 *U.S.* at 1823.

**\*5** Today, a state law limiting an individual's right to marry based on racial classifications is patently repugnant to the Federal Constitution. However, at the time *Loving* was decided, the United State Supreme Court had never addressed whether a statute limiting marriages solely on the basis of race would be impermissible. For decades, many people considered marriage to be appropriately between persons of the same race. While surprising by today's standards, nonetheless, it took many years for the court to render a decision invalidating these laws based on the Federal Equal Protection Clause.

We are now at a point in history where same-sex couples face similar challenges. Courts are now presented with a new type of classification, namely, sexual orientation. Clearly, the denial of the title of marriage to same-sex couples' relationships has been likened by courts and scholars to other forms of discrimination once considered to be appropriate. As one scholar noted:

> Just as the official separation of races was a stimulant to racial prejudice and the denial of equal educational opportunities to women hinged on the message of inferiority, the official segregation of married heterosexual couples and civilly united same-sex couples smacks of discrimination founded upon traditional intolerance.

[Matthew K. Yan, *" What's In A Name?" Why The New Jersey Equal Protection Guarantee Requires Full Recognition of Same–Sex Marriage,* 17 *B.U. Pub. Int. L.J.,* 179, 195 (2007) (internal quotations omitted).]

This scholar's comment illustrates yet another form of discrimination once considered conventional; discrimination based on sex.

Another development contemporaneous with *Baker* was the United States Supreme Court's inclusion of classifications based on sex with those subject to heightened judicial scrutiny. *See Frontiero v. Richardson,* 411 *U.S.* 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973). The question before the Court in *Frontiero* concerned the right of a female member of the uniformed services to claim her spouse as a "dependant" for the purpose of receiving certain benefits. While a serviceman could, at the time, claim his wife as a dependant, a servicewoman could not claim her husband as a dependant for the same purpose. Under a heightened scrutiny review, the Court found that this different treatment constituted unconstitutional discrimination under the Due Process Clause of the Fifth Amendment. *Frontiero, supra,* 411 *U.S.* at 678.

Even though it dealt with a different classification, *Frontiero,* like *Loving,* is relevant in its historical context. The Court noted in *Frontiero* that "our Nation has had a long and unfortunate history of sex discrimination...." *Frontiero, supra,* 411 *U.S.* at 684. Further, the Court stated that American "statute books ... [are] laden with gross, stereotyped distinctions between the sexes and, indeed, throughout much of the 19th century the position of women in our society was, in many respects, comparable to that of blacks under the pre-Civil War slave codes." *Id.* at 685. Even though it was once common place, today, the idea that "[m]an is, or should be, woman's protector and defender" is clichéd. *Id.* at 684 (internal quotations omitted).

**\*6** Quite simply, *Baker* has been undermined by subsequent Supreme Court precedent, most notably the Court's decision in *Romer v. Evans,* 517 *U.S.* 620, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996) and *Lawrence v. Texas,* 539 *U.S.* 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003). In *Romer* the court faced a challenge to "Amendment 2" to the Constitution of the State of Colorado which prohibited "all legislative, executive or judicial action at any level of state or local government designed to protect ... homosexual persons or gays and lesbians." *Id.* at 624.

The Court found that Amendment 2 violated the Equal Protection Clause of the Federal Consti-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in A.3d, 2012 WL 540608 (N.J.Super.L.)
**(Cite as: 2012 WL 540608 (N.J.Super.L.))**

tution. The Court stated that it is not "within our constitutional tradition to enact laws ... singling out a certain class of citizens for disfavored legal status or general hardships ..." *Id.* at 634. The Supreme Court concluded that " *Amendment 2* classifies homosexuals not to further a proper legislative purpose but to make them unequal to everyone else." *Id.* at 636.

Even more recently, the Court decided *Lawrence, supra,* 539 *U.S.* at 558. In *Lawrence,* the question before the Court was the validity of a Texas statute making it a crime for two persons of the same sex to engage in certain intimate sexual conduct. *Id.* at 562. The Court concluded that petitioners were free as adults to engage in private conduct in the exercise of liberty under the Due Process Clause of the Fourteenth Amendment. *Id.* at 564.

The Court placed its decision in *Lawrence* in context of the long history of discrimination that lesbians and gay men have endured in this country. Importantly, the Court noted that the very concept of "the homosexual as a distinct category of person did not emerge until the late 19th century." *Lawrence, supra,* 539 *U.S.* at 568. Perhaps that is why it "was not until the 1970's that any State singled out same-sex relations for criminal prosecution ..." because same-sex relationships were not occurring in the public arena. *See Lawrence, supra,* 539 *U.S.* at 570. The *Lawrence* Court recognized that while "[f]or centuries there have been powerful voices to condemn homosexual conduct as immoral ... [the Court's] obligation is to define the liberty of all, not to mandate [its] own moral code." *Id.* at 570.

It was succinctly stated by the Supreme Court of California in *In Re Marriage Cases,* 43 Cal.4th 757, 76 Cal.Rptr.3d 683, 183 *P.3d* 384 (Cal.2008) that:

[E]ven the most familiar and generally accepted of social practices and traditions often mask an unfairness and inequality that frequently is not

recognized or appreciated by those not directly harmed by those practices or traditions. It is instructive to recall in this regard that the traditional, well-established legal rules and practices of our not-so-distant past (1) barred interracial marriage, (2) upheld the routine exclusion of women from many occupations and official duties, and (3) considered the relegation of racial minorities to separate and assertedly equivalent public facilities and institutions as constitutionally equal treatment.

**\*7** [ *Id.* at 853–854, 76 Cal.Rptr.3d 683, 183 P.3d 384].

The *Baker* case was brought at a time when "the history of systemic and harsh discrimination against lesbians and gay men had barely been challenged." Bennett Klein and Daniel Redman, *Commenting: From Separate to Equal: Litigating Marriage Equality in a Civil Union State,* 41 *Conn. L.Rev.* 1381, 1385 (2009). As late as 1971, "no state even prohibited discrimination on the basis of sexual orientation in basic aspects of life such as employment and housing ... and the lives of lesbians and gay men were largely invisible in the nation's courts." *Ibid.* Incredibly, until the 1970s, much of the mental health community still regarded lesbians and gay men as mentally ill. *Klein, supra,* 41 *Conn. L.Rev.* at 1395. Lesbians and gay men still face widespread discrimination and are "among the most frequent victims of hate crimes." *Ibid.*

Fortunately, the position of gays and lesbians in this country has markedly improved in recent decades. Importantly, New Jersey's Legislature has often been at "the forefront of combating sexual orientation discrimination and advancing equality of treatment towards gays and lesbians." *Lewis, supra,* 188 *N.J.* at 213, 902 A.2d 1212. As the Court noted in *Lewis,* "discrimination against gays and lesbians is no longer acceptable in this State, as is evidenced by the various laws and judicial decisions prohibiting differential treatment based on sexual orientation." *Id.* at 438, 875 A.2d 259.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in A.3d, 2012 WL 540608 (N.J.Super.L.)
**(Cite as: 2012 WL 540608 (N.J.Super.L.))**

While in *Baker* the Supreme Court dismissed the appeal for want of a substantial federal question, based on the evolution set forth herein, subsequent developments support the conclusion that the issues raised in *Baker* would no longer be considered unsubstantial.[FN6] Accordingly, in today's legal arena, *Baker* is not controlling.

> FN6. *See also Smelt, supra,* 374 *F.Supp.*2d at 873 (the court found that developments since *Baker* indicate that "the questions presented in the *Baker* jurisdictional statement would [not] still be viewed by the Supreme Court as 'unsubstantial.' "; *see also, In re Marriage of J.B. and H.B.,* 326 *S.W.*3d 654 (2010) (finding *Baker* was not dispositive in a challenge to Article I, section 32(a) of the Texas constitution and section 6.204 of the Texas Family Code under the Equal Protection Clause).

Recently, the Ninth Circuit affirmed the District Court's ruling from *Perry v. Schwarzenegger,* 704 *F.Supp.*2d 921, 927 (N.D.Cal.2010). *Perry v. Brown, supra,* No. 10–16696. Originally, in their motion for reconsideration, plaintiffs cited *Perry* in support of the proposition that excluding same-sex couples from the institution of marriage violates the Equal Protection Clause of the Fourteenth Amendment.[FN7]

> FN7. Notably, the Circuit Court in *Perry v. Brown, supra,* No. 10–16696 gave only a cursory analysis of *Baker,* finding that it need not decide whether *Baker* was controlling or the effect of subsequent doctrinal developments because it was considering an entirely different issue, not addressed by *Baker,* and "squarely controlled by *Romer.* " *Perry v. Brown, supra,* No. 10–16696 at n. 14.

In *Perry,* plaintiffs challenged a voter-enacted amendment to the California state constitution, known as Proposition 8, alleging Due Process and Equal Protection violations contrary to the Fourteenth Amendment. Plaintiffs sought a finding that its enforcement by state officials violated 42 *U.S.C.* § 1983. *Perry, supra,* 704 *F.Supp.*2d at 927.

Judge Walker, writing the opinion for the District Court noted:

The trial record shows that strict scrutiny is the appropriate standard of review to apply to legislative classifications based on sexual orientation. All classifications based on sexual orientation appear suspect, as the evidence shows that California would rarely, if ever, have a reason to categorize individuals based on their sexual orientation. Here, however, strict scrutiny is unnecessary. Proposition 8 fails to survive even rational basis review.

*\*8* Proposition 8 cannot withstand any level of scrutiny under the Equal Protection Clause, as excluding same sex couples from marriage is simply not rationally related to a legitimate state interest.

