# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

APRIL DEBOER, et al.,

      Plaintiffs,                            Civil Action No. 12-cv-10285
                                              HON. BERNARD A. FRIEDMAN

vs.

RICHARD SNYDER, et al.,

      Defendants.

_____/

**OPINION AND ORDER DENYING DEFENDANTS' MOTION
TO DISMISS THE AMENDED COMPLAINT**

**I.**     **Introduction and Facts**

Plaintiffs April DeBoer and Jayne Rowse (collectively "plaintiffs") initially commenced this action against Richard Snyder and Bill Schuette, in their respective official capacities as Governor of the State of Michigan and Michigan Attorney General (collectively "defendants"), on the ground that their enforcement and defense of section 24 of the Michigan Adoption Code (hereinafter "section 24"), Mich. Comp. Laws § 710.24, violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Plaintiffs have since amended their complaint to include a second cause of action challenging the validity of Michigan's constitutional prohibition against same-sex marriage (hereinafter the "Michigan Marriage Amendment" or "MMA"), Mich. Const. Art. I, § 25, pursuant to the Due Process and Equal Protection Clauses of the Fourteenth Amendment.[1]

_____

[1] The amended complaint also added former Oakland County Clerk, Bill Bullard, Jr. as a party defendant. He filed a motion to dismiss the amended complaint on November 8, 2012 [docket entry 45]. As a result of the November 2012 election, however, Lisa Brown was elected

Currently before the Court is defendants' motion to dismiss the amended complaint [docket entry 44]. Plaintiffs filed a response [docket entry 46] and defendants filed a reply [docket entry 48].

Plaintiffs are an unmarried same-sex couple residing in Hazel Park, Michigan. They have lived together for the past six years and jointly own their residence. DeBoer is a nurse in the neonatal intensive care unit at Hutzel Hospital and Rowse is an emergency room nurse at Henry Ford Hospital, both located in Detroit. In November 2009, Rowse, as a single person, legally adopted child N. Thereafter, also as a single person, she legally adopted child J. DeBoer, as a single person, adopted child R in April 2011. Plaintiffs seek to jointly adopt the three children, but section 24 and the Michigan Marriage Amendment operate in tandem to prevent them from doing so. The former restricts adoptions to either single persons or married couples and the latter restricts the state's legal definition of marriage to heterosexual couples.

In their motion to dismiss, defendants argue, among other things, that plaintiffs fail to state a cognizable equal protection claim because they cannot demonstrate that the MMA lacks a rational relationship to a legitimate state interest. Defendants also contend that the MMA does not violate due process because plaintiffs do not possess a fundamental right to marry another individual of the same gender.

In response, plaintiffs contend that the MMA violates the Equal Protection Clause regardless of the level of constitutional scrutiny applied by the Court. Assuming that the rational basis test applies, plaintiffs assert that the MMA is not rationally related to any conceivable

_____

to the position of Oakland County Clerk/Register of Deeds and replaced Bullard on January 1, 2013. She has withdrawn Bullard's motion to dismiss [docket entry 52].

legitimate purpose. Plaintiffs further urge the Court to invalidate the MMA on substantive due process grounds because it infringes their fundamental right to marry an individual of the same gender.

## II.    Standard of Review

In deciding a Rule 12(b)(6) motion to dismiss, the Court must "construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." Shane v. Bunzl Distrib. USA, Inc., 200 F. App'x 397, 401 (6th Cir. 2006) *citing* Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 360 (6th Cir. 2001). A sufficient pleading "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Ashcroft v. Iqbal, 556 U.S. 662, 678-679 (2009). Instead, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Ctr. for Bio-Ethical Reform, Inc. v. Napolitano, 648 F.3d 365, 369 (6th Cir. 2011) *quoting* Iqbal, 556 U.S. at 678.

## III.    Analysis

Plaintiffs' equal protection claim has sufficient merit to proceed. The United States Supreme Court's recent decision in *United States v. Windsor*, No. 12-307 (U.S. Jun. 26, 2013), has provided the requisite precedential fodder for both parties to this litigation. Defendants will no doubt cite to the relevant paragraphs of the majority opinion espousing the state's "historic and essential authority to define the marital relation." Id. slip op. at 18. They will couch the popular referendum that resulted in the passage of the MMA as "a proper exercise of [the state's] sovereign authority within our federal system, all in the way that the Framers of the Constitution

-3-

intended." Id. slip op. at 19.  After all, what could more accurately embody "[t]he dynamics of state government in the federal system. . . to allow the formation of consensus respecting the way the members of a discrete community treat each other in their daily contact and constant interaction with each other," id., than a legitimate vote of the people of the State of Michigan to preserve their chosen definition of marriage in the fabric of the state constitution.

On the other hand, plaintiffs are prepared to claim *Windsor* as their own; their briefs sure to be replete with references to the newly enthroned triumvirate of *Romer v. Evans*, 517 U.S. 620 (1996), *Lawrence v. Texas*, 539 U.S. 558 (2003) and now *Windsor*.  And why shouldn't they? The Supreme Court has just invalidated a federal statute on equal protection grounds because it "place[d] same-sex couples in an unstable position of being in a second-tier marriage." Id. slip op. at 23.  Moreover, and of particular importance to this case, the justices expressed concern that the natural consequence of such discriminatory legislation would not only lead to the relegation of same-sex relationships to a form of second-tier status, but impair the rights of "tens of thousands of children now being raised by same-sex couples" as well. Id.  This is exactly the type of harm plaintiffs seek to remedy in this case.

Construing the facts in the light most favorable to plaintiffs, and in view of the Supreme Court's current statement of the law, this Court cannot say that plaintiffs' claims for relief are without plausibility.[2]  Plaintiffs are entitled to their day in court and they shall have it.

---

[2] Plaintiffs' due process cause of action will likewise move forward because it states a plausible claim for relief. See Perry v. Schwarzenegger, 704 F. Supp. 2d 921, 991-993 (N.D. Cal. 2010) (finding that California's state constitutional amendment barring same-sex marriage violates the Due Process Clause); but see Jackson v. Abercrombie, 884 F. Supp. 2d 1065, 1086 (D. Haw. 2012) (finding that Hawaii's state constitutional amendment barring same-sex marriage does not violate the Due Process Clause).

Accordingly,

IT IS ORDERED that defendants' motion to dismiss the amended complaint is denied.


