IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEB WHITEWOOD, *et al.,* | : | 1:13-cv-1861 |
| | : | |
| Plaintiffs, | : | |
| | : | Hon. John E. Jones III |
| v. | : | |
| | : | |
| MICHAEL WOLF, *in his official capacity as Secretary, Pennsylvania Department of Health*, *et al.*, | : | |
| | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM AND ORDER

### November 15, 2013

Pending before the Court are the following:  (1) a Motion to Dismiss filed by Donald Petrille in his official capacity as Register of Wills and Clerk of Orphans' Court of Bucks County (Doc. 25), and (2) a Motion to Dismiss filed by Michael Wolf in his official capacity as Secretary of the Pennsylvania Department of Health, and joined by Dan Meuser, as the Pennsylvania Secretary of Revenue (Doc. 27) (collectively "the Motions").  The Motions have been fully briefed by the parties and are therefore ripe for our review.  For the reasons that follow, the Motions shall be denied in their entirety.[1]

---

[1] During the briefing period, Plaintiffs voluntarily dismissed the following defendants without prejudice, pursuant to civil procedural rule 41(a)(1)(A): Mary Jo Poknis, in her official capacity as Register of Wills of Washington County; Kathleen Kane, in her official capacity as Attorney General of Pennsylvania; and Thomas W. Corbett, in his official capacity as Governor

I.     **BACKGROUND**

On July 9, 2013, Plaintiffs Fredia Hurdle, Lynn Hurdle, Edwin Hill, David

Palmer, Heather Poehler, Kath Poehler, Fernando Chang-Muy, Len Rieser, Dawn

Plummer, Diana Polson, Angela Gillem, Gail Lloyd, Helena Miller, Dara

Raspberry, Ron Gebhardtsbauer, Greg Wright, Marla Cattermole, Julia Lobur,

Maureen Hennessey, Deb Whitewood and Susan Whitewood, and minor children

A.W. and K.W., filed a Complaint seeking to invalidate as unconstitutional

provisions of Pennsylvania's Marriage Law that (a) define a marriage as the union

of "one man and one woman," 23 Pa. C. S. § 1102, and (b) declare as void in

Pennsylvania same-sex marriages legally entered into in other jurisdictions, 23 Pa.

C. S. § 1704.  Thereafter, on November 7, 2013, Plaintiffs filed an Amended

Complaint that named additional Plaintiffs whose claims are the same or

substantially similar to those of the original Plaintiffs.  (Doc. 64).  As noted, the

caption as set forth on the Amended Complaint also reflects the voluntary

dismissal of several Defendants and the addition of Secretary Meuser.

In their claim for relief, Plaintiffs seek:  (1) a declaratory judgment that 23

Pa. C. S. §§ 1102 and 1704 violate the Due Process Clause of the Fourteenth

Amendment to the United States Constitution; (2) a declaratory judgment that 23

of Pennsylvania.  (Docs. 57-59).  The caption has been adjusted accordingly.

Pa. C. S. §§ 1102 and 1704 violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; (3) a permanent injunction enjoining Defendants from denying Plaintiffs and other same-sex couples the right to marry in the Commonwealth of Pennsylvania, and directing Defendants to recognize marriages validly entered into by Plaintiffs and other same-sex couples outside of the Commonwealth; (4) costs of suit, including reasonable attorneys' fees under 42 U.S.C. § 1988; and (5) all other relief that the Court deems just and warranted.

As noted above, Defendants have moved to dismiss this action, arguing that the Court lacks subject matter jurisdiction over this case. *See* FED. R. CIV. P. 12(b)(1). Defendant Petrille additionally argues that the matter must be dismissed for failure to join indispensable parties pursuant to civil procedural rules 12(b)(7) and 19. We shall address each of these arguments *seriatim*.[2]

## II.    DISCUSSION

---

[2] Defendant Petrille also advances arguments regarding the level of scrutiny applicable to Plaintiffs' equal protection claim and contends that, under the Due Process Clause of the United States Constitution, the right to marry a person of the same sex is not a fundamental right. Insofar as Defendant Petrille seeks to reach the constitutional issues which lie at the heart of this matter, we find that such efforts are entirely premature. In the Court's view, it would be inappropriate to decide these significant legal issues in a vacuum, without the benefit of discovery to fully develop the claims and meaningfully inform the Court's determination. Such arguments, should Defendants elect to raise them, are appropriately reserved for the summary judgment phase of this case.

