IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Deb Whitewood and Susan Whitewood, Fredia Hurdle and Lynn Hurdle, Edwin Hill and David Palmer, Heather Poehler and Kath Poehler, Fernando Chang-Muy and Len Rieser, Dawn Plummer and Diana Polson, Angela Gillem and Gail Lloyd, Helena Miller and Dara Raspberry, Ron Gebhardtsbauer and Greg Wright, Marla Cattermole and Julia Lobur, Maureen Hennessey, and A.W. and K.W., Minor Children, By and Through Their Parents and Next Friends, Deb Whitewood and Susan Whitewood, plaintiffs

v.

Michael Wolf, in his official capacity as Secretary of the Pennsylvania Department of Health, Dan Meuser, Donald Petrille, Jr., in his official capacity as Register of Wills and Clerk of Orphans' Court of Bucks County defendants

Civil Action

No. 13-1861-JEJ

Motion Served Pending Approval of ECF Registration




MOTION FOR LEAVE TO INTERVENE

James D. Schneller pro se
Philadelphia Metro Task Force
430 East Lancaster Avenue #E 25
Radnor, PA 19087 ballotnow@aol.com
610-688-9471 fax 610-688-9471

James D. Schneller, representing himself, and Philadelphia Metro Task Force, in all ways possible, move the Court, pursuant to Fed.Rules Civ.Proc.Rule 24(a)(2), for leave to intervene in this case, stating as follows:

1. Petitioner James D. Schneller, is a resident of 430 East Lancaster Avenue #E25, Saint Davids, Delaware County.

2. Petitioner Philadelphia Metro Task Force ("association") is a community organization formed to support and encourage upholding of family values and morality in government, in the southeastern Pennsylvania region. James Schneller is a co-founder and principal of the association.

3. Philadelphia Metro Task Force and James D. Schneller ("Citizens") are so situated that disposition of this case stands to impair and impede Citizens' ability to protect their interests, and to enjoy constitutionally guaranteed rights.

4. Citizens' evidence and arguments would balance the record and argument in the case, which is extremely likely to be characterized by a short-term momentum in many federal courts towards a wholesale adopting of the same-sex doctrine, a momentum characterized by a voluminous effort, often unfounded, on "issues" including "marriage equality" and "diversity," which has been infused into daily life in so many ways that few citizens nor firms can be expected to come to the Court with a clear perception of the matter, and the resolve to submit it.

5. The overt utilization by homosexual activists, of a concentrated effort in the judicial branch, causes losses of rights amid circumstances of derogation of intended balance of power, and perception of said derogation and unwholesome results, by the public and Citizens.

6. The ability to submit full evidence in this arena is deeply affected at all levels by pressures, arbitrary limits set by the media, subtle threats and obstructions, and intimidations, and threat thereof, both implied, and often, real. Citizens claim an ability to enhance the factual basis, which in all likelihood is not the case with counsel for defendants.

7. Citizens recently participated heavily in an effort, now intended to be put forth by plaintiffs as supportive of the plaintiffs' objectives, to empanel municipal human relations commissions equipped with a new protected class of the "sexual orientation"

present objections. The existing laws under challenge were lawfully promulgated by the legislature and have existed for years, and the Assembly has for the duration been available for, and has even passed, legislation amending to comparable statutes and/or policies.

11. This motion for intervention is timely, whether running from the time Citizens knew of their interests, or running from Citizens' awareness of limitations to a balanced record and limitations to furtherance of specific issues and arguments favorable to the rights that Citizens must endeavor to preserve.

12. Citizens have become increasingly aware that their interests would no longer be fully protected by existing parties to the suit, that their experience and factual claims would likely be embellishing to the record in this case, and that recent decisions, Commonwealth v. Hanes notwithstanding, indicate a trend to omit or un-prioritize health-, moral-, and traditional family-related considerations in proceedings of this nature. This as an example, occurred in the Ninth Circuit case in California which resulted in the declaration that Proposition 8, a definition of marriage passed by popular vote, was unconstitutional, an appeal from which to the United States Supreme Court was recently dismissed on narrow, jurisdictional grounds.

13. Prejudice has not occurred to any party from any perceived delay in filing this motion.

14. Citizens feared prejudice that might occur from Citizens' entry into the case, to parties during the motion to dismiss stage, that has recently concluded, and this included prejudice to Citizens as well. Moreso, Citizens had insufficient funds to seek attorney representation, and believed that entry of a pro se party or parties into the record could jeopardize or alter what was a significantly rapid phase of pre-trial motions to dismiss. This prejudice conceivably affected defendants as well, especially because citizens' stance is more in line with that of defendants as opposed to plaintiffs.

