IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE
DISTRICT OF PENNSYLVANIA

Deb Whitewood and Susan Whitewood,
Fredia Hurdle and Lynn Hurdle, Edwin Hill and
David Palmer, Heather Poehler and Kath Poehler,
Fernando Chang-Muy and Len Rieser, Dawn Plummer
and Diana Polson, Angela Gillem and Gail Lloyd,
Helena Miller and Dara Raspberry, Ron
Gebhardtsbauer and Greg Wright, Marla Cattermole
and Julia Lobur, et al            plaintiffs

Civil Action

No. 13-1861-JEJ

v.

Michael Wolf, in his official capacity as Secretary
of the Pennsylvania Department of Health,
Dan Meuser, Donald Petrille, Jr., in his official
capacity as Register of Wills and Clerk of Orphans'
Court of Bucks County            defendants


BRIEF IN REPLY TO BRIEF IN OPPOSITION TO MOTION
FOR LEAVE TO INTERVENE


   James D. Schneller, representing himself, and Philadelphia Metro Task Force, in all
ways possible, ("citizens") present argument in reply to plaintiffs' memorandum of law in
opposition to citizens' motion for leave to intervene in this case, stating:


   I.   Reply to Factual Averments

   Citizens deny the statements in responding plaintiffs' introduction that citizens effort
"does not seek any relief apart from the preservation of Pennsylvania's ban on marriage
by gay and lesbian couples" and that citizens seek to intervene (intimating *solely*) " in
order to defend the constitutionality of Pennsylvania's Marriage Law "  It has been

described in citizen's motion and brief that citizens seek to uphold their rights in the face of adverse litigation, and results which could result from the litigation, including express derogation of rights.   These results appear to be likely to cause citizens to be bound to a permanent reduction of their basic rights under the state and federal constitutions, as a result of an effort by an extremist portion of a class, which admits to being 3 percent or less of the population, and far less a percentage, if using the portion of the class realistically interested in a "marriage" of a sincere, altruistic, and enduring nature  Said characteristics of true marriage are to this day the characteristics of marriage continually found by citizenry, scholars, and the judiciary.

Certain mischaracterizations by plaintiffs are discussed in the following sections.


II.A.  Intervention As Of Right


 Plaintiffs allege that citizens interests are not significantly protectable.  However, plaintiffs fail to address the many reasons stated in citizens' motion, arguing only a remoteness of citizens' interests because allowing "gay  marriages" would impose no obligation upon citizens, and that citizens will not be affected in a substantially concrete fashion.  Citizens are astounded that plaintiffs cannot recognize a connection between the relief sought by them, and discrimination and suppression of citizens' religious exercise (and other basic rights and privileges)

Apart from the fact that plaintiffs again err in characterizing the motion to intervene as an "asserted interest . . in preventing the recognition of same-sex marriage because it offends him morally and because he sees a threat in the accomplishments and tactics of those he labels "homosexual activists" (opposing brief  p.4, p.6), plaintiffs cherry pick reasons given by citizens, in order to concentrate on plaintiff's overall cause.  A claim of 'morally offending' has, in fact, not been alleged, is denied, and is objected to as a mischaracterization of the claims as remote, weak, and general, none of which is applicable.  Plaintiffs continue: [T]his is not the sort of "significantly protectable interest" that allows for intervention, as Mr. Schneller does not have a right to see others discriminated against. But in reality, the issue of whether legally remediable discrimination is occurring to plaintiffs is a question in this case, one that involves

presentation of fact and argument.  Moreso, citizens claim, inter alia, that significantly protectable interests in religious freedom and free speech, freedom from government collusion, freedom from seizure or confiscation of rights, and from arbitrary enforcement, have and remain infringed upon, with the prospect of exponential increase, should the requested nullifying of the marriage act's definition of marriage and forbiddance of recognizing of out of state "gay marriage" be granted.  Citizens' interest are not hypothetical interests, nor contingent.  Redland Insurance Company V. Chillingsworth Venture, Ltd., 171 F.R.D. 206; 1997 U.S. Dist. LEXIS 2659 (N.D. Oh.)

In a larger sense, citizens are concerned that the case may be sought to be litigated on the simplest scale possible, preventing accuracy of the circumstances.  Plaintiffs already exhibit denial of the existence of a concerted homosexual activist movement. Pennsylvania has escaped the wrath of disappointed or irritated homosexual activists but the message has been graphically presented.  Citizens cannot ignore the igniting of churches in California after the popular vote approved a traditional definition of marriage; homosexual activists' frequent desecration, takeovers and protests interrupting church ceremonies, aimed at Churches who maintain traditional, ancestral doctrine; and concerted invitations to 10 to 16 year old youths, and younger, to attend fairs and festivals for "gay-friendly" seminars, occurring frequently, nationwide, and without parental notification.  These are not abstract concerns.