[*Id.* at 978.]

On appeal to the Ninth Circuit, Judge Stephen Reinhardt, writing for the three judge panel, upheld the District Court's ruling that Proposition 8 violated the Fourteenth Amendment to the United States Constitution. Judge Reinhardt relied heavily on *Romer* in which the United States Supreme Court held Amendment 2 to the Colorado Constitution, prohibiting the enactment of any laws protective of gays and lesbians, violated the Equal Protection Clause because " '[i]t is not within our constitutional tradition to enact laws of this sort'—laws that 'singl[e] out a certain class of citizens for disfavored legal status', which 'raise the inevitable inference that the disadvantage imposed is born of animosity toward the class of persons affected.' " *Perry v. Brown, supra,* No. 10–16696, quoting *Romer, supra,* 517 *U.S.* at 633–34.

In conducting a rational basis review, after evaluating several rationales to support Proposition

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in A.3d, 2012 WL 540608 (N.J.Super.L.)
(Cite as: 2012 WL 540608 (N.J.Super.L.))

8, the Circuit Court found Proposition 8 was similar to Amendment 2 because it singled out a certain class of citizens for disfavored treatment. Further, the Circuit Court found that Proposition 8 has "no apparent purpose but to impose on gays and lesbians ... disapproval of their relationships, by taking away from them the official designation of marriage with its societally recognized status." *Perry v. Brown, supra,* No. 10–16696 (internal quotations omitted). Further, "[a]bsent any legitimate purpose for Proposition 8, [the court was] left with the inevitable inference that the disadvantage imposed is born of animosity toward, or, as is more likely with respect to Californians who voted for the Proposition, mere disapproval of, the class of persons affected." *Ibid* (internal quotations omitted).

The Supreme Court has found that "[e]nacting a rule into law based solely on the disapproval of a group ... is a classification of persons undertaken for its own sake, something the Equal Protection Clause does not permit." *Perry v. Brown, supra,* No. 10–16696 (citing *Romer, supra,* 517 *U.S.* at 635). The *Perry* Court noted that "[j]ust as a desire to harm ... cannot constitute a *legitimate* governmental interest ... neither can a more basic disapproval of a class of people. *Perry v. Brown, supra,* No. 10–16696 (internal quotations omitted). The *Perry* Court found that Proposition 8 violated the Fourteenth Amendment because it was a classification undertaken for its own sake.

Here, under the third count, plaintiffs assert the Civil Union Act violates the Equal Protection Clause of the Fourteenth Amendment by denying them access to marriage and relegating them to a separate and arguably second class status, while not serving any legitimate state interest. The Civil Union Act, unlike Proposition 8, was intended to confer more benefits on same-sex couples, rather then take any away. However, the Civil Union Act is arguably similar because it singles out a certain class of citizens, namely gays and lesbians, for allegedly disfavored treatment.

**\*9** While the Civil Union Act does bestow certain benefits on same-sex couples, it also denies them the designation of marriage for their committed relationships and it allegedly does not bestow upon plaintiffs *all* of the same benefits enjoyed by their heterosexual counter parts.

For all the reasons set forth herein, the court grants the motion for reconsideration. Accordingly, the matter shall proceed to trial on counts one and three.

At this juncture, the court leaves open the question of what standard of proof is applicable. The Court in *Lewis* previously found that there is no legitimate governmental purpose for denying same-sex couples the same benefits and responsibilities afforded to their heterosexual counter parts. Plaintiffs will have the opportunity to develop a full and complete trial record in an effort to substantiate allegations of unequal treatment under the Civil Union Act.

In *Lewis,* the Court noted that the New Jersey Legislature made sexual orientation a "protected category" by enacting legislation committed to the "goal of eradicating discrimination against gays and lesbians." *Lewis, supra,* 188 *N.J.* at 452, 908 A.2d 196. The Supreme Court concluded in *Lewis* that "denying to committed same-sex couples the financial and social benefits and privileges given to their married heterosexual counterparts bears no substantial relationship to a legitimate governmental purpose." *Id.* at 457, 908 A.2d 196.

As noted heretofore, the Court held it was the Legislature's prerogative to determine how to provide same-sex couples with equal benefits; whether to open the institution of marriage to same-sex couples or create a parallel statutory structure. Accordingly, the Civil Union Act was enacted to "bridge" the inequality gap left by the Domestic Partnership Act.[FN8] *Id.* at 448, 908 A.2d 196.

FN8. Today, many states recognize same-sex marriages as the result of legislation or judicial mandate. These include: New

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in A.3d, 2012 WL 540608 (N.J.Super.L.)
(Cite as: 2012 WL 540608 (N.J.Super.L.))

York, Massachusetts, Connecticut, Vermont, New Hampshire, Iowa and Washington State. In addition, while the New Jersey Legislature recently adopted legislation to legalize same-sex marriage, Governor Chris Christie vetoed the legislation and there are insufficient votes to override the veto.

The *Lewis* plaintiffs challenged the Domestic Partnership Act under the Equal Protection provisions of the State constitution, not the Federal Equal Protection Clause. With regards to sexual orientation as a classification under Federal case law, "[t]he [United States] Supreme Court has never ruled that sexual orientation is a suspect classification for equal protection purposes." *Citizens for Equal Prot. v. Bruning,* 455 *F.3d* 859, 866 (8th Cir.2006); *see also Johnson v. Johnson,* 385 *F.3d* 503, 532 (5th Cir.2004).

As the *Lewis* Court noted, the "New Jersey Constitution not only stands apart from other state constitutions, but also 'may be a source of individual liberties more expansive than those conferred by the Federal Constitution.' " *Lewis, supra,* 188 *N.J.* 415 at 465, 908 A.2d 196 (citing *State v. Novembrino,* 105 *N.J.* 95, 144–45, 519 A.2d 820 (1987)).

For the most part, the justification offered by the State to support the distinction between heterosexual and same-sex couples in the Civil Union Act is "tradition." Since marriage has historically been defined as the union between a man and a woman, the State argues this is a sufficient basis to distinguish between heterosexual and same-sex couples.

**\*10** Not surprisingly, courts have held that tradition alone "never can provide sufficient cause to discriminate against a protected class, for '[neither] the length of time a majority [of the populace] has held its convictions [nor] the passions with which it defends them can withdraw legislation from [the][c]ourt's scrutiny.' " *Kerrigan v. Comm'r of Pub. Health,* 289 Conn. 135, 957 A.2d 407, 479 (Conn.2008)(citing *Bowers v. Hardwick,* 478 U.S.

186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986) (Blackmun, J., dissenting)). "If a simple showing that discrimination is traditional satisfies equal protection, previous successful equal protection challenges of invidious racial and gender classifications would have failed." *Varnum v. Brien,* 763 *N.W.2d* 862, 898 (Iowa 2009).

Finally, to state a claim for relief in an action brought under Section 1983, respondents must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 *U.S.* 40, 49–50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999). "The ultimate issue in determining whether a person is subject to suit under [Section] 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights 'fairly attributable to the State?' " *Rendell–Baker v. Kohn,* 457 *U.S.* 830, 838, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982)(citing *Lugar v. Edmondson Oil Co.,* 457 *U.S.* 922, 102 S.Ct. 2744, 73 L.Ed.2d 482. 937 (1982)).

Defendants challenge the premise that alleged unequal treatment of same-sex couples, under the Civil Union Act, constitutes state action under the Fourteenth Amendment's Equal Protection Clause. Defendants rely on *Mentavlos v. Anderson,* 249 *F.3d* 301 (4th Cir.2001), *cert. denied,* 534 *U.S.* 952, 122 S.Ct. 349, 151 L.Ed.2d 264 (2001).

In *Mentavlos,* the Fourth Circuit considered the question of whether two male cadets at The Citadel, a state-sponsored military college, acted under the color of state law. The Circuit Court found that because the cadets' actions were not "coerced, compelled, or encouraged by any law, regulation or custom of the State of South Carolina or The Citadel," the cadets' actions were not fairly attributable to the state and thus, not actionable under Section 1983. *Id.* at 323.

In *Mentavlos,* unlike in the present matter,

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in A.3d, 2012 WL 540608 (N.J.Super.L.)
**(Cite as: 2012 WL 540608 (N.J.Super.L.))**

there was no statute or regulation being challenged. Moreover, plaintiffs in the present matter do not seek to impose liability on the private actors discussed in the complaint. [FN9]

> FN9. The United States Supreme Court has concluded that acts of private parties were fairly attributable to the state on certain occasions such as when the private party acted in concert with state actors. *See Adickes v. S.H. Kress & Co.,* 398 *U.S.* 144, 155–56, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (finding that a restaurant acted under color of state law because it conspired with a town sheriff, a state actor, in depriving a teacher of federal rights).

Plaintiffs allege the Civil Union Act and its enforcement by certain state officials, who are named defendants, violates the Equal Protection Clause of the Fourteenth Amendment. At this juncture, the court is satisfied there is sufficient state action to permit the claim under the Federal Equal Protection Clause to proceed.

Accordingly, plaintiffs' motion for reconsideration is **GRANTED** and count three is hereby reinstated.

N.J.Super.L.,2012.
Garden State Equality v. Dow
Not Reported in A.3d, 2012 WL 540608 (N.J.Super.L.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d, 2006 WL 3143914 (M.D.Pa.)
**(Cite as: 2006 WL 3143914 (M.D.Pa.))**

**C**

Only the Westlaw citation is currently available.

United States District Court,
M.D. Pennsylvania.
Blake MATTHEWS, Plaintiff,
v.
Lt. Joseph G. ELIAS, et. al, Defendants.