IT IS FURTHER ORDERED that the parties are to appear for a Rule 16 scheduling

conference on Wednesday, July 10, 2013 at 3:00 p.m. to set cut-off dates and a trial date.




s/ Bernard A. Friedman_____
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

Dated: July 1, 2013
        Detroit, Michigan

# EXHIBIT B

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

JAMES DARBY, *et al.*,      )
                         )     Case No. 12 CH 19718
      Plaintiffs,   )
                         )     Hon. Sophia H. Hall
    v.               )
                         )
DAVID ORR, in his official capacity as Cook  )
County Clerk,           )
                         )
      Defendant.    )

TANYA LAZARO, *et al.*,   )
                         )
      Plaintiffs,   )
                         )
    v.               )
                         )
DAVID ORR, in his official capacity as Cook  )
County Clerk,           )
                         )
      Defendant.    )

STATE OF ILLINOIS, *ex rel.* Lisa Madigan,  )
Attorney General of the State of Illinois,  )
                         )
      Intervenor,   )
                         )
CHRISTIE WEBB, in her official capacity as  )
Tazewell County Clerk, KERRY HIRTZEL, in his )
official capacity as Effingham County Clerk,  )
DANIEL S. KUHN, in his official capacity as  )
Putnam County Clerk, PATRICIA LYCAN, in her )
official capacity as Crawford County Clerk, and )
BRENDA BRITTON, in her official capacity as  )
Clay County Clerk,      )
                         )
      Intervenors.

**Decision**

    This case comes on to be heard on the motion to dismiss brought by Intervenors, County Clerks Christie Webb, Kerry Hirtzel, Daniel Kuhn, Patricia Lycan, and Brenda Britton, pursuant

1

to 735 ILCS 5/2-615 of the Illinois Code of Civil Procedure. (These Intervenors are hereinafter referred to as "intervenor-defendants" or "defendants"). Intervenor-defendants argue that plaintiffs in these two cases, who are 25 same-sex couples in the State of Illinois, have not alleged sufficient facts in their complaints to support their claims that the Illinois ban on same-sex marriage violates the Illinois Constitution.

The question before this Court is, have plaintiffs alleged sufficient facts, with all inferences drawn in their favor, that they should be given the opportunity to prove that the marriage ban is unconstitutional. For the reasons discussed below, this Court finds that plaintiffs have done so for some of their claims, but have not done so for all of their claims.

Causes of Action

Before the Court are two complaints, *Darby v. Orr* and *Lazaro v. Orr,* which have been consolidated for hearing before this Court. Plaintiffs in *Darby* and *Lazaro* (sometimes collectively referred to as "plaintiffs") challenge the constitutionality of certain sections of the Illinois Marriage and Dissolution of Marriage Act (IMDMA) that prohibit marriage between two people of the same sex. Plaintiffs in both cases are same-sex couples who were denied marriage licenses by defendant Orr, or whose same-sex marriages from outside of Illinois are not recognized in Illinois. Plaintiffs are military veterans, teachers, social workers, small business owners, doctors, lawyers, and architects, among others. Several plaintiffs are alleged to be parenting children who are the biological offspring of one of them as well as children legally adopted by them.

The *Darby* plaintiffs challenge sections of the IMDMA which authorize marriages "between a man and a woman" (750 ILCS § 5/201), expressly prohibit marriages "between 2 individuals of the same sex" (750 ILCS § 5/212(a)(5)), and state that marriages of same-sex couples are "contrary to the public policy of this State" (750 ILCS § 5/213.1). They also point to the section which provides that a marriage license will issue upon "satisfactory proof that the marriage is not prohibited" (750 ILCS § 5/203(2)).

The *Darby* plaintiffs claim that those statutory provisions violate various sections of the Illinois Constitution. In Count I, plaintiffs allege deprivation of "life, liberty or property without due process" under Article I, § 2, and deprivation of "the right to be secure in their persons, houses, papers and other possessions against . . . invasions of privacy" under Article I, § 6. In Count II, they allege they have been "denied the equal protection of the laws" based on sexual orientation, in violation of Article I, § 2, and that they have been denied "equal protection of the laws . . . on account of sex . . . .," in violation of Article I §18. Finally, in Count III, they allege a violation of Article IV, §13, which provides that "the General Assembly shall pass no special or local law when a general law is or can be made applicable." The *Darby* plaintiffs seek a declaratory judgment that those provisions are unconstitutional and that defendant be enjoined from preventing same-sex couples from obtaining marriage licenses.

2

The *Lazaro* plaintiffs also challenge 750 ILCS § 5/212(a)(5) and 750 ILCS § 5/203. In addition, they challenge 750 ILCS § 5/215, which provides that any person who violates Section II of the IMDMA is guilty of a Class B misdemeanor.

The *Lazaro* plaintiffs also claim the statutory provisions violate the Illinois Constitution. In Count I, plaintiffs allege deprivation of due process under Article I, § 2. In Count II, they allege denial of equal protection based on sexual orientation under Article I, § 2. In Count III, they allege denial of equal protection on account of sex under Article I, § 18. Finally, in Count IV, they allege deprivation of the right to be secure against unreasonable invasions of privacy under Art. I, § 6. The *Lazaro* plaintiffs seek a declaratory judgment that those sections of the IMDMA preventing same-sex couples from obtaining a marriage license are unconstitutional and that defendant be enjoined from preventing same-sex couples from obtaining such licenses.

Briefs on File

Defendant Orr declined to defend the constitutionality of the challenged provisions. The Court granted leave to the Illinois Attorney General to intervene as a matter of right, and the Attorney General also declined to defend the constitutionality of the challenged provisions. The Court, thereafter, granted leave to the Clerks of Tazewell, Effingham, Crawford, Clay, and Putnam Counties to intervene as defendants as of right, to defend the constitutionality of the provisions.

The intervenor-defendants filed a brief in support of their motion to dismiss. Plaintiffs filed a brief in opposition. Defendant Orr and the Attorney General both also filed briefs in opposition to the motion. The Court allowed supplemental briefs from plaintiffs, intervenor-defendants, Orr, and the Attorney General regarding the application of the United States Supreme Court's decision in *United States v. Windsor*, 133 S. Ct. 2675 (June 26, 2013), decided after most of the briefing on the motion to dismiss.

The Court also granted leave to several organizations to file amicus briefs. Amicus briefs in support of intervenor-defendants' motion to dismiss were filed by the Illinois Family Institute, the Moody Church and fourteen other Christian churches in Illinois, the Catholic Conference of Illinois and the Lutheran Church-Missouri Synod, the Church of Christian Liberty and Grace-Gospel Fellowship, and a group of Illinois legislators which included Senator Kirk Dillard, Senator William Haine, Senator Matt Murphy, Senator Darrin LaHood, Senator Bill Brady, Representative David Reis, Representative Joseph Lyons, Representative Michael Connelly, Representative Richard Morthland, Representative Patricia Bellock, and Representative Paul Evans.