## A.    Subject Matter Jurisdiction

Defendants' predominant argument is that pursuant to the United States Supreme Court's holding in *Baker v. Nelson,* 409 U.S. 810 (1972), this action must be dismissed due to a lack of federal subject matter jurisdiction.[3]  We disagree that the holding of *Baker* precludes this action.

The Supreme Court's single line opinion in *Baker* reads as follows: "The appeal is dismissed for want of a substantial federal question."  *Id.  Baker* arrived before the Supreme Court on appeal from the Supreme Court of Minnesota, which had held that a state law banning same-sex marriages did not violate the Due Process and Equal Protection Clauses of the United States Constitution.  While we do not disagree that *Baker* is considered precedential, *see Hicks v. Miranda*, 422 U.S. 332, 344 (1975) (dismissal for lack of a substantial federal question is a decision on the merits), we ultimately do not find it controlling due to the significant doctrinal developments in the four decades that have elapsed since it was announced by the Supreme Court.  *See id.* at 344 ("[I]f the Court has branded a question as unsubstantial, it remains so except when doctrinal developments indicate otherwise[.]").

---

[3] Pursuant to rule of procedure 12(b)(1), a claim may be dismissed for lack of subject matter jurisdiction "when the Court lacks the statutory or constitutional power to adjudicate the case."  *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)(footnote and internal quotation marks omitted).

The jurisprudence of equal protection and substantive due process has undergone what can only be characterized as a sea change since 1972.  The Supreme Court has decided several cases since *Baker* which demonstrate that it no longer views constitutional challenges based on sex or sexual identity classifications as unsubstantial.  For example, when *Baker* was decided, "'intermediate scrutiny' was not yet in the Court's vernacular" and "classifications based on illegitimacy and sex were not yet deemed quasi-suspect." *Windsor v. United States*, 699 F.3d 169, 179 (2d Cir. 2012) (citing *Craig v. Boren*, 429 U.S. 190, 218 (1976) (Rehnquist, J., dissenting) (coining "intermediate level scrutiny"); *Lalli v. Lalli*, 439 U.S. 259, 264-65 (1978) (applying intermediate scrutiny to a classification based on illegitimacy, and describing how heightened scrutiny had been used for such classifications since 1976); *Frontiero v. Richardson*, 411 U.S. 677, 682 (1973) (plurality) (identifying sex as a suspect class)).  The Supreme Court had also not yet ruled that "a classification [based on sexuality] undertaken for its own sake" lacked a rational basis. *Romer v. Evans*, 517 U.S. 620, 635 (1996).  Further, in 1972, governments could lawfully "demean [homosexual persons'] existence or control their destiny by making their private sexual conduct a crime." *Lawrence v. Texas*, 539 U.S. 558, 578 (2003).  Finally, in June of this year, the Supreme Court held that a federal statute defining marriage as only

between heterosexual couples violated the equal protection and due process rights of same-sex couples who had married in states where same-sex marriage is legally recognized. *See United States v. Windsor*, 570 U.S. – (2013).

The foregoing demonstrates significant doctrinal developments in the areas of due process and equal protection that eviscerate any utility or controlling effect that Defendants posit *Baker v. Nelson* may have relative to the case at bar. Accordingly, we conclude that this Court has subject matter jurisdiction over Plaintiffs' challenge to Pennsylvania's marriage laws.

### B.   Joinder of Parties

As to joinder,  Defendant Petrille maintains that complete relief cannot be granted unless all Clerks of the Orphans' Court are joined in this action.  He centrally contends that only he would be bound by a judgment in Plaintiffs' favor, and that every other Clerk would remain obligated to enforce the Commonwealth's Marriage Law, potentially leading to multiple actions on the same issue.  He thus concludes that, absent joinder, "the [C]ourt would be obliged to grant partial or 'hollow' relief rather than complete relief to the parties before the [C]ourt." *General Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 315 (3d Cir. 2007) (quoting Advisory Comm. Notes, FED. R. CIV. P. 19) (internal quotation marks omitted). *See generally* 4 MOORE'S FEDERAL PRACTICE § 19.03 (Matthew Bender

3d. ed.) (admonishing that part of Rule 19's aim is to protect "society's interest in the comprehensive resolution of disputes and avoidance of duplicative litigation" and ensure "that the courts do not enter partial or 'hollow' judgments").