15. Citizens, in what was a researched decision to await the outcome of said phase, prior to requesting leave to intervene, also acted in the interests of resources and complexity, because the case might have been narrowed, expanded, or ended, during that phase.

16. Discovery has not proceeded to any appreciable extent.

17. The alacrity of the proceedings in this case is unexplained and conceivably excessive.

category, in Citizen's region, and thus can assist in a balanced factual presentation of such claims.

8. Citizens, as a general but worthy indicator of their legal stance in this case, were, and remain, compelled to oppose the ordinances that established said empaneling, for reasons including derogation of constitutional rights, impossibility of execution, claims pursuant to principles of substantive due process, claims for violation of the Religious Freedom Protection Act, the Human Relations Act, and additional laws, per se claims of "preemption" by way of certain statutes, improper special legislation, exclusionary legislation, discriminatory legislation, legislation which frustrates legitimate state objectives, undue and unreasonable burden on businesses, undue and unreasonable restrictions on property, irrationally depriving of property interest, divisive, violating constitutional rights, confiscatory of status quo rights and privileges, fatally prohibitive of otherwise acceptable activity, expressly mismatching objectives and existing law, official oppression, conflicting and not sufficiently related to the police power interest that the ordinances purport to serve, totally excluding of otherwise legitimate activity, failing of sufficient relationship to public health, safety, morals, welfare, general welfare, health, cleanliness, environment, convenience, comfort, proper management, care and control of municipalities, nor the maintenance of peace, good government, safety and welfare of trade, commerce and manufactures; enabling of reverse viewpoint discrimination, enabling of reverse first amendment retaliation; infringing on fundamental liberty and property interests, violating the right to equal protection under the Fourteenth Amendment; provoking of selective enforcement of local laws and of differential treatment, furthering of an insufficiently legitimate state interest, abridging of fundamental rights without reasonably establishing a conflicting fundamental right.

9. Citizens have also filed and pursued complaints with the Pennsylvania Human Relations Commission ("Commission"), in furtherance of stopping infringement on theirs and certain classes of citizens' rights by the acts of homosexual activists and their attempts and successes at fomenting promulgation of said ordinances. These efforts have brought additional volumes of knowledge on the issues into Citizens possession.

10. The nature of the activism, presently attempting to make stark changes in the landscape through this case, has had no real proceeding with availability to Citizens and other Pennsylvanians seeking to participate, nor availability of rights and privileges of full parties that would have existed, nor any real opportunity to adequately prepare and

21. Citizens' experience, fact, and legal positions, would in addition to the other aspects herein evident, shed light on the claim of existence of a class based on sexual orientation.

22. Citizens claim practical impairment of their ability to protect interests, in light of imminent preclusive effects of any decision favorable to plaintiffs, including discrimination on basis of religious beliefs, on basis of moral beliefs, and on basis of ancestry, and in a related manner, age.

23. Citizens will realistically and in essence be bound by disposition of this case and by resulting promulgation and litigation likely to result at many levels, certain to affect liberty, equal treatment, and free speech interests.

24. As are agency' legislative, and executive decisions in this regard, even if the legal effect were minimal or agreeable, any action of the Court upholding the claims of plaintiffs would constitute a figurehead, headline, and at the same time, unlegislated, momentum or quasi-doctrine intended for Pennsylvanians and the nation and world that a) our Commonwealth government furthers sexual same-partner and other orientations as favored or nearly ensconced in official policy despite lack of referendum, and b) our Commonwealth has "approved" "gay marriage." These would cause a great and measurable infliction upon rights of Citizens, and all citizens so affected, including rights continually stated in our laws regarding the police power of elected bodies, and pursuant to the oaths sworn by them.

25. Such government approval of any societal wave or behavior is not the intent of either constitution, and news travelled well, as did public opinion and the manipulation of it, at the time of writing of the constitutions or their original form, so that the advent of mass media, causing an exponentially more abundant ability to manipulate, does not differ much from a simpler version known to the founders and authors, including the outright dangers of same and the risk of obfuscation, demagoguery, or tyrrany, which fomented the inclusion of checks and balances. The lack of the intent of the documents remain the same.