Citizens' position and effort to bring a full record are an affront to plaintiffs and a benefit to the defense.  Plaintiffs' opposition is strong indicator that the case might become more adequate, and that protectable interests are more substantial than seen at first glance.

In defense of the opposition's claim that the argument of high expenditure " is meritless, as it amounts to a challenge to "an incidental expenditure of tax funds in the administration of an essentially regulatory statute" which is insufficient to convey taxpayer standing," citing Flast v. Cohen, 392 U.S. 83, 102 (1968), citizens deny that increased costs to the Commonwealth would stand as incidental, nor a result of a regulatory statute.  Citizens have not enumerated these costs in full, but raise now the high incidence of drug abuse and various diseases in persons practicing same sex.  There is no evidence that legalization of "gay marriage" would reduce these, but, on the

contrary, legalization would openly reinforce an already alarming growth in these numbers.

Because citizens' interest is complex; perceivable as unusual; is at this time pro se; and because the participation of Philadelphia Metro Task Force has been opposed, due to said pro se aspect, and other reasons, citizens request inclusion of the more equitable standard such as that of the Ninth Circuit.   [A significantly protectable] interest in this circuit need not be a specific legal or equitable interest as long as it is a protectable interest in the outcome of the litigation of sufficient magnitude to warrant inclusion in the action.  Smith v. Pangilinan, 651 F.2d 1320, 1324 (9th Cir. 1981).


Adequate Representation


For the purposes of intervention, the burden of establishing inadequacy of representation by existing parties varies with each case. Beattie v. Line Mountain School District, 2013 U.S. Dist. LEXIS 164750 (M.D. Pa. Nov. 20, 2013)  Citizens have much to claim to overcome the presumption of the Commonwealth's  interest in representing the interests of its citizens.   Neighboring states have witnessed the capitulation of legislatures, executive branches, and officials, in direct conflict with the wishes of the citizens.   Pennsylvania's assembly, acting in good conscience, has maintained course, yet successive attempts at wearing down are well-heeled and proven in other states.   The executive branch is up for election this year and the dyke would likely go quickly unrepaired by a democrat, libertarian, or less-than-moderate republican.  The whim of all three branches, with all respect, is a tool utilized by homosexual activists

Citizens have witnessed township and other elected officials ignore the term "moral" despite moral welfare existing as an objective in state and local statutes.  In the current short term climate, pressure exists from every quadrant as even the federal branches follow suit, with an executive bent on causing the nation to be a world force against morality and traditional marriage.  The tendency of even some conservative career or elected officials to suddenly begin to infuse "acceptance" into their mindset is easily recognizable – a product of the typical processes of lobbying – and unrelated to our

democratic form of government.  Citizens stand as suffering, and especially likely to suffer, the alleged harms, because they recognize the tactics and effects of plaintiffs' support organizations, and suffer from the concerted effort to hide the results, at the same time as entrenching them.

 When an agency's views are necessarily colored by its view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it, the burden is comparatively light. Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pennsylvania, 701 F.3d 938, 958 (3d Cir. 2012). see Mausolf v. Babbitt, 85 F.3d 1295, 1303 (8th Cir. 1996) ("when the proposed intervenors' concern is not a matter of 'sovereign interest,' there is no reason to think the government will represent it").

 Citizens have stated sufficiently, what is a meeting of the threshold of the elements directed in plaintiffs' authority Hoots v. Pennsylvania, 672 F.2d 1133, 1135 (3d Cir. 1982).  To elaborate:  1 – Citizens interests are sufficiently diverse that there is a risk that the existing party cannot or will not devote proper attention to the applicant's interest.  The Commonwealth has shown in the five cases filed in this effort a set of commendable arguments but only the citizens' concern with potential harm and injury, already in progress, can bring added pique and substance to the record. Reference is made to discussion in citizens' motion and brief regarding the movement afoot to bring capitulation to the same-sex set's agenda, even into the highest places, as addressed also in the preceding paragraph.   As statedly religious and typically moral citizens, under definitions still prominent in our world, citizens are a sub-class which is not only substantial, but constitutionally intended.  With homosexuals alleging at times that a counter-religion, condoning of their cause exists, the defense would benefit from parties aboard holding the traits of "religious" in the true, traditional and ancestral sense.