No. 4:CV-06-1760.

Oct. 31, 2006.

Don Bailey, Bailey & Ostrowski, Harrisburg, PA, for
Plaintiff.

Gregory R. Neuhauser, Office of Attorney General,
Harrisburg, PA, for Defendants.

### MEMORANDUM AND ORDER
JOHN E. JONES III, District Judge.
**THE BACKGROUND OF THIS ORDER IS AS
FOLLOWS:**
   *1 Pending before the Court is a Motion to Dismiss of Defendant, Attorney General of Pennsylvania
(doc. 4) filed on September 21, 2006. Also pending
before the Court is a Motion to Dismiss of Defendant,
Pennsylvania State Police (doc. 7) filed on September
26, 2006.

   For the following reasons the Motions (docs. 4
and 7), shall be granted.

### FACTUAL BACKGROUND AND PROCEDURAL
### HISTORY:
   On September 30, 2006, local police officers entered Plaintiff Blake Matthews' ("Plaintiff") residence
upon a report from Plaintiff's ex-girlfriend that Plaintiff was suicidal and was in need of hospitalization.
The officers took Plaintiff into custody and trans-
ported him to the Ephrata Community hospital where
he was involuntarily committed, as a result of an application filed by Plaintiff's ex-girlfriend under Section 302 of the Mental Health Procedures Act. The
officers also took possession of certain firearms which
were the property of Plaintiff. On October 3, 2003, a
hearing was held, as required by Section 303 of the
Mental Health Procedures Act, and it was determined
by the hearing officer that the Plaintiff was not in need
of emergency involuntary treatment and he was released from the hospital.

   Plaintiff alleges that he continually has asked the
police for the return of the firearms, however on July
14, 2005, Plaintiff received a letter from Defendant
Lieutenant Joseph Elias, on the letter head of the Defendant Pennsylvania State Police, that his request for
return of his firearms was being denied. The letter
cited 18 Pa.C.S. § 6105(c)(4), which prohibits a person who has been adjudicated incompetent or has been
involuntarily committed to a mental institution for
inpatient care under Section 302, 303 or 304 of the
Mental Health Procedures Act from possession of a
firearm.

   On September 8, 2006, the Plaintiff filed a complaint with this Court, seeking damages from the Defendants jointly and severally for claimed violations of
Plaintiff's Fourth, Fifth and Fourteenth Amendment
rights (Counts One, Two and Three). The complaint
also seeks declaratory relief concerning the constitutionality of 18 Pa.C.S. § 6105(c)(4), and an injunction
against its enforcement (Count Four). The instant
Motions (docs. 4 and 7) were filed by Defendants
Attorney General of Pennsylvania and Pennsylvania
State Police. The Motions have been fully briefed and
are therefore ripe for our review.

### STANDARD OF REVIEW:
   In considering a motion to dismiss pursuant to

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3143914 (M.D.Pa.)
**(Cite as: 2006 WL 3143914 (M.D.Pa.))**

Fed. R. Civ. Pro. 12(b)(6), a court must accept the veracity of a plaintiff's allegations. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974); *see also hite v. Napoleon,* 897 F.2d 103, 106 (3d Cir.1990). In *Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996), our Court of Appeals for the Third Circuit added that in considering a motion to dismiss based on a failure to state a claim argument, a court should "not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims." Furthermore, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *see also District Council 47 v. Bradley,* 795 F.2d3 310 (3d Cir.1986).

## DISCUSSION:

### A. *Motion to Dismiss of Defendant Attorney General of*

### Pennsylvania

*2 The Defendant Attorney General of Pennsylvania ("Attorney General") moves this Court to dismiss the complaint, alleging that none of the counts in the complaint state a claim against the Attorney General upon which relief may be granted.

Counts One, Two and Three allege claims of violations of the Plaintiffs Fourth, Fifth and Fourteenth Amendment rights via 42 U.S.C. § 1983. To establish a § 1983 claim, a plaintiff must demonstrate: (1) a violation of a right secured by the Constitution and the laws of the United States; and (2) that the alleged deprivation was committed by a person acting under color of state law. *See Nicini v. Morra,* 212 F.3d 798, 806. "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior.*" *Rode v. Dellarciprete,* 845 F.2d

1195, 1207 (3d Cir.1988) (citing *Parratt v. Taylor,* 451 U.S. 527, 537 n. 3 (1981)). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence ... must be made with appropriate particularity." *Id.*

The Attorney General argues that since no factual allegations are presented against him with respect to the Plaintiffs § 1983 claims, that there is no basis upon which to hold the Attorney General liable in damages. Plaintiff argues that because the Attorney General oversees the actions of the Defendant Pennsylvania State Police in upholding or overruling the denial of an alleged prohibition to possess firearms, that a § 1983 claim is properly pled against the Attorney General.

It is quite apparent from a review of Counts One, Two and Three of Plaintiff's complaint that the Attorney General is not alleged to have participated in, or to have had knowledge of and acquiesced in, the confiscation of Plaintiff's firearms, the involuntary commitment proceeding or even the decision to refuse to return Plaintiff's firearms to him. Plaintiff's allegation that the Attorney General generally oversees co-Defendant Pennsylvania State Police does not save Plaintiff's § 1983 claim against the Attorney General inasmuch as Plaintiff has not alleged any personal involvement by the Attorney General in the alleged deprivation of Plaintiff's rights. Accordingly, we shall dismiss Counts One, Two and Three as against the Attorney General.

Count Four of the complaint seeks declaratory and injunctive relief against the Attorney General in connection with a determination by the Court that 18 Pa.C.S. § 6105(c)(4) is unconstitutional.

"[A] plaintiff challenging the validity of a state statute may bring suit against the official who is charged with the statute's enforcement *only if* the official has either enforced, or threatened to enforce,

Not Reported in F.Supp.2d, 2006 WL 3143914 (M.D.Pa.)
**(Cite as: 2006 WL 3143914 (M.D.Pa.))**

the statute against the plaintiffs. General authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law." ｦ st *Westco Corp. v. School District of Philadelphia,* 6 F.3d 108, 113 (3d Cir.1993) (citing *Rode, 845 F.2d at 1209).*

*\*3* As properly submitted by the Attorney General, the Pennsylvania State Police, the entity that refused to return Plaintiff's firearms, is an agency under the Governor's jurisdiction. Furthermore, although the Plaintiff suggests that the Attorney General "oversees" the decision of the Pennsylvania State Police with respect to the implementation of 18 Pa.C.S. § 6105(c)(4), under the Pennsylvania Uniform Firearms Act, the Attorney General's involvement is limited to a review of a challenge by an individual to the accuracy of his or her records. *See* 18 Pa.C.S. § 6111.1(e).

Plaintiff has not alleged that the Attorney General has enforced § 6105(c)(4) against him, nor can he allege such, because the Attorney General does not oversee the administration of the subject section or the Pennsylvania State Police. Accordingly, because Plaintiff has failed to state a claim against the Attorney General with respect to Count Four, we shall dismiss the complaint as against the Attorney General.

**B. *Motion to Dismiss of Defendant, Pennsylvania State Police***

The Defendant Pennsylvania State Police ("PSP") moves this Court to dismiss the complaint, alleging that none of the counts in the complaint state a claim against the PSP upon which relief may be granted. The PSP further alleges that, as an agency of the government of the Commonwealth of Pennsylvania, it is entitled to Eleventh Amendment immunity.

Immunity under the Eleventh Amendment to the United States Constitution precludes suits against a state or state agency in federal court by citizens of that state or other states. *See College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd.,* 527 U.S. 666, 669 (1999), *Edelman v. Jordan,* 415 U.S. 651, 662-663 (1974).* The Eleventh Amendment's jurisdictional bar is equally applicable to suits seeking money damages and equitable relief. *See Edelman,* 415 U.S. at 663; *Alabama v. Pugh,* 438 U.S. 781, 782 (1978).* A state may consent to suit against it or its agency in federal court by waiving its immunity. In the absence of consent a suit against a state or one of its agencies is proscribed by the Eleventh Amendment. *See Pennhurst State School and Hopsital v. Halderman,* 465 U.S. 89, 98 (1984).

It is not alleged that the PSP, an agency of the Commonwealth of Pennsylvania, has waived in its immunity in this action. Accordingly, because immunity has not been waived, the Eleventh Amendment provides a jurisdictional bar to suit against the PSP and the Motion (doc. 7) shall be granted and complaint shall be dismissed as against the PSP.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Motion to Dismiss of Defendant Attorney General of Pennsylvania (doc. 4) is GRANTED.

2. The complaint is DISMISSED as against Defendant Attorney General of Pennsylvania.

3. The Clerk shall terminate Defendant Attorney General of Pennsylvania as a party to this action.

4. Motion to Dismiss Defendant Pennsylvania State Police (doc. 7) is GRANTED.

*\*4* 5. The complaint is DISMISSED as against Defendant Pennsylvania State Police.

6. The Clerk shall terminate Defendant Pennsylvania State Police as a party to this action.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3143914 (M.D.Pa.)
**(Cite as: 2006 WL 3143914 (M.D.Pa.))**

M.D.Pa.,2006.
Matthews v. Elias
Not Reported in F.Supp.2d, 2006 WL 3143914
(M.D.Pa.)