Amicus briefs in opposition to the motion to dismiss were filed by Religious Leaders and Communities in Favor of Same-Sex Couples and jointly by the Chicago Bar Association, the Chicago Lawyers Committee for Civil Rights Under Law, the Chicago Urban League, the Sargent Shriver National Center on Poverty Law, National Council of La Raza, The American Jewish Committee, The Chicago Committee on Minorities in Law Firms, the Mexican American Legal Defense & Education Fund, the National Black Justice Coalition, the Hispanic Lawyers Association of Illinois, the Lesbian and Gay Bar Association of Chicago, Equality Illinois, Affinity Community Services, Citizen Action/Illinois, the Association of Latino Men for Action, the Center on Halsted, the Chicago Black Gay Man's Caucus, Chicago House, The Civil Rights Agenda, African American Lesbian Professionals Having a Say, Community Alliance and Action Network, Prairie Pride Coalition, Quad Citizens Affirming Diversity, AIDS Foundation of Chicago, and PFLAG Northern Illinois Council.

Standard for Deciding a 2-615 Motion to Dismiss

A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint on the grounds of defects appearing on the face of the complaint. 735 ILCS 5/2-615; *Neppl v. Murphy*, 316 Ill. App. 3d 581, 584 (1st Dist. 2000). To decide whether the complaint is sufficient to support the legal claims asserted, the Court must view the allegations in the light most favorable to the plaintiff. The Court then determines whether the complaint alleges facts that sufficiently support a cause of action upon which relief may be granted, without considering the merits of the case. *Elson v. State Farm Fire & Cas. Co.,* 295 Ill. App. 3d 1, 5 (1st Dist. 1998).

In other words, the question before this Court, at this time, is not whether plaintiffs can actually prove their claims of unconstitutionality. Rather, the question is whether the facts alleged, if proven, state a cause of action.

In considering defendants' motion to dismiss, this Court takes as true all well-pleaded facts of the complaint, and must draw all reasonable inferences, therefrom, in favor of the plaintiffs. The complaint is construed liberally, and will not be dismissed unless it is "clearly apparent that no set of facts can be proved that would entitle the plaintiff to relief." In ruling on a motion to dismiss, only those facts apparent from the face of the pleadings, matters of which the court can take judicial notice, and judicial admissions in the record may be considered. *PoohBah Enterprises, Inc. v. County of Cook,* 232 Ill. 2d 463, 473 (2009); *Elson,* 295 Ill. App. 3d at 5. Plaintiffs must allege facts, not mere conclusions of fact or law, to establish their claim as a viable cause of action. *Napleton v. Village of Hinsdale,* 229 Ill. 2d 296, 305 (2008).

If plaintiffs meet this threshold, then defendants' motion to dismiss will be denied, and plaintiffs will have an opportunity to present evidence to prove that they are entitled to the relief they request.

## Analysis

In deciding this motion, this Court must determine whether plaintiffs have alleged facts to support their claims that the statutory sections they challenge, sometimes referred to herein as the "marriage ban," violate (1) equal protection of the laws based on sexual orientation; (2) equal protection of the laws on account of sex; (3) due process of law; (4) the right of privacy; and (5) the prohibition of special legislation.

## I

### Equal Protection - Sexual Orientation

Defendants move to dismiss plaintiffs' claim that the marriage ban violates equal protection of the law on the basis of plaintiffs' sexual orientation under Article I, § 2 of the Illinois Constitution. Article I, § 2 provides that "[n]o person shall be . . . denied the equal protection of the laws."

Defendants argue that the allegations in the complaints fail to support plaintiffs' claim that the marriage ban violates equal protection. Defendants, first, argue that the language of the marriage ban is facially neutral. Second, they argue that, even taking plaintiffs' allegations as true, the marriage ban passes the "rational basis" test for constitutionality. Defendants argue rational bases for the ban are the protection of traditional marriage, the state's interest in procreation within marriage, and the encouragement of families with a mother and a father, and children biologically related to both. *See Anderson v. King County*, 138 P.3d 963, 985 (Wash. 2006); *Hernandez v. Robles*, 855 N.E. 2d 1, 7 (N.Y. 2006)

Plaintiffs respond that, first, the language of the marriage ban is not neutral on its face. Plaintiffs, second, argue that the allegations of fact in their complaints support their claim that the marriage ban does not satisfy the rational basis test, if the Court determines that to be the appropriate test to apply. Plaintiffs also argue, however, that this Court must apply heightened scrutiny, which is more demanding than the rational basis test, to the analysis of constitutionality. They argue that the facts alleged, taken in the light most favorable to plaintiffs, as this Court is required to do on a motion to dismiss, support a finding that gay men and lesbians are a "suspect class." Defendants respond that the allegations of the complaints are not sufficient to support a finding that gay men and lesbians are a suspect class.

It is well-established constitutional law that when a law is directed to a "suspect class," the court reviews it with strict scrutiny. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985); *see also People v. R.L.*, 158 Ill. 2d 432, 438 (1994). That means the law must be narrowly tailored to achieve a compelling government interest, if the court is to uphold it as constitutional. *Id.* When a law is directed to what has been called a "quasi-suspect class," the

5

court reviews it with intermediate scrutiny. *Clark v. Jeter*, 486 U.S. 456, 461 (1988); *see also In re Samuelson*, 189 Ill. 2d 548, 561-62 (2000). That means that the law must be substantially related to an important governmental objective. In cases which involve a suspect or quasi-suspect class, the government bears the burden to demonstrate the compelling or important nature of the government's interest. All other cases not involving suspect or quasi-suspect classes are reviewed under the rational basis test.

For the reasons stated below, this Court finds that the marriage ban is not facially neutral. This Court, further, finds that plaintiffs have alleged sufficient facts, when taken in the light most favorable to plaintiffs, to establish that they belong to a suspect class. The Court, therefore, must deny the motion to dismiss the equal protection claim under Article I, § 2, thus allowing plaintiffs the opportunity to prove that they belong to a suspect or quasi-suspect class. If plaintiffs satisfy their burden, then the Court will apply the appropriate heightened scrutiny to the consideration of their claim of violation of equal protection based on sexual orientation.

A. Limited Lockstep

Before considering the merits of defendants' motion, this Court must determine the law which applies to the inquiry into whether the marriage ban violates Illinois equal protection, Article I, §2. The Illinois Supreme Court has adopted the "limited lockstep" analysis, which requires this Court to follow the interpretations of the federal equal protection clause, unless Illinois intended that Illinois equal protection be interpreted differently. As stated in *People v. Caballes*, 221 Ill. 2d 282, 310 (2006):

> We must find in the language of our constitution, or in the debates and the committee reports of the constitutional convention, something which will indicate that the provisions of our constitution are intended to be construed differently than are similar provisions in the Federal Constitution, after which they are patterned.

*Id.* (citation omitted).

Illinois courts, analyzing Article I, § 2 equal protection claims, have not found reason to depart from federal analysis under the U.S. Constitution. *See In re Jonathon C.B.,* 2011 IL 107750 ¶ 116; *Nevitt v. Langfelder*, 157 Ill. 2d 116, 124 (1993). Thus, this Court is guided by decisions under the federal equal protection clause. This Court is mindful that cases decided by federal courts, or state courts outside of Illinois, interpreting the federal equal protection clause, are not controlling precedent. *People v. McCauley*, 163 Ill. 2d 414, 436 (1994).