Relevantly, a person is a required party under Rule 19 if the Court cannot afford complete relief among existing parties without that person. *See* FED. R. CIV. P. 19(a)(1)(A). Completeness of relief is considered with respect to the persons who are already parties – "not as between a party and the absent person whose joinder is sought." *Angst v. Royal Maccabees Life Ins. Co.*, 77 F.3d 701, 705 (3d Cir. 1996) (citation omitted). Only after determining that a party is required does a Court consider – if it is not feasible to join the party – whether a case should proceed among the existing parties or be dismissed. *See* FED. R. CIV. P. 19(b).

We find that complete relief may be accorded to the extant parties without joinder of all of the Clerks of the Orphans' Court. In terms of relief, Plaintiffs pertinently seek a declaratory judgment that the state laws prohibiting same-sex marriage are unconstitutional, as well as a permanent injunction enjoining the named defendants from denying same-sex couples the right to marry. (Doc. 64, pp. 56-57). In this Court's view, in order to be afforded the entirety of the relief they seek, Plaintiffs arguably need not join any – much less all – of the Clerks of

Orphans' Court as defendants to this suit.[4]  These Clerks are county officers, whose

positions are "purely ministerial," *Pa. Dept. of Health v. Hanes*, No. 379 M.D.

2013, 2013 WL 5469566, at *7 (Pa. Cmwlth. Sept. 12, 2013) (quoting *In re*

*Administrative Order No. 1-MD-2003*, 936 A.2d 1, 9 (Pa. 2007)), meaning that

they must perform their duties "in a prescribed manner in obedience to the mandate

of legal authority and without regard to [their] own judgment or opinion

concerning the propriety or impropriety of the act to be performed." *Council of the*

*City of Phila. v. Street*, 856 A.2d 893, 896 (Pa. Cmwlth. 2004) (citation and

internal quotation marks omitted).  Hence, if this Court renders a judgment in

Plaintiffs' favor, all Clerks of the Orphans' Court would be subject to the legal

mandate.  Accordingly, we find that the present parties to the action can fully

litigate the legal issues and be afforded meaningful relief as contemplated by Rule

19.[5]

---

[4]  Presumably, Mr. Petrille was included as a defendant because Plaintiffs Angela Gillem and Gail Lloyd, and Sandy Ferlanie and Christine Donato, unsuccessfully applied for marriage licenses in Bucks County, where he is the Register of Wills and the Clerk of Orphans' Court. (Doc. 64, ¶¶ 65, 88).

[5]  Although Defendant Petrille's joinder argument is grounded in Rule 19(a)(1)(A) (completeness of relief), in the interest of thoroughness we note that Rule 19 contains two additional bases for joinder of required parties, namely:  where the absentee claims an interest related to the subject of the case and is so situated that resolving the case without the absentee may, practically speaking, "impair or impede the person's ability to protect the interest"; and where the absentee claims an interest related to the subject of the case and is so situated that resolving the case without the absentee may "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." *See*

## III.   CONCLUSION

In accordance with the foregoing reasoning, the Motions shall be denied in their entirety.

## NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.   The Motion to Dismiss filed by Defendants Wolf and Meuser (Doc. 27) is **DENIED**.

2.   Defendant Petrille's Motion to Dismiss (Doc. 25) is also **DENIED**.

---

FED. R. CIV. P. 19(a)(1)(B).  Thus, notably, a predicate for required joinder on these grounds is the absentee's interest in the subject of the action and the risk that nonjoinder could result in certain delineated harms.

Defendant Petrille does not argue, and we do not find, that the absent Clerks of Orphans' Court possess a legally protected interest relative to whether marriage licenses are issued to same-sex couples.  *See id.*; *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 230 (3d Cir. 2005) (stating that a required party must possess a "legally protected interest" in the action); *cf. Husbands v. Pennsylvania*, 359 F. Supp. 925, 937 (E.D. Pa. 1973) (finding that absentee school districts were not required parties to an action challenging a district reorganization plan because they did not have the requisite interest in the matter; explaining that, although absentee districts "may be affected by the results of this action," they do not "necessarily have rights cognizable under [Rule 19(a)(1)(B)]," and noting that the school districts "played no direct role" in the formation of district boundaries and have no power to alter them).  Indeed, as noted, the authority of the Clerks of Orphans' Court to issue marriage licenses is wholly ministerial, subject to statutory (or, in this case, possibly judicial) directives.  *See Hanes*, No. 379 M.D. 2013, 2013 WL 5469566, at *8.

3.      The Court will hold a second case management conference, as

scheduled, on Friday, November 22, 2013, at 10 a.m. in Courtroom 2,

at which time all counsel shall be fully prepared to engage in a

discourse regarding the commencement date of a bench trial.


s/ John E. Jones III
John E. Jones III
United States District Judge