26. Representatives for the Commonwealth do not enjoy the presumption of adequate representation at a level equal to that which might have been enjoyed by the Commonwealth Office of General counsel, even though the latter is claimed to hold greater expertise. Attorneys for the Commonwealth are a layer removed and unproven in this less-travelled issue, and a shift in policy nationwide, in general, shows a leaning to the center whether in the interests of legal efficiency, or aquiesence, especially in some

18. Other reasons for citizens' decision relate to the developments in the law and factual basis. Citizens were, of late, increasingly warranted in filing the motion to intervene, realizing an urgency and realizing a prevalent positioning towards center by parties supporting traditional values, by way of a series of events that appear to set a tone for further erosion of family-value tenets, including the failure of the City of Philadelphia to conform to the 2012 Third Circuit decision affirming an order deciding against city changes in policy regarding Boy Scout property rented from the city, and a resulting eviction; the decision of the Board of the Boy Scouts of America to amend the bylaws of the organization to allow membership to self-avowed homosexuals; the United States Supreme Court decisions regarding constitutionality of California's Prop 8 statute, and the withdrawal of the appeal taken to the Third Circuit in the Tobits v. Cozen O'Connor case, District Court E.D.Pa. No. 11-cv-00045, in which spousal benefits upon death of an employee were found owed to a partner in a "civil union," rather than the heirs. These and similar capitulations to the diligence of the "sexual orientation" bloc are increasingly a function of unrealistically limited defenses, concurrent with tacit or express judicial approval, maximizing the voluminous, but hastened, position that sexual orientations existing in conflict with natural realities, cause protected status and basic liberty rights, this juxtaposed with some courts' refusals to discuss moral and biological realities in anything but broad, speculative, or condescending terms.

19. Citizens have interests relating to the subject matter of this case exceeding that sufficient to support intervention of right. These interests are in liberty, religious expression, freedom from seizure and confiscation, and other basic rights, and regarding property as well. Reverse discrimination is undeniably threatened, and this amidst a continual omission of religious and moral freedom, while strumming a false applicability as related to race, color, or national origin, age, and related classes. This is sufficient to support intervention of right.

20. Even the circuit courts and the highest court have made unrealistic findings that pro-family, moral and ethical-based opposition to express government approval of the "modern" "orientations" are anti-gay, animus, and other such error. Once-assumed rights to enjoy most, if not all, national holidays, in a manner based, as most of them are, on Christian beliefs, are at this time denigrated, and the participants falsely accused, even on a basis of religious stance, as opposed to what is a common sense stance based on simple morals and ethics.

regions of the nation, including this region in part, with the "popular culture" brand of lifestyle, infused as it has, in the last two generations.

27. Citizens' interests are different in some ways from those of the governmental entity-defendant, and those interests will not be represented by the defense or at the least, stand likely to be insufficiently presented, and such could even affect the record or scope on any review.

28. The existence of numerous plaintiffs, along with the discontinuance as to parties Thomas Corbett, Governor of Pennsylvania, and the Register of Wills of Washington County, et al, warrants additional support for the defense, under the circumstances, especially the support of a virtuous and imperturbable sort, offered by citizens.

29. Citizens therefore are likely to not share the identical ultimate objective as defendant or defendants; insuch cases, some prefer that "gay marriage" be a future possibility, some prefer that civil unions gain some sort of credence, and differing postures exist regarding recognizing out-of-state "unions" or "marriages." Citizens object to any effort to declare the statute unconstitutional, and believe the suit is unfounded and frivolous to a point worthy of costs and fees to the Commonwealth.

30. Citizens thus claim inadequate representation at a level sufficient to meet the test, under the circumstances.

31. The legal costs of this scenario alone are additional reason for citizens' claims of taxpayer status. The taxpayer claim extends to the clear possibility of spouysal benefits always pursued subsequent to threshold advances in states and municipalities by the homosexual activists.

32. Citizens claim standing pursuant to their being Pennsylvania taxpayers objecting to what would be exhorbitant expenditures of Commonwealth principal, and towards arguably illegal and unconstitutional ends, including administrative upheaval requiring voluminous changes to software, policy, and the justice system as well.

33. Citizens claim standing pursuant to their being United States taxpayers for similar reasons stemming from their taxes paid as United States taxpayers, for reason, inter alia, that principal applied towards the ends sought by defendants are a substantial, intended use for a special interest, nowhere deemed worthy as a protected class, and in direct derogation of rights to religious freedom, free speech, due process, right to defend and liberty interests in community health and running organizations and businesses free of arbitrary or overbroad limitations.

34. Private attorney general status is expressly and urgently warranted for reasons including the overt derogation to religious rights and rights to healthy community not favoring to one factor or class over others, and numerous statutes directing such, amidst an effort and enterprise undeniably in existence towards those ends, and where, first and foremost, the elected Attorney General is refusing to uphold nor defend the law.