 2 –In regard to the element of a "collusion between the representative party and the opposing party," the Court is presented in citizens pleadings including this with claims of infusion, wearing-down, capitulation, acclimation-by-repetition, and other means utilized by plaintiffs' well-heeled organizations.   These serve as a "collusion" when taken as a whole, especially since a large portion of the picture is collusion.  Citizens have witnessed elected lawmakers and executive appointees, as well as an abundance of their employees, consistently and successively advance the homosexual agenda at every

instance possible, utilizing every nuance possible, down to arbitrary and discriminatory methods of handling citizens, on a person-by-person basis.   The moral and religious citizen finds more than ever that a thread of accepted/not-accepted runs throughout state and local bureaucracy and the same is evident to varying extent, in the elected bodies. Intervention was supported where the government represented numerous complex and conflicting interests, subject to change with policy shifts.   Kleissler v. United States Forest Serv., 157 F.3d 964, 1998 U.S. App. LEXIS 24453 (3d Cir. Pa. 1998)

  In the same breath, be it said that there is not an iota of support for the Court to decide this case as if it were a claim by several independently acting pairs, who found one day an infringement on a right to "gay marriage" – with no help offered by outside groups.   Witness the acts of the Montgomery County Register of Wills in the Fall of 2013, which are now revealed to be building blocks for three lawsuits including this. Pennsylvania is more the Keystone State than ever, and this issue is as serious and fulcrum as any other.   Moreso, Ohio and Michigan observe Pennsylvania watchfully. The activists seek the Commonwealth of Pennsylvania to act as the first domino in a series of "gay marriage" victories, long sought after by those seeking to have the nation's ancestral, foundational strengths undermined.

 Collusion is also assistive to the test for taxpayer standing, and to the claim of a need to limit the applicability of decisions regarding the issues, from foreign jurisdictions.   To quote relevant state law:  Taxpayers will not be permitted to intervene as defendants in application for peremptory mandamus to compel payment on city contract without allegation of special interest or of collusion on part of city authorities; Vare v. Walton, 21 Pa.Dist. 77 (Pa.Com.Pl.,1911)   Res judicata requires a final judgment without fraud or collusion, on the merits. Quality Ready Mixing v. Mamone, 35 Ohio St. 3d 224,227, 520 N.E. 2d 193 (1988).   Also,  [a] decision rendered in a collusive litigation is not binding in subsequent cases. Town of Andes v. Ely, 15 S.Ct. 954, U.S.N.Y.,1895

 Citizens' allegations on this issue state, at present, no "sympathy" by the Commonwealth for plaintiffs' cause.  Plaintiffs assert necessity for stark inadequacy, demanding, for example, "tenable arguments that Defendants are acting in gross negligence or bad faith."  The test however, is an analysis on a case-by-case basis pursuant to evaluation of all of the elements together.   Plaintiffs reveal their hope for

collusion or lack of diligence in labelling citizens' intent to develop some areas of fact more vigorously than defendants, to be a difference of opinion as to litigation strategy (arguing such cannot support intervention).  The full gamut of fact could not impede the record.   The marriage act declares it " to be the *strong and longstanding* public policy of this Commonwealth that marriage shall be between one man and one woman." 23 Pa. C.S.A. § 1704 (emphasis added)   Citizen James Schneller is an open and cooperative person who has approached civil litigation to the satisfaction of two score judges.

3  - The third Hoops element is that "The representative party has not been diligent in prosecuting the litigation."  Citizens have not claimed lack of diligence although such a) is assertedly possible, and b) is an element met for purposes of this type of case, at this stage of the litigation, by citizens' arguments already presented regarding societal and professional pressures, running the length of the field of political realities, including in the executive branch, all the way to the issues stated above in the discussion regarding element of collusion.

Citizens believe that adequate representation is but a piece of the picture and not a measure of strength unto itself, readily fatal to intervention, if not met.


II. B. Permissive Intervention


In the spirit of economy and procedural emphasis on limiting replies, to new matter, citizens do not offer further specific reply, including because they believe the case law to be noticeably in their favor.

Case law regarding intervention could readily be argued in greater detail and at length in these issues, and the Court is implored to direct additional argument on any issue deemed worthy of a deeper analysis.  It is citizens' belief that responding plaintiffs have offered few or no cases on point in their response brief, so that to dissect each authority at this time would be inappropriate.

III. Capacity of Philadelphia Metro Task Force

Plaintiffs have claimed in their footnote 1 that the association is precluded from being represented by a pro se member of the association.  In this case the proposed representative has an exemplary record, and the case is akin to a declaratory action, on a matter of evaluation of constitutionality, and the matter too important to be deprived participation.