END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

--- F.3d ----, 2013 WL 4268840 (C.A.3 (Pa.))
**(Cite as: 2013 WL 4268840 (C.A.3 (Pa.)))**

**H**
Only the Westlaw citation is currently available.

United States Court of Appeals,
Third Circuit.
Jeffry S. VODENICHAR; David M. King, Jr. and
Leigh V. King, husband and wife; Joseph B. Davis
and Lauren E. Davis, husband and wife; Grove City
Country Club; and Richard Broadhead, individually
and on behalf of those similarly situated,
v.
HALCÓN ENERGY PROPERTIES, INC.; Moras-
cyzk & Polochak; and Co–Exprise, DBA
CX–Energy Halcón Energy Properties, Inc., Appel-
lant.

No. 13–2812.
Submitted Under Third Circuit L.A.R. 34.1(a) July
16, 2013.
Filed Aug. 16, 2013.

**Background:** Landowners who sought to lease oil
and gas rights in their land filed putative class ac-
tion in state court against their agent, an oil and gas
company, and an energy company, alleging breach
of lease. After oil and gas defendant removed,
plaintiffs moved to remand. The United State Dis-
trict Court for the Western District of Pennsylvania,
2013 WL 1386954,Arthur J. Schwab, J., remanded,
pursuant to Class Action Fairness Act (CAFA). De-
fendants appealed.

**Holdings:** The Court of Appeals, Shwartz, Circuit
Judge, held that:
(1) Delaware corporate defendant with principal
place of business and headquarters in Texas was
not a citizen of Pennsylvania; but
(2) unincorporated association defendant was a cit-
izen of Pennsylvania;
(3) all three defendants were "primary defendants"
for purposes of home state exception under CAFA;
(4) home state exception did not apply; but
(5) local controversy exception to CAFA applied to
mandate remand.

Affirmed.

West Headnotes

**[1] Federal Courts 170B ⬤➞776**

170B Federal Courts
   170BVIII Courts of Appeals
      170BVIII(K) Scope, Standards, and Extent
         170BVIII(K)1 In General
            170Bk776 k. Trial De Novo. Most
Cited Cases
   Court of Appeals reviews issues of subject mat-
ter jurisdiction de novo.

**[2] Federal Courts 170B ⬤➞776**

170B Federal Courts
   170BVIII Courts of Appeals
      170BVIII(K) Scope, Standards, and Extent
         170BVIII(K)1 In General
            170Bk776 k. Trial De Novo. Most
Cited Cases
   Court of Appeals reviews matters of statutory
interpretation de novo.

**[3] Removal of Cases 334 ⬤➞107(7)**

334 Removal of Cases
   334VII Remand or Dismissal of Case
      334k107 Proceedings for Remand and Re-
view Thereof
         334k107(7) k. Evidence. Most Cited Cases
   Party seeking to invoke either local controversy
exception or home state exception to Class Action
Fairness Act (CAFA), in order to remand federal
suit to state court, bears burden of proving by a pre-
ponderance of the evidence that the exception ap-
plies. 28 U.S.C.A. § 1332(d)(4)(A)–(B).

**[4] Federal Courts 170B ⬤➞32**

170B Federal Courts

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 4268840 (C.A.3 (Pa.))
**(Cite as: 2013 WL 4268840 (C.A.3 (Pa.)))**

170BI Jurisdiction and Powers in General
   170BI(A) In General
      170Bk29 Objections to Jurisdiction, De-termination and Waiver
         170Bk32 k. Pleading. Most Cited Cases

**Federal Courts 170B ☞33**

170B Federal Courts
   170BI Jurisdiction and Powers in General
      170BI(A) In General
         170Bk29 Objections to Jurisdiction, De-termination and Waiver
         170Bk33 k. Affidavits and Evidence in General. Most Cited Cases

Courts may consider pleadings as well as evid-ence that parties submit to determine whether sub-ject matter jurisdiction exists or an exception thereto applies.

**[5] Removal of Cases 334 ☞2**

334 Removal of Cases
   334I Power to Remove and Right of Removal in General
      334k2 k. Constitutional and Statutory Provi-sions. Most Cited Cases

**Removal of Cases 334 ☞102**

334 Removal of Cases
   334VII Remand or Dismissal of Case
      334k101 Grounds for Remand
         334k102 k. Want of Jurisdiction or of Cause for Removal. Most Cited Cases

The "home state exception" to Class Action Fairness Act (CAFA), used to seek remand of suit removed from state court, requires a federal court to decline to exercise subject matter jurisdiction where two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the state in which the action was originally filed. 28 U.S.C.A. § 1332(d)(4)(B).

**[6] Removal of Cases 334 ☞2**

334 Removal of Cases
   334I Power to Remove and Right of Removal in General
      334k2 k. Constitutional and Statutory Provi-sions. Most Cited Cases

**Removal of Cases 334 ☞102**

334 Removal of Cases
   334VII Remand or Dismissal of Case
      334k101 Grounds for Remand
         334k102 k. Want of Jurisdiction or of Cause for Removal. Most Cited Cases

A party seeking to invoke home state excep-tion, under Class Action Fairness Act (CAFA), to remand suit removed from state court must: (1) es-tablish that the citizenship of the members of two-thirds or more of the putative class is the state in which the action was originally filed; (2) establish the citizenship of defendants; (3) identify the primary defendants; and (4) demonstrate that two-thirds or more of the members of the putative class are citizens of the same state as the primary defend-ants. 28 U.S.C.A. § 1332(d)(4)(B).

**[7] Removal of Cases 334 ☞2**

334 Removal of Cases
   334I Power to Remove and Right of Removal in General
      334k2 k. Constitutional and Statutory Provi-sions. Most Cited Cases

Under Class Action Fairness Act (CAFA), for purposes of home state exception to federal court removal jurisdiction, members of putative class who are natural persons are deemed citizens of the state in which they are domiciled, which is typic-ally the state where the person lives. 28 U.S.C.A. § 1332(d)(4)(B).

**[8] Removal of Cases 334 ☞2**

334 Removal of Cases
   334I Power to Remove and Right of Removal in General
      334k2 k. Constitutional and Statutory Provi-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 4268840 (C.A.3 (Pa.))
**(Cite as: 2013 WL 4268840 (C.A.3 (Pa.)))**

sions. Most Cited Cases

**Removal of Cases 334 ☞26**

334 Removal of Cases
  334III Citizenship or Alienage of Parties
    334k26 k. Citizenship of Parties in General.
Most Cited Cases
  Under Class Action Fairness Act (CAFA), re-
moved suits brought by unincorporated associations
are treated like suits by corporations in that the cit-
izenship of the association for diversity purposes is
determined by the entities' principal place of busi-
ness and not by the citizenship of its members. 28
U.S.C.A. §§ 1332(d)(4)(B), 1332(d)(10).

**[9] Removal of Cases 334 ☞2**

334 Removal of Cases
  334I Power to Remove and Right of Removal in
General
    334k2 k. Constitutional and Statutory Provi-
sions. Most Cited Cases

**Removal of Cases 334 ☞27**

334 Removal of Cases
  334III Citizenship or Alienage of Parties
    334k27 k. Citizenship or Residence of Cor-
porations. Most Cited Cases
  Oil and gas company defendant was not a cit-
izen of Pennsylvania, for purposes of home state
exception to federal court removal jurisdiction un-
der Class Action Fairness Act (CAFA) in
Pennsylvania landowners' putative breach of lease
class action, where company was a Delaware cor-
poration with its principal place of business and
headquarters in Texas. 28 U.S.C.A. §§
1332(d)(4)(B), 1332(d)(10).

**[10] Removal of Cases 334 ☞2**

334 Removal of Cases
  334I Power to Remove and Right of Removal in
General
    334k2 k. Constitutional and Statutory Provi-
sions. Most Cited Cases

**Removal of Cases 334 ☞27**

334 Removal of Cases
  334III Citizenship or Alienage of Parties
    334k27 k. Citizenship or Residence of Cor-
porations. Most Cited Cases
  Energy company defendant was a citizen of
Pennsylvania, for purposes of home state exception
to federal court removal jurisdiction under Class
Action Fairness Act (CAFA) in Pennsylvania
landowners' putative breach of lease class action,
where Pennsylvania was both its state of incorpora-
tion and the place where the corporation's high
level officers directed, controlled, and coordinated
the corporation's activities. 28 U.S.C.A. §§
1332(d)(4)(B), 1332(d)(10), 1332(c)(1).

**[11] Removal of Cases 334 ☞2**

334 Removal of Cases
  334I Power to Remove and Right of Removal in
General
    334k2 k. Constitutional and Statutory Provi-
sions. Most Cited Cases

**Removal of Cases 334 ☞26**

334 Removal of Cases
  334III Citizenship or Alienage of Parties
    334k26 k. Citizenship of Parties in General.
Most Cited Cases
  Unincorporated association defendant in
Pennsylvania landowners' putative breach of lease
class action was a citizen of Pennsylvania, for pur-
poses of home state exception to federal court re-
moval jurisdiction under Class Action Fairness Act
(CAFA), where association had its principal place
of business in Pennsylvania and had been organized
under the laws of that state. 28 U.S.C.A. §§
1332(d)(4)(B), 1332(d)(10).

**[12] Removal of Cases 334 ☞2**

334 Removal of Cases
  334I Power to Remove and Right of Removal in
General
    334k2 k. Constitutional and Statutory Provi-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 4268840 (C.A.3 (Pa.))
**(Cite as: 2013 WL 4268840 (C.A.3 (Pa.)))**

sions. Most Cited Cases

"Primary defendant," for purposes of home state exception to federal court removal jurisdiction under Class Action Fairness Act (CAFA), means principal defendant, fundamental defendant, or direct defendant. 28 U.S.C.A. § 1332(d)(4)(B).