B. Facial neutrality

Defendants, first, argue that this Court need not proceed to an equal protection analysis because the language of the marriage ban, on its face, does not discriminate on the basis of sexual orientation. Specifically, defendants argue that Section 212(a)(5) does not discriminate

6

because homosexuals and heterosexuals are equally allowed to marry someone of the opposite sex, and equally prohibited from marrying someone of the same sex. *See Baehr v. Lewin*, 852 P.2d 44, 51 n. 11 (Haw. 1993) (noting that "[p]arties to a same-sex marriage could theoretically be either homosexuals or heterosexuals").

Defendants argue that when a law is facially neutral, it may only be challenged on equal protection grounds if it has a disparate impact on a certain group. Moreover, that disparate impact must be shown to have been motivated by a discriminatory purpose or intent against that group. *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977); *Washington v. Davis*, 426 U.S. 229 (1976); *People v. R.L.*, 158 Ill. 2d 432, 440 (1994).

Defendants concede that the marriage ban has a disparate impact on homosexuals who wish to marry someone of the same sex, than on heterosexuals, because homosexuals are more likely to want to marry someone of the same sex than heterosexuals. Defendants argue, however, that plaintiffs have failed to allege facts to support a finding that the intent or purpose of the marriage ban is to discriminate against gay men and lesbians. *R.L.*, 158 Ill. 2d at 440 ("The absence of proof of discriminatory intent forecloses any claim that the challenged [law] violates the equal protection clause.").

Plaintiffs respond that they need not allege a discriminatory purpose, because the marriage ban is not neutral on its face. Plaintiffs argue that banning marriage of same-sex couples affects their ability to act consistently with their sexual orientation, something heterosexual couples are allowed to do and homosexual couples are prohibited from doing because of the marriage ban. Plaintiffs argue that falling in love with, and the desire to marry, a person of the same sex are the very expressions of that sexual orientation, and that a law targeting conduct "closely associated" with sexual orientation is the same thing as a law that expressly classifies based on sexual orientation. Thus, the marriage ban, on its face, discriminates against homosexuals.

In support, plaintiffs cite *Lawrence v. Texas*, 539 U.S. 558, 575 (2003). In *Lawrence*, the Court addressed an equal protection challenge to a law that prohibited "deviate sexual intercourse" between two individuals of the same sex. In striking down that law, the Court stated: "When homosexual conduct is made criminal by the law of the State, that declaration in and of itself is an invitation to subject homosexual persons to discrimination." *Id.* at 575.

In a concurring opinion, Justice O'Connor opined that the law would not withstand equal protection:

> Those harmed by this law are people who have a same-sex sexual orientation and thus are more likely to engage in behavior prohibited by [the statute] . . . . While it is true that the law applies only to conduct, the conduct targeted by this law is conduct that is closely correlated with being homosexual. Under such

circumstances, Texas' sodomy law is targeted at more than conduct. It is instead directed toward gay persons as a class.

*Id.* at 581, 583; *see also Christian Legal Soc'y Chapter of the Univ. of Cal. v. Martinez,* 130 S. Ct. 2971, 2990 (2010) (citing *Lawrence,* 539 U.S. at 583 (O'Connor, concurring)); *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 270 (1993) ("A tax on wearing yarmulkes is a tax on Jews.").

This Court agrees with plaintiffs' analysis. The marriage ban, though it does not expressly name homosexuals as its target, prohibits conduct – marriage of two people of the same sex – which is so closely correlated with being homosexual that, as in *Lawrence,* the conclusion is inescapable that it is directed against homosexuals as a class. Accordingly, plaintiffs are not required to allege facts to support that the law has a discriminatory purpose or intent in order to proceed on their equal protection claim.

C.  Heightened Scrutiny and Intermediate Scrutiny

Plaintiffs argue that the allegations of fact in their complaints, when taken in the light most favorable to plaintiffs, as this Court is required at this point to do, support a finding that gay men and lesbians are a suspect or at least a quasi-suspect class. Plaintiffs argue that this Court must, therefore, apply heightened or intermediate scrutiny to the marriage ban.

**1.**

The issue of whether homosexuals are a suspect class is an issue of first impression in Illinois. No Illinois court has addressed the question, nor has the Supreme Court directly confronted the issue. In *Romer v. Evans,* 517 U.S. 629 (1996), the Supreme Court held that a state constitutional amendment, which prevented the legislature from passing antidiscrimination laws based on sexual orientation, did not pass the rational basis test. The Court, however, did not address the question of whether homosexuals would constitute a suspect or quasi-suspect class warranting a higher standard of scrutiny.

Plaintiffs argue that the facts alleged in the instant case, if proven, are sufficient for this Court to find that gays and lesbians are a suspect class. Plaintiffs, alternatively, argue that, if they do not qualify as members of a suspect class, they, at a minimum, belong to a quasi-suspect class. The United States Supreme Court has developed a four-factor test to analyze whether particular groups constitute a suspect or quasi-suspect class. The Court has found suspect classes to include those based on race, alienage, and national origin. *City of Cleburne.,* 473 U.S. at 440. The Court has found quasi-suspect classes to include those based on gender and illegitimacy. *Clark,* 486 U.S. at 461.

Plaintiffs argue that the allegations in the instant complaints are sufficient, when taken in the light most favorable to plaintiffs, under the applicable case law, to meet the four-factor test for finding that gay men and lesbians constitute a suspect or quasi-suspect class.

The four-factor analysis has been developed, over the years, as more groups have claimed that they are a suspect class and are entitled to heightened scrutiny of laws they claim discriminate against them. The U.S. Supreme Court has consistently used two of those factors: (1) whether the classified group has suffered a history of invidious discrimination, and (2) whether the classification reflects the ability of those who are part of the classified group to contribute to society. Two additional factors have also, at times, been considered: (3) whether the characteristic that defines the class is immutable or an integral part of a person's identity, and (4) whether the group is a minority or lacks sufficient power to protect itself in the political process. *See Varnum v. Brien*, 763 N.W.2d 862, 888 (Iowa 2009); *In re Marriage Cases*, 183 P.3d 384, 442-43 (Cal. 2008); *Kerrigan v. Comm'r of Pub. Health*, 957 A.2d 407, 426 (Conn. 2008); *Andersen v. King County*, 138 P.3d 963, 974 (Wash. 2006). Far greater weight has been placed by the Court on the first two factors, but no factor in and of itself has been dispositive. *See Kerrigan*, 957 A.2d at 426-27. The weight of these factors altogether determines whether the group receives suspect or quasi-suspect status. *See Windsor v. United States*, 699 F.3d 169, 185 (2d Cir. 2012) (affirmed on other grounds).