35. Pennsylvania's Human Relations Act encourages intervention where such would bring imminent and ongoing discrimination to an end.

36. Citizens for the above reasons meet the necessity of direct, substantial, and legally protectable interests in this case, that are belonging to, successively positioned, and owned by applicant.

37. Citizen's claims are not generalized, speculative, nor remote, and are not common to the populace as a whole.

Conclusion

38. Citizens hold "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues." California Bankers Assn. v. Schultz, 416 U.S. 21 (1974); citing Baker v. Carr, 369 U.S. 186 (1971)

WHEREFORE, movants respectfully request the Court's grant of this prayer for intervention, and an order directing that Citizens are intervenors in this case.

_s/ James D. Schneller_ Date: November 21, 2013

James D. Schneller pro se
Philadelphia Metro Task Force

IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Deb Whitewood and Susan Whitewood, Fredia Hurdle and Lynn Hurdle, Edwin Hill and David Palmer, Heather Poehler and Kath Poehler, Fernando Chang-Muy and Len Rieser, Dawn Plummer and Diana Polson, Angela Gillem and Gail Lloyd, et al, plaintiffs | Civil Action |
| v. | No. 13-1861-JEJ |
| Michael Wolf, in his official capacity as Secretary of the Pennsylvania Department of Health, Dan Meuser, Donald Petrille, Jr., in his official capacity as Register of Wills and Clerk of Orphans' Court of Bucks County defendants | Motion Served Pending Approval of ECF Registration |

CERTIFICATE OF SERVICE

I, James Schneller, hereby certify that I served a true and correct copy of the motion to intervene, upon the parties, listed as follows, and the judge, by e-mail, this day. I certify that I will immediately file this motion and certificate of service via ECF as soon as I am approved as a user/member for that service, or by US Mail with the Clerk if denied membership of ECF.

Honorable John E. Jones, III
U.S. District Court M.D. Penna.
Ronald Reagan Federal Bldg. & U.S. Courthouse
228 Walnut Street
Harrisburg, PA 17101

Robert J Grimm
Thomas J Jezewski
Swartz Campbell, LLC
4750 U.S. Steel Tower
600 Grant Street
Pittsburgh, PA 15219
412-456-5416
rgrimm@swartzcampbell.com
tjezewski@swartzcampbell.com

Nathan D. Fox
Begley Carlin & Mandio LLP
680 Middletown Blvd.
Langhorne, PA 19047
215.750.0110
nfox@begleycarlin.com

William H. Lamb
Joel L. Frank
Lamb McErlane P.C.
24 East Market Street
P.O. Box 565
West Chester, PA 19381-0565
(610) 430-8000
jfrank@lambmcerlane.com

James D. Esseks
American Civil Liberties Union Foundation
125 Broad Street
18th Floor
New York, NY 10004
212-549-2627
jesseks@aclu.org

John S. Stapleton

Dylan J. Steinberg
Hangley Aronchick Segal & Pudlin
One Logan Square 27th Floor
Philadelphia, PA 19103-6933

Leslie Cooper
American Civil Liberties Union Foundation
125 Broad Street 18th Floor
New York, NY 10004
lcooper@aclu.org

Mary Catherine Roper
American Civil Liberties Union of Pennsylvania
P.O. Box 40008
Philadelphia, PA 19106
215-592-1513 ext 116
mroper@aclupa.org

Rebecca S. Melley
Segal Pudlin & Schiller
One Logan Square 27th Floor
Philadelphia, PA 19103
215-496-7374
rsantoro@hangley.com

Seth F. Kreimer
3400 Chestnut Street
Philadelphia, PA 19144
215-898-7447
skreimer@law.upenn.edu

Witold J. Walczak
American Civil Liberties Union of PA
313 Atwood Street
Pittsburgh, PA 15213
(412) 681-7864
vwalczak@aclupa.org

_s/ James D. Schneller_ Date: November 21, 2013
James D. Schneller pro se



CERTIFIED MAIL™



Mr James Schneller
430 E Lancaster Ave Apt E25
Wayne, PA 19087-4317

7011 2970 0000 1255 4675





1000 17101

U.S. POSTAGE
PAID
WAYNE.PA
19087
NOV 22. 13
AMOUNT
$4.42
00080090-06

**First Class Mail**

Clerk
U.S. District Court
Middle District Penna.
P.O. Box 983
228 Walnut St.
Harrisburg PA 17101