The substantive law of Pennsylvania holds weight in this issue and these two jurisdictions have agreed at least generally in associational law as well as the law regarding untrained litigants.

The Administrative Code of Pennsylvania expressly allows that " An individual may appear in his own behalf. A member of a partnership may represent the partnership, a bona fide officer of a corporation, trust or association may represent the corporation, trust or association, and an officer or employee of another agency or of a political subdivision may represent the agency or political subdivision in presenting any submittal to an agency subject to these rules. "  1 Pa. Code § 31.21,

Plaintiffs cite as their only authority the Supreme Court decision in Rowland v. California Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 209-211, 121 L. Ed. 2d 656, 113 S. Ct. 716 (1993).   While frequently cited in cases involving represent-ation of corporations , in Rowland the specific issue is whether the association of inmates qualifies as a person for purposes of the forma pauperis statute 28 USC § 1915.

Pennsylvania courts have allowed partners or corporate owners or officers to represent their firms in special circumstances.  Trial court did not commit reversible error when it permitted one who was not an attorney at law to represent the corporation because there was evidence that he had authority to act as he was one of only three stockholders of the corporation, all of whom were present at trial, and none of whom objected to his representation, and because the corporation had ample opportunity to employ counsel, the court could have permitted the trial to proceed without anyone representing it. Phoenix Mut. Life Ins. Co. v. Radcliffe on Delaware, Inc., 439 Pa. 159, 266 A.2d 698, 1970 Pa. LEXIS 673 (1970).

Citizens have been permitted to proceed in forma pauperis at times in conjunction, without any party attempting to separate James Schneller from the association in order to object to grant of forma pauperis, and this has occurred at prior similar instances.

Citizens in fact were permitted in 2012 and 2013 to litigate a case challenging a municipalities enactment of a Local Human Relations Ordinance to conclusion in the Commonwealth Court of Pennsylvania, No. 2146 CD 2012, Schneller et al v. Conshohocken Borough, and participate without opposition to such representation, in another similar case: 557 CD 2013 Teal v. Haverford Township. James Schneller and association SaveTheWayneACME were permitted in 2010 and 2011 to litigate a case challenging a inter-municipal transfer of liquor license to conclusion of appellate review. Commonwealth Court of Pennsylvania No. 1853 CD 2011

Federal Courts in fact have also allowed such.  Jacobs v. Patent Enforcement Fund, Inc. 230 F.3d 565, 568 (2d Cir. 2000). Cf. United States v. Priority Prods. Inc., 615 F. Supp. 593, 596 (Ct. Int'l Trade 1985) ("[o]ccasionally, the courts have held that a corporation may appear through an agent other than an attorney where the agent is party to the action along with the corporation.").   see In re Las Colinas, Inc., 453 F.2d 911 (1st Cir. 1971), cert. denied, 405 U.S. 1067, 92 S.Ct. 1502, 31 L.Ed.2d 797 (1972), ( Special considerations, including the extraordinary legal ability that had been demonstrated by the corporate officer in that case, caused us to make an exception from the traditional rule that "(a) corporation . . . can appear only by attorney." citing Osborn v. Bank of United States, 9 Wheat. 738, 830, 22 U.S. 738, 830, 6 L.Ed. 204 (1824) )  see also In re Campanella, 207 B.R. 435; 1997 Bankr. LEXIS 424(E.D. Pa.) (dispensation under extraordinary circumstances allowed to non-attorney principal to represent the corporate respondent – "partially, as simply an accommodation to the" non-attorney). citing Rowland;  United States v. Reeves,  431 F.2d 1187, 1188 (9th Cir. 1970); and In re Holliday's Tax Services, Inc., 417 F. Supp. 182 (S.D. N.Y. 1976), aff'd, 614 F.2d 1287 (2d Cir. 1979) (court may waive the counsel requirement in exceptional circumstances; criticized in Rowland, supra).

Third Circuit cases are not on point in this issue. United States v. Cocivera, 104 F.3d 566, 572-573 (3d Cir. 1996) ("[T]he general rule [is] that a *corporation* may not be represented by other than licensed counsel . . . ." )(emphasis added);  Duffy v. Kent Cnty.