**[13] Removal of Cases 334 ☞2**

334 Removal of Cases
  334I Power to Remove and Right of Removal in General
    334k2 k. Constitutional and Statutory Provisions. Most Cited Cases
  A "primary defendant," for purposes of home state exception to federal court removal jurisdiction under Class Action Fairness Act (CAFA), is one who is directly liable to the proposed class, as opposed to being vicariously or secondarily liable based upon theories of contribution or indemnification. 28 U.S.C.A. § 1332(d)(4)(B).

**[14] Removal of Cases 334 ☞2**

334 Removal of Cases
  334I Power to Remove and Right of Removal in General
    334k2 k. Constitutional and Statutory Provisions. Most Cited Cases
  A "primary defendant," for purposes of home state exception to federal court removal jurisdiction under Class Action Fairness Act (CAFA), is one who is the real target of the lawsuit. 28 U.S.C.A. § 1332(d)(4)(B).

**[15] Removal of Cases 334 ☞2**

334 Removal of Cases
  334I Power to Remove and Right of Removal in General
    334k2 k. Constitutional and Statutory Provisions. Most Cited Cases
  Courts examining whether a defendant is a "primary defendant," for purposes of home state exception to removal jurisdiction under Class Action Fairness Act (CAFA), should not consider

whether the defendant may be able to recover from others or whether it is able to satisfy a judgment. 28 U.S.C.A. § 1332(d)(4)(B).

**[16] Removal of Cases 334 ☞2**

334 Removal of Cases
  334I Power to Remove and Right of Removal in General
    334k2 k. Constitutional and Statutory Provisions. Most Cited Cases
  The term "primary defendant," for purposes of home state exception to federal court removal jurisdiction under Class Action Fairness Act (CAFA), includes any person who has substantial exposure to significant portions of the proposed class in the action, particularly any defendant that is allegedly liable to the vast majority of the members of the proposed classes, as opposed to simply a few individual class members. 28 U.S.C.A. § 1332(d)(4)(B) .

**[17] Removal of Cases 334 ☞2**

334 Removal of Cases
  334I Power to Remove and Right of Removal in General
    334k2 k. Constitutional and Statutory Provisions. Most Cited Cases

**Removal of Cases 334 ☞107(7)**

334 Removal of Cases
  334VII Remand or Dismissal of Case
    334k107 Proceedings for Remand and Review Thereof
      334k107(7) k. Evidence. Most Cited Cases
  Court tasked with determining whether a defendant is a "primary defendant" for purposes of home state exception to federal court removal jurisdiction under Class Action Fairness Act (CAFA), should assume liability will be found and determine whether the defendant is the real target of plaintiffs' accusations; in doing so, court should determine if plaintiffs seek to hold the defendant responsible for

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 4268840 (C.A.3 (Pa.))
**(Cite as: 2013 WL 4268840 (C.A.3 (Pa.)))**

its own actions, as opposed to seeking to have it pay for the actions of others, and ask whether, given the claims asserted against the defendant, it has potential exposure to a significant portion of the class and would sustain a substantial loss as compared to other defendants if found liable. 28 U.S.C.A. § 1332(d)(4)(B).

**[18] Removal of Cases 334 ⚖️2**

334 Removal of Cases
   334I Power to Remove and Right of Removal in General
      334k2 k. Constitutional and Statutory Provisions. Most Cited Cases
      Oil and gas company, energy company, and landowner's agent were all "primary defendants" in landowners' putative breach of lease class action, for purposes of determining home state exception to federal court removal jurisdiction under Class Action Fairness Act (CAFA), where plaintiffs alleged that each defendant was directly liable, attempted to apportion liability equally among the defendants, and sought similar relief from them all. 28 U.S.C.A. § 1332(d)(4)(B).

**[19] Removal of Cases 334 ⚖️2**

334 Removal of Cases
   334I Power to Remove and Right of Removal in General
      334k2 k. Constitutional and Statutory Provisions. Most Cited Cases

**Removal of Cases 334 ⚖️102**

334 Removal of Cases
   334VII Remand or Dismissal of Case
      334k101 Grounds for Remand
         334k102 k. Want of Jurisdiction or of Cause for Removal. Most Cited Cases
      By using the word "the" before the words "primary defendants," rather than the word "a," the Class Action Fairness Act (CAFA) requires remand of removed action under the home state exception only if all primary defendants are citizens of plaintiffs' home state. 28 U.S.C.A. § 1332(d)(4)(B).

**[20] Removal of Cases 334 ⚖️2**

334 Removal of Cases
   334I Power to Remove and Right of Removal in General
      334k2 k. Constitutional and Statutory Provisions. Most Cited Cases

**Removal of Cases 334 ⚖️102**

334 Removal of Cases
   334VII Remand or Dismissal of Case
      334k101 Grounds for Remand
         334k102 k. Want of Jurisdiction or of Cause for Removal. Most Cited Cases
      Home state exception to Class Action Fairness Act (CAFA) did not apply to mandate remand of Pennsylvania landowners' putative state court breach of lease suit against oil and gas company, energy company, and agent, removed to federal court, since not all three primary defendants were residents of Pennsylvania. 28 U.S.C.A. § 1332(d)(4)(B).

**[21] Removal of Cases 334 ⚖️2**

334 Removal of Cases
   334I Power to Remove and Right of Removal in General
      334k2 k. Constitutional and Statutory Provisions. Most Cited Cases
      A party seeking to invoke local controversy exception to removal jurisdiction under Class Action Fairness Act (CAFA) must show that: (1) greater than two-thirds of the putative class are citizens of the state in which the action was originally filed; (2) at least one defendant is a citizen of the state in which the action was originally filed, i.e., local defendant; (3) the local defendant's conduct forms a significant basis for the claims asserted; (4) plaintiffs are seeking significant relief from the local defendant; (5) the principal injuries occurred in the state in which the action was originally filed; and (6) no other class action asserting the same or

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 4268840 (C.A.3 (Pa.))
**(Cite as: 2013 WL 4268840 (C.A.3 (Pa.)))**

similar allegations against any of the defendants had been filed in the preceding three years. 28 U.S.C.A. § 1332(d)(4)(A).

**[22] Removal of Cases 334 ⟜2**

334 Removal of Cases
   334I Power to Remove and Right of Removal in General
       334k2 k. Constitutional and Statutory Provisions. Most Cited Cases
   The local controversy exception to removal jurisdiction under the Class Action Fairness Act (CAFA) applies when the class is primarily local, the lawsuit is against at least one real in-state defendant whose alleged conduct is central to the class claims and from whom the class seeks significant relief, the injuries the defendant allegedly caused occurred within the forum, and no other similar class actions have been filed against any of the defendants. 28 U.S.C.A. § 1332(d)(4)(A).

**[23] Removal of Cases 334 ⟜2**

334 Removal of Cases
   334I Power to Remove and Right of Removal in General
       334k2 k. Constitutional and Statutory Provisions. Most Cited Cases

**Removal of Cases 334 ⟜102**

334 Removal of Cases
   334VII Remand or Dismissal of Case
       334k101 Grounds for Remand
           334k102 k. Want of Jurisdiction or of Cause for Removal. Most Cited Cases
   Local controversy exception to Class Action Fairness Act (CAFA) applied to mandate remand of Pennsylvania landowners' putative breach of lease class action against oil and gas company, energy company, and agent removed from state to federal court; two-thirds of the plaintiffs were citizens of Pennsylvania, two of three primary defendants were citizens of Pennsylvania, and thus local defendants, the local defendants' conduct in allegedly breaching

lease formed significant basis for claims, plaintiffs sought more than $50,000 for each of the 1,362 putative class members, injuries were incurred in Pennsylvania where the leased land was located, and although previous suit had been filed by same plaintiffs and dismissed with prejudice, the dismissed action was not an "other class action" which would preclude remand, but instead was a refiled action merely enlarged when two local defendants were added with claims unique to those parties that arose from the same lease transaction. 28 U.S.C.A. §§ 1332(d)(4)(A), 1332(d)(4)(A)(i)(II), 1332(d)(4)(A)(i)(III).

**[24] Removal of Cases 334 ⟜2**

334 Removal of Cases
   334I Power to Remove and Right of Removal in General
       334k2 k. Constitutional and Statutory Provisions. Most Cited Cases
   The "local controversy exception" to removal jurisdiction under Class Action Fairness Act (CAFA) seeks to identify a truly local controversy, one that uniquely affects a particular locality to the exclusion of all others, so as to allow state courts to adjudicate truly local disputes involving principal injuries concentrated within the forum state. 28 U.S.C.A. § 1332(d)(4)(A).

**[25] Removal of Cases 334 ⟜2**

334 Removal of Cases
   334I Power to Remove and Right of Removal in General
       334k2 k. Constitutional and Statutory Provisions. Most Cited Cases
   If two class actions arise out of the same facts, but are factually and analytically different, such that the proof necessary for one class to prevail differs from the proof another class would need to present, the first filed class action would not constitute an "other class action" under local controversy exception to removal jurisdiction under the Class Action Fairness Act (CAFA). 28 U.S.C.A. § 1332(d)(4)(A).

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 4268840 (C.A.3 (Pa.))
**(Cite as: 2013 WL 4268840 (C.A.3 (Pa.)))**

On Appeal from the United State District Court for the Western District of Pennsylvania (D.C. Civ. Action No. 2–13–CV–00360) District Judge: Honorable Arthur J. Schwab.Kevin L. Colosimo, Esq., Burleson LLP, Canonsburg, PA, for Appellant.

David A. Borkovic, Esq., Jones, Gregg, Creehan & Gerace, LLP, Richard A. Finberg, Esq., Pittsburgh, PA, for Appellees.