The parties cite cases from jurisdictions other than Illinois that have addressed the issue of whether homosexuals constitute a suspect or quasi-suspect class. None of these cases are precedential, but illustrate that various state and federal courts have taken different views on this issue.

In support of the argument that homosexuals are not a suspect or quasi-suspect class, defendants rely primarily on *Anderson v. King County*, 138 P.3d 963, 974 (Wash. 2006). In that case, the Washington Supreme Court considered a state law that prohibited marriage between two people of the same sex. In holding that the law did not violate equal protection, the court found that gays and lesbians did not constitute a suspect class because the plaintiffs had not made a showing that homosexuality was an immutable characteristic (the third factor). *Id.*; *see also Conaway v. Deane*, 932 A.2d 571, 614 (Md. 2010) (declining to find homosexuals are a suspect class because they "are not without political power" (the fourth factor) and "[i]n the absence of some generally accepted scientific conclusion identifying homosexuality as an immutable characteristic, and in light of the other indicia used by this Court and the Supreme Court in defining a suspect class, we decline on the record in the present case to recognize sexual orientation as an immutable trait" (the third factor)).

Defendants also cite cases from federal courts of appeals that have declined to recognize homosexuality as a suspect class. *See, e.g., Scarbrough v. Morgan County Bd. of Educ.*, 470 F.3d 250, 261 (6th Cir. 2006) (noting homosexuality has not been recognized as a suspect classification in the Sixth Circuit); *Citizens for Equal Prot. v. Bruning*, 455 F.3d 859, 866 (8th

9

Cir. 2006) (noting the Supreme Court has never held that sexual orientation is a suspect classification for equal protection purposes); *Lofton v. Secretary of the Dep't of Children & Family Services*, 358 F.3d 804, 818 (11th Cir. 2004); *Schroeder v. Hamilton School Dist.*, 282 F.3d 946, 950-51 (7th Cir. 2002); *Cook v. Gates*, 528 F.3d 42, 60-62 (1st Cir. 2008).

In contrast, plaintiffs cite three state supreme court decisions and one federal appellate decision holding that sexual orientation is a suspect or quasi-suspect class. *Varnum v. Brien*, 763 N.W.2d 862 (Iowa 2009) (at least a quasi-suspect class); *Kerrigan v. Comm'r of Pub. Health*, 957 A.2d 407 (Conn. 2008) (quasi-suspect class); *In re Marriage Cases*, 183 P.3d 384, 401 (Cal. 2008) (suspect class subject to strict scrutiny); *Windsor*, 699 F.3d at 182-85 (quasi-suspect class). In *Varnum, Kerrigan*, and *Windsor*, the courts relied on Supreme Court precedent and evaluated each of the four factors listed above. *Varnum*, 763 N.W.2d at 885-96; *Kerrigan*, 957 A.2d at 432-461; *Windsor*, 699 F.3d at 182-85. The *Varnum* and *Kerrigan* courts noted that the first two factors are the most important and have been consistently applied, while the second two factors are sometimes applied and given less weight.

Those courts found that gays and lesbians have: 1) been subject to a history of discrimination, 2) that the classification of homosexuality bears no relationship to the ability to contribute to society, 3) that sexual orientation is immutable (*Varnum* and *Kerrigan* acknowledged scientific debate in this area but emphasized that sexual orientation is nevertheless "central to personal identity"), and 4) that homosexuals are a minority that lack sufficient political strength, despite some recent gains made.

Plaintiffs also cite a handful of federal district court cases suggesting a heightened standard of scrutiny should be applied. *See, e.g., Perry v. Schwarzenegger*, 704 F. Supp. 2d 921, 997 (N.D. Cal. 2010) ("Although [the law prohibiting same-sex marriage] fails to possess even a rational basis, the evidence presented at trial shows that gays and lesbians are the type of minority strict scrutiny was designed to protect.")

Accordingly, a review of the cases cited by the parties does not preclude a consideration of evidence to be presented by plaintiffs' to prove that they are members of a suspect class.

**2.**

The Court now applies the four factors to plaintiffs' complaints to determine whether plaintiffs have alleged sufficient facts, when viewed in the light most favorable to them, to warrant an opportunity to prove that gay men and lesbians are a suspect class.

In the briefs and arguments before the Court, defendants have not contested that the first factor is not satisfied. The case law cited by the parties supports a history of invidious discrimination against gay men and lesbians in this country. In fact, much of this history of discrimination has been outlined in cases like *Lawrence v. Texas,* 539 U.S. 558, 567 (2003),

*United States v. Windsor,* 133 S. Ct. 2675 (2013), and *In re Marriage Cases,* 183 P.3d 384 (Cal. 2008).

As to the second factor, defendants have not disputed that many allegations in plaintiffs' complaints support the fact that sexual orientation has no bearing on the ability of members of the group to contribute to society. *See Frontiero v. Richardson,* 411 U.S. 677, 686 (1973); *City of Cleburne v. Cleburne Living Center* 473 U.S. 432 (1985). Defendants, however, argue that in one "critical" regard, same-sex couples differ from heterosexual couples, and that this difference does bear on their ability to contribute to society in the context of marriage. That difference is that same-sex couples cannot engage in sexual conduct that can result in the birth of a child, nor can they provide dual-gender parenting. *See Kerrigan,* 289 Conn. at 331 (Vertefeuille, J., dissenting) (quoting *Nordlinger v. Hahn,* 505 U.S. 1, 10 (1992)); *Hernandez v. Robles,* 805 N.Y.S.2d 354, 360 (N.Y. App. 2005).

Plaintiffs argue that this factor, in Illinois, is affected by the actions of the Illinois Legislature in passing the Civil Union Act, which protects same-sex couples and their children in their family relationships. *See* 750 ILCS 75/1 *et seq.* This legislation suggests that evidence of plaintiffs' contributions to the values of family might bear on whether the obvious difference between opposite and same-sex couples is "critical" to the issue of whether same-sex couples' contributions to society in the family context are any different than the contributions made by opposite-sex couples. Accordingly, this Court finds that the second factor is supported by sufficient allegations in the complaint to warrant an opportunity for plaintiffs to present evidence.

Defendants, next, challenge the sufficiency of the allegations to support the third factor, immutability. Defendants argue that sexual orientation has not been shown, by the facts alleged in the complaint, to be an immutable or an integral part of plaintiffs' identity. Immutability has been described as that which is the result of an "accident of birth." *In re Roger B.,* 84 Ill. 2d 323, 334 (1981) (quoting *Frontiero v. Richardson,* 411 U.S. 677, 684-86 (1973)). Further, defendants argue that plaintiffs' position that homosexuality is immutable has been negated by allegations in the complaint that some plaintiffs, who allege that they are gay, have been married in the past to someone of the opposite sex. Accordingly, defendants argue that the gay "characteristic" relied upon by plaintiffs is not an integral part of a person's identity.