Levy Court, 2011 U.S. Dist. LEXIS 57825, 2011 WL 2148672, at *5 (D. Del. May 31, 2011) (noting the party could represent himself, but could not act as an attorney for an association or corporation ) is a Delaware case. In re Chojecki, 2000 U.S. Dist. LEXIS 6962, 2000 WL 679000, *2 (E.D. Pa. May 22, 2000) (noting the non-attorney party could represent himself but could not act as an attorney for other individuals or for a *corporation*) (emphasis added).   Move Org. v. United States Dep't of Justice, 555 F. Supp. 684, 693 (E.D. Pa. 1983) disallows representation of an organization but is a case involving an organization long associated with criminal aspects.   None of the preceding address the within circumstances, and the Court's discretion in the interests of fairness may be broadened by facts including a) the stigma and fear of reprisals from homosexual activists, causing low membership and corresponding low resources  b) the media's continual chastisement, alternate with ignoring, of the stance of pro-family proponents, c) because the matter concerns a community association, and a co-party seeking to represent, is a member of the association, and, among others, d) because the case involves a matter of large public importance and intervention stands to bring fairness and oppressed views, many of the public-at-large, into the record.


   IV.  Conclusion


     Citizens suffered injury in fact, which citizens believe to be in express danger of mushrooming, when citizens were discriminated against openly during municipal proceedings regarding establishment of local human relations commissions.  This discrimination existed in an even more immediate and successive way, because some ordinances became law, and because these laws, like the discrimination, were additionally violative of the Religious Freedom Protection Act.  Citizens filed claims of discrimination with the Pennsylvania Human Relations Commission, which have seen a complex route with apparent traits of delay and reluctance to review.  "The litigant must have suffered an 'injury in fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute; the litigant must have a close relation to the third party; and there must exist some hindrance to the third party's ability to protect his or her own interests." Powers v. Ohio, 499 U.S. 400, 411 (1991)

Citizens request governing of <u>F.R.C.P. 6(d)</u> "Additional Time" in order that 3 days may be added to the January 22, 2014 due date for this reply, because citizens had the right or were required to file this paper "within a prescribed period after the service of a notice" and the notice, a Court order, was served upon citizens by regular mail.

WHEREFORE, citizens, for all of the reasons of record and evident to the Court, request an order directing that Citizens be permitted participation as interveners in this case.

WHEREFORE, citizens request leave to file a proposed answer and any counterclaim, at the time that same become due by the parties, or at a time directed by the Court.


_James Schneller_                          Date: January 25, 2014
James D. Schneller              pro se
Philadelphia Metro Task Force

IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE
DISTRICT OF PENNSYLVANIA

Deb Whitewood and Susan Whitewood,
et al,                                          plaintiffs

v.

Michael Wolf, in his official capacity as Secretary
of the Pennsylvania Department of Health,
et al                                          defendants

Civil Action

No. 13-1861-JEJ

CERTIFICATE OF SERVICE

I, James Schneller, hereby certify that I served  a true and correct copy of the reply brief in support of motion to intervene, upon the parties, listed as follows, and the judge, by e-mail, this day.

Honorable John E. Jones, III
Ronald Reagan Federal Bldg. & U.S. Courthouse
228 Walnut Street
Harrisburg, PA 17101

Nathan D. Fox                              nfox@begleycarlin.com
Begley Carlin & Mandio LLP
680 Middletown Blvd.
Langhorne, PA 19047

William H. Lamb
Lamb McErlane P.C.                         jfrank@lambmcerlane.com
24 East Market Street
P.O. Box 565
West Chester, PA 19381-0565

James D. Esseks                          jesseks@aclu.org
American Civil Liberties Union Foundation
125 Broad Street     18th Floor
New York, NY 10004


John S. Stapleton                        jstapleton@hangley.com
Dylan J. Steinberg
Hangley Aronchick Segal & Pudlin
One Logan Square     27th Floor
Philadelphia, PA 19103-6933


Leslie Cooper                            lcooper@aclu.org
American Civil Liberties Union Foundation
125 Broad Street     18th Floor
New York, NY 10004


Mary Catherine Roper                     mroper@aclupa.org
American Civil Liberties Union of Pennsylvania
P.O. Box 40008
Philadelphia, PA 19106


Rebecca S. Melley                        rsantoro@hangley.com
Segal Pudlin & Schiller
One Logan Square     27th Floor
Philadelphia, PA 19103


Seth F. Kreimer                          skreimer@law.upenn.edu
3400 Chestnut Street
Philadelphia, PA 19144


Witold J. Walczak                        vwalczak@aclupa.org
American Civil Liberties Union of PA
313 Atwood Street
Pittsburgh, PA 15213




_James Schneller_

James D. Schneller            pro se

Date: January 25, 2014