Before RENDELL, SMITH, and SHWARTZ, Circuit Judges.

OPINION OF THE COURT
SHWARTZ, Circuit Judge.
   *1 Defendant Halcón Energy Properties, Inc. ("Halcón") appeals the District Court's Order remanding this case to state court based on the "home state" exception to subject matter jurisdiction under the Class Action Fairness Act ("CAFA"). For the reasons stated below, we will affirm the District Court's remand order, but do so instead based on CAFA's "local controversy" exception.

**I. FACTS & PROCEDURAL HISTORY**
   Plaintiffs Jeffry S. Vodenichar, David M. King, Jr., Leigh V. King, Joseph B. Davis, Lauren E. Davis, Grove City Country Club, and Richard Broadhead filed suit on behalf of themselves and other similarly situated landowners who sought to lease the oil and gas rights in their land in Mercer County, Pennsylvania. Defendants Morascyzk & Polochak ("M & P") and Co-eXprise, d/b/a "CX–Energy," ("CXEnergy") agreed to act as Plaintiffs' agents to negotiate leases of their oil and gas interests to energy companies under the terms of Landowner MarketPlace Agreements ("LMAs"). In exchange for their successful marketing efforts, M & P and CX–Energy were to be paid a "transaction fee."

   M & P and CX–Energy entered into a Letter of Intent with Halcón ("Halcón Agreement"), an oil and gas company, pursuant to which Halcón would lease up to 60,000 acres of oil and gas rights from landowners who entered into LMAs and who had submitted lease documents to Halcón. Under the Halcón Agreement, each landowner who executed an LMA was guaranteed a $3,850 per acre payment plus an 18.5% royalty on the net amount Halcón realized from the oil and gas recovered from the property.

   According to Plaintiffs, Halcón agreed to accept the leases absent a title defect, an adverse environmental claim, or restrictions on the ability to explore, drill for, or produce oil, gas, or hydrocarbons. Plaintiffs assert that Halcón rejected many of the leases for reasons other than those permitted under the Halcón Agreement. Halcón counters that the word "geology" was fraudulently omitted from the list of grounds upon which it could decline to lease the property, and that Halcón was within its bargained—for rights to reject the leases. Plaintiffs claim that this explanation was pretextual, as Halcón sought to extricate itself from the lease arrangement because it lost a bid to secure oil and gas rights in other nearby properties, which made the leases of Plaintiffs' land less attractive. Plaintiffs further claim that they did not know that any words were omitted from the agreements and if a change had been made, it was the fault of M & P and CX–Energy.

   As a result of these events, Plaintiffs filed a putative class action against Halcón based upon diversity jurisdiction, 28 U.S.C. § 1332(a), in the United States District Court for the Western District of Pennsylvania ("first filed action"). In their complaint, Plaintiffs alleged that Halcón breached their agreement and the duty of fair dealing. Halcón filed an answer and the District Court convened a case management conference. During the conference, Halcón informed the District Court that it anticipated joining M & P and CXEnergy, claiming that they were "necessary parties." Case Mgmt. Conf. Tr. 13–14, No. 12–1624 (W.D .Pa. Jan. 16, 2013), ECF No. 31.

   *2 Plaintiffs decided to file direct claims against M & P and CX–Energy. Knowing that

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 4268840 (C.A.3 (Pa.))
**(Cite as: 2013 WL 4268840 (C.A.3 (Pa.)))**

adding these parties to the complaint would destroy diversity jurisdiction, Plaintiffs filed a motion to dismiss the first filed action without prejudice and with the intent of pursuing their claims against all defendants in state court. In response to the motion, Halcón stated that it did not oppose joining M & P and CX–Energy, agreed that the claims against all three defendants would benefit from being heard in a single proceeding, but asserted that the case should proceed in the District Court under CAFA, particularly given the discovery already produced and the ongoing alternative dispute resolution ("ADR") activities.

The District Court granted the motion to voluntarily dismiss the first filed action without prejudice, reasoning that the parties agreed that the claims should proceed in one forum, federal diversity would be destroyed by the addition of M & P and CX–Energy, and CAFA had not been pled as a basis for jurisdiction. The District Court also ordered the parties to complete the ADR process and directed the parties to retain the discovery produced to both facilitate the ADR process and assist in the state court case.

On the day Plaintiffs filed their motion to dismiss the first filed action, they, through their same counsel, filed a state court class action complaint in the Court of Common Pleas of Mercer County, Pennsylvania, alleging that Halcón, M & P, and CX–Energy breached their agreements with, and duties to, the putative class ("second filed action"). The second filed complaint is identical to the first filed complaint, except with respect to the addition of two named plaintiffs, two defendants, the causes of action against the additional defendants, seven paragraphs setting forth the facts supporting those additional claims, and several exhibits relating thereto.

Halcón then removed the second filed action to the District Court, which was assigned to the same District Judge as the first filed action. On the cover sheet that accompanied the removal petition, Halcón indicated that the second filed action was

related to the first filed action. In a text-entry order filed in the second filed action shortly after removal, the District Court made specific reference to the first filed action, including a directive that the parties inform the District Court of the status of the ADR process that the Court had ordered in the first filed action.

Plaintiffs filed a motion to remand the second filed action based upon CAFA's local controversy exception to federal subject matter jurisdiction. The District Court found that the local controversy exception did not apply, but held that CAFA's home state exception required remanding the case to the Court of Common Pleas. Halcón petitioned for review of the remand order pursuant to 28 U.S.C. § 1453(c)(1), which we granted.

## II. JURISDICTION & STANDARD OF REVIEW

[1][2] We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1453(c) and review issues of subject matter jurisdiction and statutory interpretation de novo. *Kaufman v. Allstate New Jersey Insurance Co.,* 561 F.3d 144, 151 (3d Cir.2009).

## III. DISCUSSION

**\*3** [3][4] CAFA provides federal courts with jurisdiction over civil class actions if the "matter in controversy exceeds the sum or value of $5,000,000," the aggregate number of proposed class members is 100 or more, and any class member is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2), (d)(2)(A), (d)(5)(B). Thus, the statute authorizes federal jurisdiction over class actions even in the absence of complete diversity between the parties, except where the "controversy is uniquely" connected to the state in which the action was originally filed. *Kaufman,* 561 F.3d at 149 & n. 4. To this end, the statute includes two mandatory exceptions to federal subject matter jurisdiction, known as the "local controversy" and "home state" exceptions. 28 U.S.C. § 1332(d)(4)(A)-(B). The party seeking to invoke an exception bears the burden of proving by a preponderance of the evidence that the exception applies.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 4268840 (C.A.3 (Pa.))
**(Cite as: 2013 WL 4268840 (C.A.3 (Pa.)))**

[FN1] *Kaufman,* 561 F.3d at 153–54.

Upon determining that the local controversy exception was inapplicable, the District Court concluded that the home state exception applied to this case. For the reasons explained herein, we part company with the District Court and conclude that CAFA's home state exception is inapplicable to this case, but that remand is warranted under the local controversy exception.

**A. Home State Exception**

[5][6] The home state exception requires a federal court to decline to exercise subject matter jurisdiction in CAFA class actions where "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). A party seeking to invoke this exception must therefore: (1) establish that the citizenship of the members of two-thirds or more of the putative class is the state in which the action was originally filed; (2) establish the citizenship of the defendants; (3) identify the primary defendants; and (4) demonstrate that two-thirds or more of the members of the putative class are citizens of the same state as the primary defendants. *See Anthony,* 535 F.Supp.2d at 514–15.

[7][8][9][10][11] There is no dispute that the named plaintiffs, more than two-thirds of the class members,[FN2] CX–Energy, and M & P are all citizens of Pennsylvania, the state where the action was originally filed.[FN3] Halcón is a Delaware Corporation with its principal place of business and headquarters in Texas, and thus it is not a citizen of Pennsylvania.

Having established the citizenships of the parties and two-thirds or more of the putative class, the Court must next identify the "primary defendants" under Section 1332(d)(4)(B). Here, the District Court concluded that the home state exception applied based upon its determination that M & P and CX–Energy were the only primary defendants

and both were citizens of Pennsylvania, where the second filed action was originally filed. Because Halcón had denied liability in its answer, the District Court reasoned that Halcón was not a primary defendant. We conclude, however, that Halcón—which is not a citizen of Pennsylvania—is a primary defendant, thereby rendering CAFA's home state exception inapplicable to this case.

*4 [12] CAFA itself does not define the phrase "primary defendants." The word "primary" has several meanings, including: "first in order of time or development," "primitive," "of first rank, importance, or value," "principal," "basic," "fundamental," "direct," "firsthand," and "belonging to the first group or order in successive divisions, combinations or ramifications." *Merriam–Webster's Collegiate Dictionary* 923 (10th ed.2002). Looking at the surrounding statutory language, we can rule out certain of these definitions (such as those that focus on sequence), and construe the word primary to mean "principal," "fundamental," or "direct."