The complaints allege that plaintiff-couples have been together ranging from six to forty-eight years. This Court must draw inferences from these allegations in plaintiffs' favor and infer that a prior heterosexual relationship does not mean that the particular plaintiff is not homosexual. Thus, plaintiffs have made sufficient allegations to warrant them the opportunity to prove that the sexual orientation of a person is an integral part of his or her identity, even though the person had been in a relationship with a person of the opposite sex.

The final factor is whether the minority group is without sufficient power to protect themselves against their discriminatory exclusion from marriage. It, like the third factor, is given less weight. *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 105 (1973). In *Kerrigan,* the court indicated that this test is disjunctive, that is, the test is whether the group is a minority *or* lacks political power. *Kerrigan,* 957 A.2d at 439. For example, discrimination against women receives heightened scrutiny, though they are not a minority, nor are certain groups who are classified based on national origin a minority. *Frontiero,* 411 U.S. at 686-87. Plaintiffs further point out that women had achieved more politically than gays and lesbians have today, when gender received heightened scrutiny from the Supreme Court. *See Windsor*, 699 F.3d at 184; *Kerrigan,* 957 A.2d at 461. Accordingly, as to this factor, plaintiffs' complaints support an opportunity to prove their claim.

This Court finds that, with respect to the factors necessary to support a finding that the plaintiffs satisfy a suspect or quasi-suspect class, the allegations in the complaints, taken in the light most favorable to the plaintiffs, support such a finding. Plaintiffs have alleged facts that, if proven, would warrant the application of either strict or intermediate scrutiny to the marriage ban.

If plaintiffs succeed in showing that strict scrutiny applies, defendants would have the burden to show that the marriage ban is narrowly tailored to serve a compelling government interest. If plaintiffs show that intermediate scrutiny applies, defendants bear the burden to show that the marriage ban is substantially related to an important government objective.

Accordingly, the Court denies defendants' motion to dismiss plaintiffs' claim that the marriage ban violates equal protection based on sexual orientation under Article I, § 2 of the Illinois Constitution.

## II

### Equal Protection - Sex

Defendants move to dismiss plaintiffs' claim that the marriage ban violates equal protection of the law on account of sex under Article I, § 18 of the Illinois Constitution. Article I, § 18 provides that "[t]he equal protection of the laws shall not be denied or abridged on account of sex by the State . . . ."

Whether the marriage ban violates equal protection under Article I, § 18 is an issue of first impression. Section 18 has no federal counterpart in the U.S. Constitution. The Illinois Supreme Court has held that §18 "was intended to supplement and expand the guaranties of the equal protection provision of the Bill of Rights." *People v. Ellis*, 57 Ill. 2d 127, 132 (1974). Therefore, in Illinois, a classification on account of sex is a "suspect classification" subject to strict judicial scrutiny. *Id.*

12

Defendants argue that the marriage ban does not discriminate on account of sex because the law is "facially neutral." Defendants argue that the ban does not single out men or women for disparate treatment, but rather prohibits men and women equally from marrying a person of the same sex. Since the marriage ban equally prohibits both sexes from the same conduct, defendants argue that the law does not create a discrete class subject to discriminatory treatment, and therefore it does not violate §18.

In support, defendants argue that several courts have considered whether the prohibition of same-sex marriage violates the 14th Amendment equal protection clause based on sex, and have rejected the argument. *See, e.g., Baker v. State*, 744 A.2d 864, 880 n. 13 (Vt. 1999) ("the marriage laws are facially neutral; they do not single out men or women as a class"); *In re Marriage Cases*, 183 P.3d 384, 436-40 (Cal. 2008); *Andersen v. King County*, 138 P.3d 963, 988 (Wash. 2006) (plurality); *Wilson v. Ake*, 354 F. Supp. 1298, 1307-08 (M.D. Fla. 2005). A few courts, however, have held that laws prohibiting same-sex marriage violate the federal 14th Amendment equal protection clause based on sex. *See Baehr v. Lewin*, 852 P.2d 44 (Haw. 1993) (plurality); *Perry v. Schwarzenegger*, 704 F. Supp. 2d 921, 996 (N.D. Cal. 2010). Of course, these cases were not decided considering the Illinois Constitution.

Plaintiffs argue that the marriage ban violates §18 equal protection because it is an impermissible gender-based classification. Plaintiffs argue that the sole basis for allowing or refusing a marriage certificate is whether the couple is opposite-sex or same-sex. Thus, plaintiffs argue the application of the marriage ban is determined solely by the sex of the participants, and prevents them from marrying their partners "on account of" their sex and their partners' sex.

In support, plaintiffs cite an Illinois Appellate Court case from the Second District, *Wheeler v. City of Rockford*, 69 Ill. App. 3d 220 (2d Dist. 1979). In that case, the court held that an ordinance regulating the massage industry violated Article I, §18. The challenged ordinance provided that it was "unlawful for any person holding a permit under this section to treat a person of the opposite sex." That law, on its face, applied equally to both men and women. *Id.* at 222. The court found that the ordinance violated § 18 because:

> The basis on which [the ordinance] operates is through a consideration of sex. Under the terms of the ordinance men are forbidden to massage women and women are forbidden to massage men. The sole consideration in determining whether a massage may be given is whether the person massaging is of a class of persons allowed to massage a specific customer; that is to say, the basis for allowing or refusing the right to give a massage is determined solely on whether the person massaging and the customer are of the same gender. We conclude that [the ordinance] creates a classification based on sex the same as it would create a classification based on race if it prohibited members of one race from massaging members of another race. *Id.*

13

The court cited *Loving v. Virginia*, 388 U.S. 1 (1967), where the Court acknowledged that the law banning interracial marriage applied to and "punished equally" both the black and white participants in the marriage, but found this fact insufficient to prevent the Court from considering whether the law violated the 14th Amendment's proscription against racial discrimination. *Id.* at 8-9; see also *McLaughlin v. Florida*, 379 U.S. 184 (1964) (rejecting an "equal application" argument and holding that that law, which provided penalties for interracial couples who cohabitated, was a race-based classification).

This Court finds that the application of Article I §18 to the marriage ban is not supported by the facts in the instant case. First, the marriage ban does not single out men or women for disparate treatment. As defendants point out, it does not implicate unequal treatment on account of the sex of the parties – men and women are equally prohibited from entering into a marriage with a same-sex partner. Second, unlike *Wheeler*, the law does not create a classification on account of sex. Rather, the ban creates a classification based on sexual orientation. This is a form of discrimination distinct from discrimination on account of sex, which is forbidden by Article I, § 18. *See In re Marriage Cases,* 43 Cal. 4th 757 (Cal. 2008).

Accordingly, this Court dismisses plaintiffs' claim that the marriage ban violates Article I, § 18 of the Illinois Constitution.