[13][14][15] Some courts have embraced the definition of primary to mean direct and construed the words "primary defendants" to capture those defendants who are directly liable to the proposed class, as opposed to being vicariously or secondarily liable based upon theories of contribution or indemnification. *See, e.g., Copper Sands Homeowners Ass'n, Inc. v. Copper Sands Realty, LLC,* No. 2:10–cv–00510, 2011 WL 941079, at * 6 (D.Nev. Mar.16, 2011); *Anthony,* 535 F.Supp.2d at 517; *Kitson v. Bank of Edwardsville,* No. 06–528, 2006 WL 3392752, at *13–17 (S.D.Ill. Nov.22, 2006). This construction finds support in the statements of CAFA's Sponsors, which describe the primary defendants as those who are the "real targets" of the lawsuit. 151 Cong. Rec. H723–01, 2005 WL 387992 (daily ed. Feb. 17, 2005) (statement of Rep. Goodlatte); *see also* H.R.Rep. No. 108–144, 2003 WL 21321526, at 38 (2003) (stating that "[t]he sponsors intend that primary defendants be intended to reach those defendants who are the real tar-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 4268840 (C.A.3 (Pa.))
**(Cite as: 2013 WL 4268840 (C.A.3 (Pa.)))**

gets of the lawsuit, i.e., the defendants who would be expected to incur most of the loss if liability is found.") This language shows that the Sponsors were focused on the defendants who plaintiffs alleged are the real wrongdoers as opposed to those defendants who may have to pay because of the actions of others.[FN4] Therefore, the direct versus secondary liability distinction some courts use is consistent with the legislative intent.

[16] Courts also look at the allegations to identify the defendants expected to sustain the greatest loss if liability were found, *Bennett v. Bd. of Comm'rs for East Jefferson Levee Dist.,* Nos. 07–3130, 07–3131, 2007 WL 2571942, at * 6 (E.D.La. Aug.31, 2007) (comparing the maximum exposure of liability for each defendant to determine primacy), and whether such defendants have "substantial exposure to significant portions of the proposed class." [FN5] *Robinson v. Cheetah Transp.,* No. 06–0005, 2006 WL 468820, at *2 n. 7 (W.D.La. Nov.14, 2006).[FN6] These considerations, therefore, focus on the number of class members purportedly impacted by the defendant's alleged actions and the amount the defendant may lose if found liable. To determine the number of class members to whom a defendant may be liable and to identify the defendants who would sustain the greatest loss if found liable, courts must assume liability will be established.[FN7] As a result, courts should not consider whether a defendant has denied liability, and the District Court's reliance on Halcón's denial of liability was misplaced.

*5 [17] In short, courts tasked with determining whether a defendant is a "primary defendant" under CAFA should assume liability will be found and determine whether the defendant is the "real target" of the plaintiffs' accusations. In doing so, they should also determine if the plaintiffs seek to hold the defendant responsible for its own actions, as opposed to seeking to have it pay for the actions of others. Also, courts should ask whether, given the claims asserted against the defendant, it has potential exposure to a significant portion of the class

and would sustain a substantial loss as compared to other defendants if found liable.

[18] Applying these principles, we conclude that Plaintiffs allege that each defendant is directly liable, appear to apportion liability equally among the defendants, and seek similar relief from all defendants. While more claims are asserted against M & P and CX–Energy than against Halcón, the claims against Halcón are as, if not more, significant in that Plaintiffs allege Halcón breached its lease agreement with more than 1,000 landowners and owes damages exceeding $50,000 to each class member. Thus, Halcón is a "primary defendant."

[19][20] Finally, by using the word "the" before the words "primary defendants" rather than the word "a," the statute requires remand under the home state exception only if all primary defendants are citizens of Pennsylvania. *Anthony,* 535 F.Supp.2d at 515. Because Halcón is a primary defendant and is not from the same state as the Pennsylvania class members, remand based upon this exception is not warranted.

For these reasons, we conclude that the home state exception does not apply and remand should not have been ordered on this basis.

**B. Local Controversy Exception**

Finding the District Court's rationale for remand lacking, we turn to the other exception to CAFA's subject matter jurisdiction: the local controversy exception. The District Court ruled that the local controversy exception did not apply to this case because another class action had been filed arising from the same facts and asserting similar claims. For the reasons set forth herein, we conclude that "no other class action" had been filed as contemplated under CAFA, and therefore remand of this case pursuant to the local controversy exception is appropriate.

[21][22] Under the local controversy exception:

A district court shall decline to exercise jurisdic-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 4268840 (C.A.3 (Pa.))
**(Cite as: 2013 WL 4268840 (C.A.3 (Pa.)))**

tion under paragraph (2)—

(A)(i) over a class action in which-

(I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

(II) at least 1 defendant is a defendant—

   (aa) from whom significant relief is sought by members of the plaintiff class;

   (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

   (cc) who is a citizen of the State in which the action was originally filed; and

*6 (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

   (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons[.]

28 U.S.C. § 1332(d)(4)(A). A party seeking to invoke this exception must therefore show that: (1) greater than two-thirds of the putative class are citizens of the state in which the action was originally filed; (2) at least one defendant is a citizen of the state in which the action was originally filed (the "local defendant"); (3) the local defendant's conduct forms a significant basis for the claims asserted; (4) plaintiffs are seeking significant relief from the local defendant; (5) the principal injuries occurred in the state in which the action was originally filed; and (6) no other class action asserting the same or similar allegations against any of the defendants had been filed in the preceding three years. These elements ensure that the exception is

invoked when the class is primarily local, the lawsuit is against "at least one real in-state defendant whose alleged conduct is central to the class claims and from whom the class seeks significant relief," the injuries the defendant allegedly caused occurred within the forum, and no other similar class actions have been filed against any of the defendants. 151 Cong. Rec. S999–02, 2005 WL 283380 (daily ed. Feb. 7, 2005) (statement of Sen. Specter).

[23] Each element of the local controversy exception is met and remand pursuant to this exception is warranted.

First, as stated previously, there is no dispute that more than two-thirds of the class members are citizens of Pennsylvania.

Second, there is no dispute that at least one defendant named in the case is local—that is, from the state in which the case was originally filed. As discussed above, both M & P and CX–Energy are citizens of Pennsylvania, the state in which the case was originally filed, and hence are local defendants under CAFA.

Third, each local defendant's "alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class." 28 U.S.C. § 1332(d)(4)(A)(i)(II)(bb).[FN8] As agents for the putative class members, the local defendants entered an agreement with Halcón pursuant to which Halcón would lease up to 60,000 acres of Plaintiffs' oil and gas rights. Plaintiffs allege that the local defendants breached their contractual and fiduciary obligations to the class by failing to ensure that the lease agreements conformed to Halcón's requirements and made negligent misrepresentations to the class concerning the basis upon which Halcón could refuse to enter the leases.[FN9] Put differently, Plaintiffs essentially assert that M & P and CX–Energy made misrepresentations to induce them to relinquish their oil and gas rights and caused Halcón to decline to enter the lease agreement by changing the terms of the agreement and that these actions damaged Plaintiffs. Because

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 4268840 (C.A.3 (Pa.))
**(Cite as: 2013 WL 4268840 (C.A.3 (Pa.)))**

Plaintiffs' claims are based upon Halcón's rejection of the leases and because Halcón allegedly rejected the leases based on language that the local defendants purportedly omitted, the local defendants' conduct forms a "significant basis" of Plaintiffs' claims.

**\*7** Fourth, Plaintiffs are seeking "significant relief" from both local defendants. Plaintiffs seek from the local defendants damages totaling more than $50,000 for each of the 1,362 class members and a declaration that the local defendants were not entitled to receive fees from Plaintiffs for the lease transactions. While monetary and declaratory relief is also sought from Halcón, this does not change the fact that significant relief is being sought from the local defendants.

Fifth, there is no dispute that the "principal injuries" resulting from the alleged conduct or related conduct of each defendant were "incurred in the state in which the case was originally filed." 28 U.S.C. § 1332(d)(4)(A)(i)(III).FN10 Here, most class members who sought to lease their oil and gas rights allegedly reside in, and all of the land is located in, Mercer County, Pennsylvania. Thus, Pennsylvania citizens own the land that is at the heart of this dispute, and they were allegedly financially injured by the defendants' alleged breach of the agreements to lease the oil and gas rights to their Pennsylvania property.

Finally, contrary to the District Court, we determine that no other class action, as contemplated by CAFA, asserting the same or similar allegations against any of the defendants had been filed in the preceding three years. While we recognize that Plaintiffs filed two separate putative class action complaints against Halcón, the act of filing a subsequent complaint does not necessarily mean that the earlier filed action bars invocation of the exception. Indeed, close scrutiny of the two cases shows that the first filed action does not constitute an "other class action" as contemplated by CAFA.

[24] CAFA does not define what constitutes an "other class action" other than to limit it to filed cases asserting similar factual allegations against a defendant. The goals of the statute, however, provide guidance. In enacting CAFA, Congress recognized the benefits of having one federal forum to adjudicate multiple cases filed in various courts against a defendant. *See* Class Action Fairness Act of 2005, Pub.L. No. 109–2, § 2(a)(1), 119 Stat. 4. To this end, the statute seeks to control the impact of multiple class actions filed by different members of the same class against a defendant by providing a single forum to resolve similar claims. *See* S.Rep. No. 109–14, at 4–5 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 5–6; *DeHart v. BP America, Inc.,* No. 09–626, 2010 WL 231744, at * 12 (W.D.La. Jan. 14, 2010). Moreover, Congress sought to have all but truly local controversies FN11 proceed in federal court and found that when a "controversy results in the filing of multiple class actions, it is a strong signal that those cases may not be of the variety that [the local controversy] exception is intended to address." S.Rep. No. 109–14, at 40–41, 2005 U.S.C.C.A.N. at 39; *see also* Class Action Fairness Act of 2005, Pub.L. No. 109–2, § 2(b)(2), 119 Stat. 4.