## III

### Due Process of Law

Defendants move to dismiss plaintiffs' claim that the marriage ban violates due process of law under Article I, § 2 of the Illinois Constitution. Article I, §2, protects a person's right to "life, liberty, or property," and marriage is a fundamental right protected by that clause. *Boynton v. Kusper*, 112 Ill. 2d 356, 368 (1986). Legislation that significantly interferes with the fundamental right to marry is subject to strict scrutiny. *Id.* at 368-69. The parties in the instant case dispute whether the right applies to same-sex couples who wish to marry. Defendants argue that same-sex couples do not have a fundamental right to marry. Plaintiffs argue that they do.

The United States Supreme Court set forth a two-part process for determining whether rights are fundamental. First, the asserted liberty interest must be carefully described. Second, the liberty interest must be "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997); *see also In re Parentage of John M.*, 212 Ill. 2d 253, 268 (2004).

As discussed in more detail above, Illinois has adopted a "limited lockstep" approach to Illinois constitutional analysis. Thus, Illinois courts use federal interpretations of constitutional provisions, unless the Illinois constitutional convention, debates or Illinois law suggests that state guarantees are any greater than the federal guarantees. This Court finds that under federal due

14

process analysis, plaintiffs have stated a claim. It is, therefore, not necessary for this Court, at this time, to determine whether the Illinois due process protections would provide any greater protection.

Defendants argue that the essence of the fundamental right to marry is defined as between opposite-sex persons. Since plaintiffs allege that they are same-sex couples, defendants argue that plaintiffs' complaints fail to state a cause of action for violation of due process. Defendants cite numerous cases addressing legislation which was found to unconstitutionally burden the fundamental right to marry, and point out that those cases all involved opposite-sex couples. Thus, defendants assert that only the marriages of opposite-sex couples are clearly "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed."

Some cases, cited by defendants, were decided in the late 19th century and early 20th century, and involved opposite-sex couples. *See Skinner v. Oklahoma*, 316 U.S. 535, 541 (1942); *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923); *Maynard v. Hill*, 125 U.S. 190, 211 (1888). Defendants also cite cases, decided later in the 20th century, and point out that those, too, involved opposite-sex couples. *See, e.g., Loving v. Virginia*, 388 U.S. 1 (1967); *Zablocki v. Redhail*, 434 U.S. 374 (1978); *Turner v. Safley*, 482 U.S. 78 (1987). Of course, the courts in those cases were not presented with circumstances involving same-sex couples.

Cases involving same-sex couples, who claim the fundamental right to marry, have only arisen recently. Courts have reached opposite determinations of whether the right to marry also applies to same-sex couples. *Finding the right applies to same-sex couples: see, e.g., In re Marriage Cases,* 183 P.3d 384, 421 (Cal. 2008) (constitutional right to marry extends to same-sex couples); *Goodridge v. Dept. of Public Health*, 798 N.E.2d 941, 958 (Mass. 2008) (stating that "the right to marry means little if it does not include the right to marry the person of one's choice, subject to appropriate government restrictions in the interests of public health, safety, and welfare"). *Finding the right does not apply to same-sex couples: see, e.g., Lewis v. Harris*, 908 A.2d 196, 211 (N.J. 2006) ("we cannot find that a right to same-sex marriage is so deeply rooted in the traditions, history, and conscience of the people of this State . . ."); *Conaway v. Deane*, 932 A.2d 571, 617-24 (Md. 2007) (no deeply-rooted right to same-sex marriage); *Standhardt v. Superior Ct.*, 77 P.3d 451, 458 (Ariz. Ct. App. 2003) (same).

Plaintiffs argue that, under Illinois case law considering the fundamental right to marry, the Illinois Supreme Court has used the concept of freedom of choice in protecting the right. Plaintiffs cite *Boynton v. Kusper*, 112 Ill. 2d 356, 368 (1986). In that case, the court considered a law that added certain fees to the cost of obtaining a marriage license. The court first applied the rational basis test, and found that the legislation did not satisfy it. The court then applied strict scrutiny and found that the additional fees unconstitutionally burdened the exercise of the "freedom of choice" to marry.

15

The court stated:

> [W]e are dealing here with a fundamental right, and long before political considerations limit the amount of this tax some people will be forced by the tax imposed to alter their marriage plans and will have "suffer[ed] a serious intrusion into their freedom of choice in an area in which we have held such freedom to be fundamental." (*Zablocki v. Redhail* (1978), 434 U.S. 374, 387).

Though *Boynton* did not involve a discussion of same-sex couples, the Illinois Supreme Court appeared to embrace the concept of "freedom of choice" as a part of the consideration of whether there was an unconstitutional intrusion into the fundamental right to marry. Plaintiffs argue that, though the case was decided in the context of opposite-sex couples marrying, the use of "choice," as a part of the description of the fundamental right to marry, is applicable here.

Plaintiffs, further, cite United States Supreme Court decisions which overturned efforts to burden the choice of whom to marry. The United States Supreme Court overturned the effort to burden the exercise of choice by excluding a marriage between those of different races. *Loving v. Virginia,* 87 S.Ct. 1817, 1824 (1967). The Court has also struck down laws prohibiting homosexual conduct, on the basis that the constitution protects the liberty interest to choose one's own personal relationships. *Lawrence v. Texas,* 539 U.S. 558, 567 (2003) (overruling *Bowers v. Hardwick*, 478 U.S. 186 (1986). The Court stated:

> To say that the issue in *Bowers* was simply the right to engage in certain sexual conduct demeans the claim the individual put forward, just as it would demean a married couple were it to be said marriage is simply about the right to have sexual intercourse. The laws involved in *Bowers* and here are, to be sure, statutes that purport to do no more than prohibit a particular sexual act. Their penalties and purposes, though, have more far-reaching consequences, touching upon the most private human conduct, sexual behavior, and in the most private of places, the home. The statutes do seek to control a personal relationship that, whether or not entitled to formal recognition in the law, is within the liberty of persons to choose without being punished as criminals.

The United States Supreme Court, in other cases, has emphasized this freedom of choice in personal decisions, which is inherent in the "zone of privacy" protected by due process. *See Griswold v. Connecticut*, 381 U.S. 479, 486 (1965) (the "[marriage] relationship lies within the zone of privacy created by several fundamental constitutional guarantees"); *Carey v. Population Services International*, 431 U.S. 678, 684-85 (1977) ("This right of personal privacy includes 'the interest in independence in making certain kinds of important decisions,'" including those related to marriage, procreation, and contraception.); *see also People v. R.G.*, 131 Ill. 2d 328, 343 ("[A]n individual's freedom

16

of choice concerning procreation, marriage and family life is a fundamental right.") (citations omitted).