**\*8** [25] In short, Congress wanted to ensure that defendants did not face copycat, or near copycat, suits in multiple forums and hence excluded from the local controversy exception cases where a defendant was named in multiple similar cases. It follows that the "no other class action" factor must not be read too narrowly. The "inquiry is whether similar factual allegations have been made against the defendant in multiple class actions"—and hence they are facing separate, distinct lawsuits—without regard to the procedural posture of the earlier filed cases or whether the putative classes in the cases overlap, their claims arise from an identical event, or involve the same causes of action or legal theories.FN12 S.Rep. No. 109–14, at 41, 2005 U.S.C.C.A.N. at 39; *see also Giannini v. Nw. Mut. Life Ins. Co.,* No. 12–77, 2012 WL 1535196, at *5 (N.D.Cal. Apr.30, 2012); *Rasberry,* 609 F.Supp.2d at 605.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 4268840 (C.A.3 (Pa.))
**(Cite as: 2013 WL 4268840 (C.A.3 (Pa.)))**

The question here is whether the first and second filed actions are the same case or if the first filed action is an "other class action," as contemplated under the local controversy exception. The same representative plaintiffs filed two complaints on behalf of an identically-defined putative class arising from the same factual allegations. While the first filed action was pending in federal court, the parties proceeded with discovery and Halcón disclosed its intention to join the local defendants based on their role in the transaction that gave rise to the dispute. Plaintiffs then expressed a desire to add them as direct defendants. Instead of amending the first filed complaint in a way that would destroy complete diversity, Plaintiffs sought to voluntarily dismiss the first filed action so that Plaintiffs and Halcón could assert claims against the local defendants in a single forum in which subject matter jurisdiction undisputedly existed. Apparently recognizing the possibility that, absent a settlement, the dispute between the sides would continue, the District Court granted the motion to dismiss the first filed action without prejudice but ordered the parties to participate in ADR and to retain the discovery that they had exchanged for use in both the ADR and the case that joined the two local defendants. Thus, the District Court's actions showed that it considered the second filed action a continuation of the first filed action and took practical steps to ensure that the act of filing the second complaint did not delay the parties' ability to proceed. Treating the second filed action in this way is consistent with the goal of the local controversy exception of ensuring that the defendants are not subject to similar claims in different forums and allowing all claims against them to proceed in a coordinated fashion.

Furthermore, this is not a copycat situation where the defendants face similar class claims brought by different named plaintiffs and different counsel in different forums. Rather, the named Plaintiffs and their counsel brought class claims in November 2012 and, based on Halcón's disclosure, Plaintiffs decided to enlarge the case to add the two local defendants together with claims unique to

those parties that arose from the same transactions. In practical terms, Plaintiffs' actions were no different from a situation where a party amends a pleading to join parties to an existing case, which is indeed what Halcón itself stated it intended to do during the original district court proceeding. Indeed, there is nothing in the record that would suggest otherwise.

*9 In short, Halcón is defending the same case that it had been defending since November 2012 with the exception of the addition of the other parties Halcón intended to join. The first filed action therefore is not an "other class action" as contemplated under CAFA, but rather is the same case, albeit enlarged, and thus, the "no other class action" prong of the local controversy exception is satis- fied.

For these reasons, the local controversy exception to CAFA jurisdiction mandates remand of this truly local case involving Pennsylvania landowners and their land.

### IV. CONCLUSION
For the foregoing reasons, we will affirm the order of the District Court granting the motion to remand.

FN1. Because these exceptions are examined to determine whether a federal court has subject matter jurisdiction, "our inquiry is limited to examining the case 'as of the time it was filed in state court [.]' " *Std. Fire Ins. Co. v. Knowles,* —— U.S. ——, ——, 133 S.Ct. 1345, 1349, 185 L.Ed.2d 439 (2013) (quoting *Wisc. Dep't of Corrs. v. Schacht,* 524 U.S. 381, 390, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998)) (concluding that, although District Court appropriately considered stipulation in the complaint by the class action plaintiff to an amount in controversy below CAFA's jurisdictional threshold, the District Court wrongly concluded that the precertification stipulation was binding on the absent class

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 4268840 (C.A.3 (Pa.))
(Cite as: 2013 WL 4268840 (C.A.3 (Pa.)))

members). As we noted in *Erie Ins. Exch. v. Erie Indem. Co.,* No. 13–1415, —— F.3d ——, 2013 WL 3481493, at *3 (3d Cir. June 28, 2013), in evaluating whether removal was proper, "we *generally* focus on the allegations in the Complaint and the notice of removal." *Id.* (emphasis added). Courts may consider pleadings as well as evidence that the parties submit to determine whether subject matter jurisdiction exists or an exception thereto applies. *See Coleman v. Estes Express Lines, Inc.,* 631 F.3d 1010, 1015–17 (9th Cir.2011) (relying solely on the pleadings to evaluate the "significant relief" and "significant basis of the claims" factors under the local controversy exception, but considering external evidence to determine the "citizenship" factor); *Coffey v. Freeport McMoran Copper & Gold,* 581 F.3d 1240, 1246 (10th Cir.2009) (looking to the total activity of a company to determine the "citizenship" factor); *Moua v. Jani–King of Minn., Inc.,* 613 F.Supp.2d 1103, 1108–09 (D.Minn.2009) (considering the allegations and plaintiff's arguments in other submissions); *Anthony v. Small Tube Mfg. Corp.,* 535 F.Supp.2d 506, 517 (E.D.Pa.2007) (considering defendant's answer and averments).

FN2. Members of the putative class who are natural persons are deemed citizens of the state in which they are domiciled, which is typically the state where the person lives. *See Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 828, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989); *District of Columbia v. Murphy,* 314 U.S. 441, 455, 62 S.Ct. 303, 86 L.Ed. 329 (1941). Under CAFA, suits brought "by unincorporated associations [are] treated like suits by corporations in that the citizenship of the association for diversity purposes is determined by the entities' principal place of

business and not by the citizenship of its members." *Erie Ins.,* 2013 WL 3481493, at *6 n. 7; 28 U.S.C. § 1332(d)(10).

FN3. CX–Energy is deemed a citizen of Pennsylvania, which is both its state of incorporation, 28 U.S.C. § 1332(c)(1), and the place "where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend,* 559 U.S. 77, 80, 130 S.Ct. 1181, 175 L.Ed.2d 1029 (2010). As an unincorporated association, CAFA deems M & P "to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized," 28 U.S.C. § 1332(d)(10), which in this case is Pennsylvania.

FN4. For this reason, courts examining whether a defendant is a "primary defendant" should not consider whether the defendant may be able to recover from others or whether it is able to satisfy the judgment.

FN5. This is also consistent with the legislative history. The Sponsors explicitly stated that "[t]he term "primary defendant" should include any person who has substantial exposure to significant portions of the proposed class in the action, particularly any defendant that is allegedly liable to the vast majority of the members of the proposed classes, as opposed to simply a few individual class members." 151 Cong. Rec. H723–01, 2005 WL 387992 (daily ed. Feb. 17, 2005) (statement of Rep. Goodlatte); *see also* H.R.Rep. No. 108–144, 2003 WL 21321526, at 38 (2003). Thus, the Sponsors intended the identity of the "primary defendants" to be determined based upon the allegations concerning the defendants expected to be liable to the greatest number of class members and to suffer the greatest loss if liability is found.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 4268840 (C.A.3 (Pa.))
**(Cite as: 2013 WL 4268840 (C.A.3 (Pa.)))**

FN6. *See also Hollinger v. Home State Mut. Ins. Co.,* 654 F.3d 564, 572 (5th Cir.2011) (finding that defendants were primary defendants after considering the fact that all punitive class members had claims against them and that they had issued the insurance policies at the center of the dispute).

FN7. This is in keeping with the contingent nature of the Sponsors' language (i.e., "if liability is found"). H.R.Rep. No. 108–144, 2003 WL 21321526, at 38 (2003).

FN8. This factor does not require that each class member assert a claim against that local defendant nor must the local defendant's alleged conduct form the basis of every claim asserted. *Kaufman,* 561 F.3d at 155. The focus is on the conduct in which the local defendant allegedly engaged and the alleged number of people impacted by it.

FN9. Halcón's cross-claim also alleges that the local defendants agreed to include language in certain lease documents that did not appear in the documents that plaintiffs signed. Halcón claims that the local defendants made statements concerning the basis upon which Halcón could reject the lease, which Halcón alleges contradicts the written agreement.

FN10. This provision is written in the disjunctive and hence, the provision is "satisfied either 1) when principal injuries resulting from the alleged conduct of each defendant were incurred in the state in which the action was originally filed 'or' 2) when principal injuries resulting from any related conduct of each defendant were incurred in the state." *Kaufman,* 561 F.3d at 158.

FN11. The local controversy exception seeks to "identify a truly local controversy—a controversy that uniquely affects a particular locality to the exclusion of all others" 151 Cong. Rec. H723–01, 2005 WL 387992 (daily ed. Feb. 17, 2005) (statement of Rep. Sensenbrenner), and "enables State courts to adjudicate truly local disputes involving principal injuries concentrated within the forum State." 151 Cong. Rec. S999–02, 2005 WL 283380 (daily ed. Feb. 7, 2005) (statement of Sen. Specter).

FN12. Also, if two class actions arise out of the same facts, but are factually and analytically different, such that the proof necessary for one class to prevail differs from the proof another class would need to present, the first filed class action would not constitute an "other" class action as defined in CAFA. *Rasberry v. Capitol Cnty. Mut. Fire Ins. Co.,* 609 F.Supp.2d 594, 605 (E.D.Tex.2009).

C.A.3 (Pa.),2013.
Vodenichar v. Halcon Energy Properties, Inc.
--- F.3d ----, 2013 WL 4268840 (C.A.3 (Pa.))

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.