The present case allows the Illinois courts to consider, for the first time, whether the concept of choice as an aspect of the fundamental right to marry, as indicated in *Boynton*, might apply to same-sex couples seeking to marry. The nature of the fundamental right to marry "deeply rooted in this Nation's history and tradition" has only recently been subjected to same-sex considerations. This Court finds that plaintiffs have presented sufficient facts to warrant further consideration of the question of whether their fundamental right to marry in Illinois includes the right to choose to marry a partner of the same sex.

Accordingly, this Court denies defendants' motion to dismiss plaintiffs' claim that the marriage ban violates due process of law under Article I, § 2 of the Illinois Constitution.

## IV

### Right of Privacy

Defendants move to dismiss plaintiffs' claim that the marriage ban violates the right of privacy guaranteed under Article I, § 6 of the Illinois Constitution. Article I, § 6 provides:

SEARCHES, SEIZURES, PRIVACY AND INTERCEPTIONS

The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means. No warrant shall issue without probable cause, supported by affidavit particularly describing the place to be searched and the persons or things to be seized.

Defendants argue that the right of privacy in Article I, §6 has only been applied by Illinois courts in cases regarding informational privacy and document privacy, and that, since the allegations in the complaints involved here do not raise those kinds of facts, this claim should be dismissed. In support, defendants cite Illinois cases which have applied the privacy language in § 6 to informational privacy and privacy with respect to gathering physical evidence. *See In re Lakisha M.*, 227 Ill. 2d 259, 279 (2008); *People v. Caballes,* 221 Ill. 2d at 327; *Kunkel v. Walton,* 179 Ill. 2d 519, 537-40 (1997)

Plaintiffs argue that the right of privacy under § 6 does protect their decisions to marry. Plaintiffs cite two cases to support their argument that the privacy clause was intended to apply beyond informational privacy. *Family Life League v. Dept. of Pub. Aid*, 112 Ill. 2d 449, 454 (1986); *In re Baby Doe*, 260 Ill. App. 3d. 392, 331 (1st Dist. 1994). In *Family Life*, the Illinois Supreme Court stated: "[the] right of privacy guaranteed by the penumbra of the Bill of Rights of the United States Constitution was also secured by the drafters of the 1970 Constitution of the State of Illinois," citing Article 1, §§ 6, 12. *Id.* The court in *Family Life* held that such right of

17

privacy extended to the right to choose whether to terminate a pregnancy. The *Baby Doe* case relied on this statement for a similar principle.

After the parties submitted the briefing on this motion, the Illinois Supreme Court decided *Hope Clinic for Women v. Flores*, 2013 IL 112673. In that case, the court discussed the right of privacy under § 6. The court stated that § 6 is often referred to as the "search and seizure provision." *Id.* ¶ 41. The court reviewed the committee reports reflecting discussion of the reasons why the constitutional delegates added the privacy language in § 6. Specifically, the delegates expressed concern about freedom from governmental interference into private affairs, particularly in light of new, sophisticated technology. *Id.* ¶¶ 43, 44. The court then declined to extend § 6 to certain other areas of "privacy," stating that "it is clear that [§ 6] was not added to our constitution to address abortion rights," and then proceeded to analyze the arguments about the right to abortion solely under the privacy guaranteed by the due process clause in Article I, § 2. *Id.* ¶¶ 45, 46.

The court in *Hope Clinic* criticized any interpretation of its decision in *Family Life*, herein cited by plaintiffs, to support an argument that the court had held that the right of privacy under § 6 protected the right to abortion. The court held that, to the extent the *Family Life* case found that the right to an abortion fell under the right of privacy in § 6, that finding was dicta and not binding precedent. *Id.* ¶¶ 36-40. In another case, the Illinois Supreme Court declined to extend § 6 in another situation involving privacy rights to make personal decisions. *In re Estate of Longeway*, 133 Ill. 2d 33 (1989) (declining to expand "the privacy provision of our State constitution to embrace" the right to refuse medical treatment).

This Court, based on the above cases, finds that the Illinois Supreme Court has not extended the right of privacy to personal decisions. Applying this precedent to the present case, this Court finds no legal support to extend the § 6 right of privacy to personal decisions about whom to marry.

Accordingly, this Court dismisses plaintiffs' claim that the marriage ban violates the right of privacy under Article I, § 6 of the Illinois Constitution.

## V

### Special Legislation

Defendants move to dismiss plaintiffs' claim that the marriage ban violates the special legislation clause under Article IV, § 13 of the Illinois Constitution. Article IV, § 13 provides that "the General Assembly shall pass no special or local law when a general law is or can be made applicable."

The special legislation clause has been interpreted to prohibit the legislature from "conferring a special benefit or exclusive privilege on a person or a group of persons to the

18

exclusion of others similarly situated." *Best v. Taylor Mach. Works,* 179 Ill. 2d 367, 393 (1997). The issue for this Court is whether the challenged classification discriminates "in favor of" a select group, and if so, whether the classification is arbitrary. *Allen v. Woodfield Chevrolet, Inc.,* 208 Ill. 2d 12, 22 (2003).

Defendants argue that § 13 does not apply here because opposite-sex couples and same-sex couples are not similarly situated. Defendants further argue that, even if the Court does consider plaintiffs' claim, the constitutional analysis regarding violation of § 13 is essentially an inversion of the equal protection analysis under Article I, § 2, and that the law must only pass the rational basis test. *Citing Best,* 179 Ill. 2d at 393. Defendants argue that the rational basis test is satisfied for the reasons argued in Section I, above, i.e., to protect traditional marriage, the state's interest in procreation within marriage, and the encouragement of biological families with dual-gender parents.

Plaintiff's argument that the marriage ban violates §13 is presented in connection with its arguments that there is no rational basis supporting the constitutionality of the marriage ban under equal protection in Article I, §2. Plaintiffs argue that no rational basis supports the marriage ban.

Neither party, however, argues the threshold question of how the marriage ban confers a "special benefit" that was passed "in favor of" a select group. Nor do the allegations in plaintiffs' complaint support such a finding. Rather, plaintiffs' complaints allege that the marriage ban disfavors them as same-sex couples, and has subjected them to various kinds of unfavorable treatment. The complaint does not allege facts to support a finding that the marriage ban was passed to confer any benefit on a select group.

Accordingly, this Court dismisses plaintiffs' claim that the marriage ban violates Article IV, §13, without prejudice.

## Conclusion

Based on the foregoing, this Court finds against intervenor-defendants on their motion to dismiss plaintiffs' claims of violation of Article I, § 2 equal protection and Article I, § 2 due process of law of the Illinois Constitution.

The Court finds in favor of intervenor-defendants and dismisses plaintiffs' claims of violation of Article I, § 18 equal protection on account of sex, Article I, § 6 right to privacy, and Article IV, § 13 special legislation of the Illinois Constitution.

Entered: _____

**ENTERED**
JUDGE SOPHIA H. HALL-0162

SEP 2 7 2013

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Date: _____